**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
PAUL K. JOSEPH (287057)
*paul@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:  (619) 798-2006
Facsimile:   (480) 247-4553

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone:  (619) 696-9006
Facsimile:   (619) 564-6665

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

FRANK ORTEGA and TROY LAMBERT, on behalf of themselves and all others similarly situated,

                Plaintiffs,

     vs.

NATURAL BALANCE, INC., NUTRACEUTICAL CORP., and NUTRACEUTICAL INTERNATIONAL CORP.,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:13-cv-05942-ABC-E

<u>Class Action</u>

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD CLASS COUNSEL**

Judge:     Hon. Audrey B. Collins
Courtroom: 680
Date:      June 16, 2014
Time:      10:00 a.m.

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS ...................................................................................1

III.    ARGUMENT.......................................................................................................4

        A. Standards on Class Certification .................................................................4

        B. Plaintiffs have Standing to Pursue Claims on Behalf of the Class .....................6

        C. The Class is Ascertainable.............................................................................8

        D. The Rule 23(a) Requirements are Satisfied..................................................9

                1.  Numerosity ..................................................................................9

                2.  Commonality ...............................................................................9

                3.  Typicality....................................................................................10

                4.  Adequacy....................................................................................11

        E. The Rule 23(b)(3) Requirements Are Satisfied.................................................13

        F. The Requirements of Rule 23(b)(2) Are Satisfied .........................................22

        G. The Court Should Approve Notice to the Class………………………………24

IV.     CONCLUSION....................................................................................................25

i

*Ortega, et al., v. Natural Balance Inc., et al.*, 2:13-cv-05942-ABC-E
PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Murakami,*
  54 Cal. 3d 105 (1991) ................................................................................22

*Alliance Mortg. Co. v. Rothwell,*
  10 Cal. 4th 1226 (1995) ...........................................................................23

*Allison v. Citgo Petroleum Corp.,*
  151 F.3d 402 (5th Cir. 1998) ...................................................................23

*Ballard v. Equifax Check Servs.,* Inc.,
  186 F.R.D. 589 (E.D. Cal. 1999) .............................................................19

*Barnes v. Logan,*
  122 F.3d 820 (9th Cir. 1997) ...................................................................22

*Bateman v. Am. Multi-Cinema, Inc.,*
  623 F.3d 708 (9th Cir. 2010) ..............................................................6, 19

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ...................................................................13

*Bruno v. Eckhart Corp.,*
  280 F.R.D. 540 (C.D. Cal. 2012) .............................................................17

*Bruno v. Quten Research Inst., LLC,*
  280 F.R.D. 524 (C.D. Cal. 2011),
  *reh'g denied,* 280 F.R.D. 540 (C.D. Cal. 2012) ....................................8, 13

*Butler v. Sears, Roebuck & Co.,*
  727 F.3d 796, 801 (7th Cir. Aug. 22, 2013),
  *cert. denied, Sears, Roebuck & Co. v. Butler,* 134 S. Ct. 1277 (2014) ..................20, 22

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ................................................................................24

*Chavez v. Blue Sky Natural Beverage Co.,*
  268 F.R.D. 365 (N.D. Cal. 2010) .........................................................9, 17

*Comcast Corp. v. Behrend,*
  133 S. Ct. 1426 (2013) .............................................................................20

*Delarosa v. Boiron, Inc.,*
  275 F.R.D. 582 (C.D. Cal 2011) ..........................................................10, 21

ii

*Ortega, et al., v. Natural Balance Inc., et al.,* 2:13-cv-05942-ABC-E
PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Elliott v. Weinberger*,
  564 F.2d 1219 (9th Cir. 1977) ..................................................................................24

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .......................................................................6, 22, 23, 24

*Gay v. Waiters' & Dairy Lunchmen's Union*,
  549 F.2d 1330 (9th Cir. 1977) ..................................................................................10

*Gen. Tel. Co. of the S.W. v. Falcon*,
  457 U.S. 147 (1982) ....................................................................................................6

*Greenwood v. Compucredit Corp.*,
  No. 08-04878CW, 2010 WL 4807095 (N.D. Cal. Nov. 19, 2010) ..................................9

*Guido v. L'Oreal, USA, Inc.*,
  Nos. CV 11-1067 CAS (JCx), 2013 WL 3353857 (C.D. Cal. July 1, 2013) .......9, 20, 22

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..............................................................11, 12, 16, 19

*Hanon v. Dataprods. Corp.*,
  976 F.2d 497 (9th Cir. 1992) ......................................................................................5

*Hansen Beverage Co. v. Vital Pharm., Inc.*,
  08-CV-1545-IEG POR, 2010 WL 1734960 (S.D. Cal. Apr. 27, 2010) ..........................22

*Hitt v. Ariz. Bev. Co., LLC*,
  No. 08cv809 WQH (POR), 2009 WL 449190 (S.D. Cal. Feb. 4, 2009) ........................17

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) ...............................................................................14

*Hofstetter v. Chase Home Fin., LLC*,
  No. C10-01313 WHA, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ............................6

*Ikonen v. Hartz Mountain Corp.*,
  122 F.R.D. 258 (S.D. Cal. 1988) ...............................................................................10

*In re Ferrero Litig.*,
  278 F.R.D. 552 (S.D. Cal. 2011) .................................................................................6

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) .....................................................................................13

*In re HiEnergy Techs., Inc. Sec. Litig.*,
  No. 8:04CV01226 DOC (JTLX), 2006 WL 2780058 (C.D. Cal. Sept. 25, 2006) ........10

*In re Juniper Networks Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009) ...............................................................................12

iii

*In re Natural Gas Commodities Litig.*,
   231 F.R.D. 171 (S.D. N.Y. 2005)...................................................................15

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
   No. ML 10-02199 DDP(RZx), 2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) ...........18

*In re Steroid Hormone Prod. Cases*,
   104 Cal. App. 4th 145 (2010)...................................................................23

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009).................................................................7, 8, 16

*Keegan v. Am. Honda Motor Co., Inc.*,
   284 F.R.D. 504 (C.D. Cal. June 12, 2012) ...................................................17

*Klaxon v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) .........................................................................20

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003)......................................................................21

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011)................................................................8, 18, 20

*Madison Assocs. v. Baldante*,
   183 B.R. 206 (Bnkr. C.D. Cal. 1995)..........................................................14

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
   97 Cal. App. 4th 1282 (2002).............................................................17, 19

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011).................................................................8

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012)...........................................................7, 10, 21

*Occidental Land, Inc. v. Super. Ct.*,
   18 Cal. 3d 355 (1976)........................................................................17

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ..............................................................9

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) .............................................................17

*Pecover v. Elec. Arts Inc.*,
   2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) .................................................14

*Phillips Petroleum Co v. Shutts*,
   472 U.S. 797 (1985) .........................................................................20

iv

*Plascencia v. Lending 1st Mortg.*,
   259 F.R.D. 437 (N.D. Cal. 2009) ........................................................16, 17

*Probe v. State Teachers' Retirement Sys.*,
   780 F.2d 776 (9th Cir. 1986) ...................................................................22

*Richmond v. Dart Indus., Inc.*,
   29 Cal. 3d 462 (1981) .........................................................................6, 19

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .................................................................11

*Salahutdin v. Valley of Cal., Inc.*,
   24 Cal. App. 4th 555 (1994) ....................................................................23

*Sav-On Drug Stores, Inc. v. Super. Ct.*,
   34 Cal. 4th 319 (2004) ............................................................................6

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) ....................................................................6

*Smith v. Univ. of Wash. Law Sch.*,
   233 F.3d 1188 (9th Cir. 2000) .................................................................22

*Stanton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................12

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 1970 (2012) .............9, 10, 13, 16

*Stuart v. RadioShack Corp.*,
   No. C-07-4499 EMC, 2009 WL 281941 (N.D. Cal. Feb. 5, 2009)..............................14

*Sweet v. Pfizer*,
   232 F.R.D. 360 (C.D. Cal. 2005) ..............................................................13

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ................................................................6

*Tourgeman v. Collins Fin. Servs.*,
   No. 08-cv-1392 JLS(NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011)...............9, 14

*Tucker v. Pac. Bell Mobile Servs.*,
   208 Cal. App. 4th 201 (2012) ...................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...............................................................6, 11, 12, 15, 23

*Wash. Mut. Bank v. Super. Ct.*,
   24 Cal. 4th 906 (2001)...........................................................................20

*Ortega, et al., v. Natural Balance Inc., et al.*, 2:13-cv-05942-ABC-E
PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ...................................................................16, 17, 18

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) ..................................................... 13, 17

*Zapka v. Coca-Cola Co.*,
  2000 WL 1644539 (N.D. Ill. Oct. 27, 2000) ....................................................9

*Zeisel v. Diamond Foods, Inc.*,
  No. C10-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011)...........................7, 9

*Zinser v. Accufix Research Inst.*,
  253 F.3d 1180 (9th Cir. 2001) .......................................................................22

**Statutes**

15 U.S.C. § 45(a) ...........................................................................................21, 23

15 U.S.C. § 52 ...............................................................................................21, 23

21 U.S.C. § 321(n) ...............................................................................................18

21 U.S.C. §§ 355(a)-(b) .........................................................................................4

Cal. Bus. & Prof. Code § 17200 ..........................................................................1, 4

Cal. Bus. & Prof. Code § 17203 ......................................................................20, 21

Cal. Bus. & Prof. Code § 17204 ............................................................................7

Cal. Bus. & Prof. Code § 17500 ..........................................................................1, 4

Cal. Bus. & Prof. Code § 17535 ............................................................................7

Cal. Civ. Code § 1750 .........................................................................................1, 4

Cal. Civ. Code § 1780(a) .......................................................................................20

Cal. Civ. Code § 3343 ...........................................................................................23

Cal. Com. Code § 2714(2) .....................................................................................20

Cal. Health & Safety Code § 109875 .................................................................4, 18

Cal. Health & Safety Code § 110290 .....................................................................18

Cal. Health & Safety Code § 110110 .....................................................................18

Cal. Health & Safety Code § 110111 .....................................................................18

Cal. Health & Safety Code § 110115 .....................................................................18

U.C.C. § 2-711(1) .................................................................................................23

*Ortega, et al., v. Natural Balance Inc., et al.*, 2:13-cv-05942-ABC-E
PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

U.C.C. § 2-714(2) ..............................................................................................23

U.S. Const., art. III ..............................................................................................7

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................1, 5

Fed. R. Civ. P. 23(a) ..........................................................................................5

Fed. R. Civ. P. 23(a)(1) ....................................................................................10

Fed. R. Civ. P. 23(a)(2) ....................................................................................11

Fed. R. Civ. P. 23(a)(3) ....................................................................................12

Fed. R. Civ. P. 23(a)(4) ...............................................................................13, 15

Fed. R. Civ. P. 23(b)(2) ....................................................................................22

Fed. R. Civ. P. 23(b)(3) ...........................................................14, 18, 1920, 23, 25

Fed. R. Civ. P. 23(b)(3)(A)-(D) .........................................................................15

Fed. R. Civ. P. 23(b)(3)(D) ...............................................................................20

**Regulations**

21 C.F.R. § 310.528(a) ....................................................................................3, 4

21 C.F.R. § 310.528(b) ....................................................................................3, 4

**Other Authority**

Man. for Complex Litig. § 21.15 .......................................................................20

*Ortega, et al., v. Natural Balance Inc., et al.,* 2:13-cv-05942-ABC-E
PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## I.   **INTRODUCTION**

Plaintiffs Frank Ortega and Troy Lambert ("Plaintiffs") bring this consumer protection class action lawsuit on behalf of themselves, and purchasers of defendants Natural Balance, Inc.'s, Nutraceutical Corp.'s, and Nutraceutical International Corp.'s (collectively, "Defendants") dietary supplement "Cobra Sexual Energy," for violations of the California Consumers Legal Remedies Act ("CLRA," Civ. Code §§ 1750, *et seq*.), the California Unfair Competition Law ("UCL," Bus. & Prof. Code §§ 17200, *et seq*.), and the California False Advertising Law ("FAL," Bus. & Prof. Code §§ 17500, *et seq*.).  *See* Dkt. No. 56.  Plaintiffs respectfully submit this Memorandum of Points and Authorities in support of their Motion to (1) certify the claims in their Second Amended Complaint ("SAC") for class treatment under Rule 23; (2) appoint Plaintiffs as Class Representatives; and (3) appoint Plaintiffs' attorneys as Class Counsel.

## II.   **STATEMENT OF FACTS**

Defendants are Delaware corporations with their principal places of business in Park City, Utah, and are authorized to conduct business in California.  *See* SAC ¶¶ 6-12.[1] Defendants manufacture, market, distribute, and sell dietary supplements under the brand name "Cobra Sexual Energy" (hereinafter "Cobra" or the "Product").  *See* ¶¶ 1; 5-9. Defendants advertise Cobra as an aphrodisiac comprised of a "proprietary" blend of various herbal extracts, when the Product is, in fact, little more than expensive snake oil manufactured and sold in violation of federal and state law.  *See* ¶¶ 26-30; 55-57; 90-94.

Within California and across the United States, Defendants promote, market and advertise Cobra as a "Powerful Men's Formula" "with Yohimbe & Horny Goat Weed" that will allow users to "Perform [their] Best with Animal Magnetism."  ¶¶ 5-9, 44-89, 96.  Defendants also represent that Cobra contains "'aphrodisiac' plants to enhance . . . sexual energy"; that it will "improve . . . performance"; that it is "Scientifically blending select, high-quality herbs"; that its "Natural Balance has energized people's health and well-being"; and that it "offer[s] specialty supplements that work," and which "Help[]

---

[1] All citations to the SAC (Dkt. No. 56) are referenced as "¶___."

people live healthier, more enjoyable lives." *Id*. Further, Defendants claim Cobra consists of "proprietary formulas" that contain the "Most famous of all performance enhancing herbs," and that "Cobra blends exotic herbs from the Orient, South Pacific, and Africa." *Id*. Defendants also claim that Cobra will allow users to "Take Virility to the Max!", and make a host of efficacy claims about the Product's individual ingredients, including Yohimbe, Horny Goat Weed, Muira Puama, Korean Ginseng, Saw Palmetto, Kola Nut, Oat Straw, Nettle, Catuaba and Damiana leaf. *See id*.; *see also* ¶¶ 31-43.

Consumers are unaware that Cobra Sexual Energy is ***illegal*** and that Defendants' exact behavior in marketing the product has been prohibited by the federal Food, Drug, and Cosmetic Act ("FDCA"). Specifically, Title 21 of the Code of Federal Regulations states that "[*a*]*ny product* that bears labeling claim[ing] that it will arouse or increase sexual desire, or that it will improve sexual performance, is an aphrodisiac drug product." 21 C.F.R. § 310.528(a) (emphasis added). It also lists specific ingredients that are typically present in aphrodisiac products, such as Korean ginseng, yohimbine, yohimbine hydrochloride, and yohimbinum. *See id*. Title 21 states that "[l]abeling claims for aphrodisiacs for OTC use are either false, misleading, or unsupported by scientific data" and that "[b]ased on evidence currently available, any OTC drug product containing ingredients for use as an aphrodisiac cannot be generally recognized as safe and effective." *Id*. This is because "[t]here is a lack of adequate data to establish general recognition of the safety and effectiveness of any of these ingredients, or any other ingredient, for OTC use as an aphrodisiac." *Id*.

Cobra Sexual Energy is undeniably "an aphrodisiac drug product" under Subpart (a) of this regulation. *See id*.; ¶¶ 90-94. Defendants' labeling claims, including but not limited to: "Sexual Energy," "Powerful Men's Formula," "Horny Goat Weed," "Potency Wood," "Perform Your Best with Animal Magnetism," "enhance . . . sexuality," "enhance . . . sexual energy," "improve . . . performance," "Take Virility to the Max!," "performance enhancing," alone and in context with other labeling claims and packaging graphics, evidence Cobra's intended use as an aphrodisiac, to arouse or increase sexual

2

desire or energy, or improve sexual performance.  ¶ 90.  Many of Cobra's ingredients  are also specifically identified in federal regulations prohibiting the marketing of over-the-counter ("OTC") aphrodisiac drug products, discussed *supra*, including Yohimbe extract, estrogens (in the product's saw palmetto), and Korean ginseng.  ¶ 94.

In addition, under 21 C.F.R. § 310.528(b), any OTC drug product that is labeled, represented or promoted for use as an aphrodisiac, like Cobra, is regarded as a "new drug" within the meaning of section 201(p) of the FDCA.  ¶ 91.  The FDCA requires any new drug to have its application and label approved by the United States Food and Drug Administration ("FDA") before the drug can be marketed or sold to the public.  *See generally* 21 U.S.C. §§ 355(a)-(b); *see also* ¶ 92.  Defendants have not, however, obtained "new drug" approval from the FDA before they began marketing and selling Cobra to the public with a label that advertised it as an "aphrodisiac."  ¶ 93.  As such, Cobra is a misbranded new drug, in violation of federal law. ¶¶ 93-94.

In addition to federal regulations, Defendants' marketing, promotion, distribution and sale of Cobra also violates California law.  First, the Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code §§ 109875, *et seq*., incorporates by reference all federal food and drug regulations, including 21 C.F.R. § 310.528(a)-(b).  *See* ¶ 123.  Second, the UCL provides a private right of action to seek injunctive and other equitable relief for conduct prohibited by other laws.  *See* Cal. Bus. & Prof. Code § 17200, *et seq.*  Third, both the UCL, CLRA, and FAL provide private rights of action, including standing to seek injunctive relief, for consumer products that make false or misleading claims. *See id.*; §§ 17500 *et seq.*; Cal. Civ. Code §§ 1750, *et seq.*

When purchasing Cobra, Plaintiffs were seeking an aphrodisiac that enhanced energy, performance and health, as represented on Cobra's packaging and labeling, and relied on such claims in deciding to purchase the Product.  ¶¶ 16, 19, 95-96.  Based on Defendants' representations, Plaintiffs believed Cobra had the qualities they sought, but the Product was actually unsatisfactory to Plaintiffs for the reasons described above, *i.e.*, the Product did not deliver the purported benefits, there is no evidence the ingredients in

Cobra could provide the claimed benefits, and the ingredients may actually impose an unreasonable risk of danger to consumers.  ¶¶ 23, 97-98.  Plaintiffs would not have purchased Cobra absent these claims and advertisements.  ¶¶ 25, 100.  Instead of receiving a product that had actual and substantiated healthful or other beneficial qualities, Plaintiffs received a product that did not provide the claimed benefits.  ¶102. Plaintiffs lost money as a result of Defendants' deceptive claims and practices in that they did not receive what they paid for when purchasing Cobra.  ¶¶ 103-104.

While the scope of Defendants' deceptive advertising campaign was broad, its uniformity compels certification.  The issue is whether Plaintiffs can present their case on a class-wide basis.  They easily can.  Whether Defendants' advertising is false or deceptive is a common question for every class member, and can be tested, analyzed, adjudicated, and remedied on a class-wide basis.  Plaintiffs seek class certification of claims for violation of the UCL, FAL, and CLRA on behalf of the following Class:

> All persons (excluding officers, directors, and employees of Defendants) who purchased, on or after January 1, 2006, Defendants' Cobra Products (in all packaging sizes and iterations) in California for their personal own use rather than for resale or distribution.

## III.   ARGUMENT

### A.   Standards on Class Certification

Federal Rule of Civil Procedure 23 governs class actions.  Fed. R. Civ. P. 23.  A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)).  The party moving for class certification may not rest on mere allegations, but must provide facts to satisfy these requirements.  *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012).

California also "has a public policy which encourages the use of the class action device." *Richmond v. Dart Indus., Inc*., 29 Cal. 3d 462, 473 (1981); *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004) (same).   "In determining whether class certification is appropriate, the question is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Hofstetter v. Chase Home Fin., LLC*, No. C10-01313 WHA, 2011 WL 1225900, at *6 (N.D. Cal. Mar. 31, 2011) (internal quotations and citations omitted).

The trial court engages in a "rigorous analysis" to ensure the Rule 23 class certification requirements have been satisfied. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982).   In doing so, the court may "probe behind the pleadings" to determine that the requirements have been met, which may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("*Dukes*").   The court's analysis does not, however, "equate . . . [to] an in-depth examination of the underlying merits," or permit the court to "turn class certification into a mini-trial." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).   "Rather, the court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis." *In re Ferrero Litig.*, 278 F.R.D. 552, 557 (S.D. Cal. 2011).   Thus, "Rule 23 allows certification of classes that are fated to lose as well as classes that are sure to win." *Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).   The party seeking class certification must be prepared to prove that there are, in fact, sufficient common questions of law or fact that support class treatment of the claims at bar. *Dukes*, 131 S. Ct. at 2550, 2551; *Tait*, 289 F.R.D. at 474.   In addition, there are threshold requirements that the named plaintiffs have standing, and that the class be ascertainable. *See Zeisel v. Diamond Foods, Inc.*, No. C10-01192 JSW, 2011 WL 2221113, at *3, 6 (N.D. Cal. June 7, 2011).

5

**B.      Plaintiffs have Standing to Pursue Claims on Behalf of the Class**

Generally, standing exists where a plaintiff has suffered an injury that is fairly traceable to the defendant's conduct, whereby a favorable ruling will redress that injury. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594-95 (9th Cir. 2012) (citing to U.S. Const., art. III).  For the UCL and FAL, a named plaintiff acting on behalf of a class must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code §§ 17204, 17535.  The named plaintiff must actually rely on the challenged advertising, "by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("*Tobacco II*"). One way to prove that a misrepresentation is "an immediate cause" is to demonstrate that, in the absence of the challenged representation, the named plaintiff "in all reasonable probability" would not have purchased the product.  *Id.*

"While a plaintiff must show the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was the only cause."  *Id.* "It is not necessary that [a] plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct." *Id.* (internal quotations omitted).  "It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision [to] [purchase] [the] [product]."  *Id.* at 326-27.  "Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Id.* at 327.  "A misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question . . . ." *Id.*  (internal quotations and citation omitted).

Here, Plaintiffs read and relied upon the Defendants' material misrepresentations as to the quality and attributes of Cobra, including claims the Product is a "Powerful Men's Formula," "with Yohimbe & Horny Goat Weed" that will allow users to "Perform [their] Best with Animal Magnetism"; that it contains "'aphrodisiac' plants to enhance . .

. sexual energy"; that it will "improve . . . performance"; that it is "Scientifically blending select, high-quality herbs"; that its "Natural Balance has energized people's health and well-being"; that it "offer[s] specialty supplements that work", which "Help[] people live healthier, more enjoyable lives"; that it consists of "proprietary formulas" that contain the "Most famous of all performance enhancing herbs"; that "Cobra blends exotic herbs from the Orient, South Pacific, and Africa"; and that it will "Take Virility to the Max!".  *See* ¶¶ 96 & pp. 7, 9, 10, 12 (Product Label Pictures). In making their decisions to purchase Cobra, Plaintiffs were seeking a high-quality and effective aphrodisiac that enhanced energy, performance and health, as described on the Product's label.  ¶ 95.  Defendants' Product statements, including those outlined above, played a substantial part in Plaintiffs' decision to purchase Cobra because if Plaintiffs had known it was ineffective for its respective uses, they would not have bought it.  ¶¶ 16, 19, 25, 96-100.  Accordingly, Defendants' efficacy statements regarding Cobra were material to Plaintiffs.

Because Cobra did not deliver the benefits and characteristics as advertised, Plaintiffs lost money in the form of the purchase price they paid for falsely and deceptively labeled goods.  *See* ¶¶ 95-103; *see also Tobacco II*, 46 Cal. 4th 298; *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 319-325 (2011) (in UCL action, one of the "innumerable ways" in which economic injury can be shown is by purchasing a product that the plaintiff would not otherwise have purchased); *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (same).  Accordingly, Plaintiffs have standing to bring the instant claims on behalf of themselves and potential Class members.

Absent class members need not have standing, so long as at least one named plaintiff has standing.  *See Bruno v. Quten Research Inst.*, *LLC*, 280 F.R.D. 524, 530-532 (C.D. Cal. 2011), *reconsideration denied*, 280 F.R.D. 540 (C.D. Cal. 2012) (citations omitted); *Tobacco II*, 46 Cal. 4th at 320; *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 1970 (2012) (ruling that absent class members have concrete and particularized injury for Article III standing where "[e]ach alleged class member was relieved of money" from purchasing deceptively advertised

goods; and the UCL does not "preclude class standing" simply because it "gives a right to monetary relief . . . without a more particularized proof of injury and causation"). Because the Class here is defined to only include purchasers of Cobra, all absent class members have standing.

## C.   The Class is Ascertainable

"Although there is no explicit class definition requirement in [Rule] 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Zeisel*, 2011 WL 2221113, at *5-6. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Zapka v. Coca-Cola Co.*, 2000 WL 1644539, at *3 (N.D. Ill. Oct. 27, 2000). The class, however, need not be "so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). In addition, a proposed class is ascertainable if defined in a way such that anyone within it would have standing. *See Tourgeman v. Collins Fin. Servs.*, No. 08-cv1392 JLS (NLS), 2011 WL 5025152, at *5-6 (S.D. Cal. Oct. 21, 2011) (UCL class was not overbroad where members were "by definition" injured); *Greenwood v. Compucredit Corp.*, No. 08-04878CW, 2010 WL 4807095, at *4 (N.D. Cal. Nov. 19, 2010) (same).

Here, the Class is ascertainable because it is readily identifiable by the following objective criteria, as set forth in the Class definition: (1) all persons who purchased (2) Defendants' Cobra Products (in all packaging sizes and iterations), (3) on or after January 1, 2006, (4) in California (5) for their own personal use (6) exclusive of Defendants' officers, directors and employees. *See* ¶¶ 108-109; *see also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) ("By these objective criteria the members of the proposed class can be ascertained by 'tangible and practicable standards for determining who is and who is not a member of the class'"). Further, the Class is limited to "purchasers," and therefore only those who lost money buying the deceptively advertised Products are included. *See Mazza*, 666 F.3d at 595 ("To the extent that class members were relieved of their money by Honda's deceptive conduct . . . they have

8

suffered an 'injury in fact.'") (quoting *Stearns*, 655 F.3d at 1021); *Guido v. L'Oreal, USA, Inc.*, Nos. CV 11-1067 CAS (JCx), 2013 WL 3353857, at *18 (C.D. Cal. July 1, 2013) ("because the requirement for membership in the class is whether a consumer purchased a particular product after a particular date, the class is easily identifiable"). Therefore, the proposed Class is ascertainable, which favors class treatment.

## D.     The Rule 23(a) Requirements are Satisfied

### 1.     Numerosity

The proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  For purposes of this Motion, Defendants have agreed not to contest numerosity.  Decl. of Ronald A. Marron filed concurrently herewith ("Marron Decl."), Ex. 1.

### 2.     Commonality

Rule (23)(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The commonality requirement is less rigorous than the companion requirements of Rule 23(b), and is construed permissively.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "All questions of fact and law need not be common to satisfy the rule."  *Id.*  Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*  Commonality requires Plaintiffs to demonstrate that "class members have suffered the same injury," by showing their claims "depend upon a common contention . . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

"[F]or purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 2556; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (one question of fact or law is sufficient).  In the context of false or deceptive advertising claims, there is essentially a single misrepresentation (the challenged product is effective for a particular

ailment) and a single injury (loss of money in purchasing a product that did not work as represented).  *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal 2011) (certifying class of homeopathic drug purchasers and finding commonality because their UCL and CLRA claims distilled to "a single misrepresentation that was made identically to all potential class members. . . . [and their] injury is in purchasing [the drug] in reliance on the alleged misrepresentation") (citing *Dukes*, 131 S. Ct. at 2551).

The instant litigation raises the following common questions of fact and law: (1) whether Defendants contributed to, committed, and/or are responsible for the conduct alleged in the SAC; (2) whether Defendants' conduct constitutes the violations of law alleged in the SAC; (3) whether Defendants acted willfully, recklessly, negligently, or with gross negligence in violations of the law alleged in the SAC; and (4) whether Class members are entitled to compensatory, injunctive and other equitable relief.  ¶ 110.  Each interrelated question presents one "common contention capable of class-wide resolution" – that Defendants' claims of Cobra's effectiveness were so misleading as a whole that they were able to deceive a reasonable consumer.  *Dukes*, 131 S. Ct. at 2551.

Plaintiffs' and Class members' claims are based on the misrepresentations Defendant made on Cobra's packaging and labeling for Products sold within California during the Class period.  *See* ¶¶ 109, 111, 114.  Thus, every class member who purchased Cobra was exposed to the challenged representations.  Accordingly, the determination of whether Defendants' representations were false, misleading or unlawful will generate common answers that will resolve "in one stroke" an issue "central to the validity" of each Class member's claim—whether they lost money as a result of Defendant's false or deceptive advertising.  *Dukes*, 131 S. Ct. at 2551.[2]  Thus, commonality is satisfied.

### 3.    Typicality

Like commonality, the typicality requirement of Rule 23(a)(3)) is also a

---

[2] This case does not pose commonality problems that might arise in an employment class, where a supervisor may have subjected different class members to disparate, discriminatory treatment.  *See Dukes*, 131 S. Ct. at 2554 (noting, nevertheless, that commonality could be proved where there was "a uniform employment practice").

"permissive standard." *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009). "Typicality does not mean that the claims of the class representatives must be identical or substantially identical to those of absent class members." *Stanton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (internal quotations omitted). Rather, they only need to be "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

Plaintiffs satisfy the typicality standard because their claims are identical to those of absent Class members, both of which derive from the same set of facts and legal theories. Plaintiffs purchased Cobra during the Class Period in reliance on Defendants' false or misleading efficacy statements about the Products, and lost money as a result. ¶¶ 16, 19, 95-103; 109. Beyond that, a "plaintiff[']s individual experience with the product is irrelevant where, as here, the injury under the UCL, FAL, and CLRA is established by an objective test." *Bruno*, 280 F.R.D. at 534; *see also Stearns*, 655 F.3d at 1021-1022 (discussing objective standards applicable to UCL and CLRA). At trial, Plaintiffs can prove their claims through use of objective proof "such as consumer survey evidence, that the challenged statements tend to mislead consumers." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010). Moreover, a generalized referral to product labeling is sufficient proof of the representations consumers relied upon in purchasing that product. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006) ("A false or misleading advertising campaign need not 'consist of a specifically-worded false statement repeated to each and every [member] of the plaintiff class.'"). Given that the same proof would suffice for Plaintiffs' claims as it would for the Class' claims, Plaintiffs' claims are typical of those of the putative Class. *See id.*

### 4.   Adequacy

Representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Traditionally, courts have engaged in a two-part analysis to determine if the plaintiffs have met the requirements of Rule 23(a)(4): (1) the class representatives must not have interests antagonistic to the unnamed class members

and (2) the representatives must be able to prosecute the action vigorously through qualified counsel." *Sweet v. Pfizer*, 232 F.R.D. 360, 370 (C.D. Cal. 2005) (internal quotations and citations omitted). "[C]ourts have generally declined to consider conflicts . . . sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975). Speculative conflicts are insufficient to support the denial of class certification. *See Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, *9 (N.D. Cal. Dec. 21, 2010) ("The Ninth Circuit . . . does not favor denial of class certification on the basis of speculative conflicts.") (internal quotations and citations omitted).

### i.   Plaintiffs are Adequate Class Representatives

"Absent contrary evidence from the party opposing class certification, adequacy of representation is generally presumed." *Madison Assocs. v. Baldante*, 183 B.R. 206, 217 (Bnkr. C.D. Cal. 1995). "[A] plaintiff may adequately represent the class if he or she has a basic understanding about the nature of the suit." *Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2009 WL 281941, *11 (N.D. Cal. Feb. 5, 2009); *see also Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011) (Because "[t]he threshold of knowledge required to qualify a class representative is low[,] a class representative will be deemed inadequate only if "startlingly unfamiliar" with the case.").

Here, Plaintiffs Ortega and Lambert are adequate Class Representatives because they have a basic understanding of the suit and their roles in it, and are willing to sacrifice the time necessary to serve as Class Representatives. *See* Decls. of Frank Ortega & Troy Lambert, filed concurrently herewith. Plaintiffs have shown their commitment to the Class by taking time out of their schedules to review documents and answer questions pertinent to this litigation, and to be deposed. *See id.* Plaintiffs have also remained in close contact with counsel since this case's inception. *See id.* Plaintiffs do not possess any interests that conflict with those of the proposed Class because, like absent Class members, Plaintiffs relied on Defendant's misleading advertisements in purchasing Cobra, lost money when the Product did not work as advertised, and are motivated to

establish Defendant's liability and attain remedies equally applicable to and beneficial for the Class. *See id.*; ¶¶ 15-22, 95-104.

ii.    *Plaintiffs' Attorneys are Adequate Class Counsel*

"[A]dequate representation is usually presumed in the absence of contrary evidence." *Tourgeman*, 2011 WL 5025152 at *13. As such, defendant's objections to adequacy of class counsel should be taken with "a grain of salt." *See id.* "To meet this requirement, the lead Plaintiffs' counsel must be 'qualified, experienced, and generally able to conduct the proposed litigation . . . .'" *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 185 (S.D. N.Y. 2005). An attorney's prior experience in representing classes in cases that involve similar disputes may qualify Plaintiffs' counsel for adequacy purposes under Rule 23(a)(4). *See id.* (Plaintiffs' counsel deemed adequate to represent class in securities action under Rule 23(a)(4) based on past class representation in antitrust, securities, and in other commodity futures matters.)

Here, Plaintiffs' counsel are adequate to represent the putative Class because they have significant experience in prosecuting consumer fraud class action lawsuits based on false or deceptive advertising. *See* Marron Decl. ¶¶ 3-25 & Exs. 2-3. In addition, the Law Offices of Ronald A. Marron and the Weston Firm should be appointed Lead Class Counsel because they have demonstrated the ability to diligently pursue the instant claims on behalf of Plaintiffs and the proposed Class, and have sufficient resources to do so successfully. *See id.* Accordingly, Plaintiffs respectfully request the Court appoint the Law Offices of Ronald A. Marron and the Weston Firm as Lead Class Counsel.

**E.    The Rule 23(b)(3) Requirements Are Satisfied**

In addition to the Rule 23(a) requirements, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548. Rule 23(b)(3) requires the Court to find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). Relevant factors are: "the class members' interests in individually

controlling the prosecution or defense of separate actions;" the extent and nature of any other litigation regarding the same issues; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and manageability. Fed. R. Civ. P. 23(b)(3)(A)-(D).

### i.     Common Issues Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation  . . . [and] focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. When common questions present a significant aspect of the case and can be resolved for all class members in a single adjudication, there is clear justification for handling the dispute on a representative basis. *See id.*

Here, the central, overriding, and predominate question is whether Cobra's challenged labeling is false or misleading. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (holding that "the primary evidence in a false advertising case is the advertising itself") (citation omitted).  This determination is not made with regard to each class member, but under a single, objective, and common "reasonable consumer" standard. *See id.*  Whether Defendants made misrepresentations in marketing Cobra during the Class Period, and whether these misrepresentations were material to the average consumer, are common questions subject to common proof.

### ii.     UCL, FAL and CLRA Claims

"To state a claim under either the UCL or [FAL], based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Tobacco II*, 46 Cal. 4th at 312 (internal quotations and citations omitted).  This is an objective test subject to common proof. *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 448 (N.D. Cal. 2009) ("Plaintiffs may prove with generalized evidence that Defendant's conduct was 'likely to deceive' members of the public.").

Additionally, the UCL and FAL are strict liability statutes under which only the named plaintiff need demonstrate injury and causation. *See Tobacco II*, 46 Cal. 4th at

319-20.  The lead "plaintiff need not demonstrate [a representation] was the only cause," or even the sole, predominant or decisive factor in why he purchased the product. *Plascencia*, 259 F.R.D. at 448.  It is enough that the representation was a substantial factor in influencing plaintiff's decision.  *See id.*

The CLRA uses the same "likely to deceive a reasonable consumer" standard.  *See Stearns*, 655 F.3d at 1022.  While the CLRA requires each class member to have an actual injury that stems from defendant's unlawful practice, causation (*i.e.*, reliance) may be presumed on a class-wide basis where the misrepresentation was material.  *Id.*; *Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355, 363 (1976) (same); *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1292-93 (2002) (same).  This rule also applies to cases regarding omissions.  *See id.* at 1293 (materiality for omissions can be determined by evidence of "acts thereafter [that] were consistent with reliance," such as purchasing the misrepresented product) (citing *Occidental Land, Inc.*, 18 Cal. 3d at 363).  "A misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining" whether to purchase a product.  *Plascencia*, 259 F.R.D. at 448.

"This objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate 'class members' individual interaction with the product.'"  *Tait*, 2012 WL 6699247, at *12 (citations omitted).  "For this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL."  *Id.* (internal citing *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. June 12, 2012); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012); *Chavez*, 268 F.R.D. at 375-380; *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008)).

Here, Plaintiffs will use common evidence to satisfy the objective test for their UCL, FAL, and CLRA claims.  First and foremost, Plaintiffs will offer Cobra's packaging, which, in itself, is the "primary evidence in a false advertising case," and which did not differ throughout the class period.  *See Williams*, 552 F.3d at 938; Marron

Decl., ¶ 26 & Ex. 4.   Next, Plaintiffs will use expert testimony, such as a consumer survey expert, to establish both that Defendants' advertising is likely to deceive and is material to a reasonable consumer.  *See Yumul*, 733 F. Supp. 2d at 1129; *Hitt v. Ariz. Bev. Co., LLC*, No. 08cv809 WQH (POR), 2009 WL 449190, at *6 (S.D. Cal. Feb. 4, 2009). Plaintiffs also intend to submit proof regarding the lack of efficacy for Defendants' Products, such as scientific expert testimony regarding Cobra's ingredients, and their lack of safety and/or effectiveness as an unlawful OTC aphrodisiac.  Based on the foregoing, Plaintiffs' UCL and FAL claims are subject to proof through common evidence and thus satisfy the predominance requirement.

### iii.   Liability Will be Established by Viewing Cobra's Label as a Whole

Under the FDCA, product labels and/or advertisements are considered as a whole in determining whether a product has been misbranded or the advertising is misleading. *See* 21 U.S.C. § 321(n).[3]  The California Sherman Law also provides "[i]n determining whether the labeling or advertisement of a . . . drug . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account."  Cal. Health & Safety Code § 110290.  "The extent that the labeling or advertising fails to reveal facts concerning the . . . drug . . . or consequences of customary use of the . . . drug . . . shall also be considered."  *Id.*

In addition, claims under the CLRA, FAL and UCL are not based on reliance on specific representations alleged to be false, but instead on the allegedly deceptive effect on consumers that result from a company's marketing.  *See Kwikset Corp.*, 51 Cal. 4th at 328. ("Simply stated:  labels matter.  The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they make and come to associate with a particular source."); *Williams*, 552 F.3d at 938; *see also In re POM Wonderful*

---

[3]  The California Sherman Law (Cal. Health & Safety Code §§ 109875, *et seq.*) incorporates the general misbranding section of the FDCA.  *See id.* §§ 110110-110111, 110115 (all nonprescription drug regulations and regulations for new drug applications under the FDCA are the regulations of this State).

*LLC Mktg. & Sales Practices Litig.*, No. ML 10-02199 DDP (RZx), 2012 WL 4490860, at \*4 (C.D. Cal. Sept. 28, 2012) ("A false or misleading advertising campaign need not 'consist of a specifically-worded false statement repeated to each and every [member] of the plaintiff class.'").  For omissions, a person cannot rely on information not provided to them and, therefore, Plaintiffs only need prove that the omitted information was material, an objective standard that can be determined through consumer survey evidence.  *See Mass. Mut. Life Ins.*, 97 Cal. App. 4th at 1295 ("If the undisclosed assessment was material, an inference of reliance as to the entire class would arise . . . .").

Common issues of fact and law predominate over all of Plaintiffs' causes of action because they involve the same misrepresentations or omissions, taken as a whole; they are subject to the reasonable consumer standard; the labels were the same throughout the class period; and liability can be established by common proof that relates to all claims. *See* Marron Decl. ¶ 26 & Ex. 4.

### iv.    Class Treatment is Superior

In addition to predominance, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of a controversy." Fed. R. Civ. P. 23(b)(3).  Courts should consider the interests of individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum and manageability of the class action.  *See id.*  The superiority inquiry also assesses whether the objective of the class action procedure will be achieved and compares alternative mechanisms for dispute resolution.  *See Hanlon*, 150 F.3d at 1023.  Courts are afforded wide discretion to evaluate superiority because they are "in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Bateman*, 623 F.3d at 712.  California's consumer protection statutes and the State's public policy also emphasize the use of the class action device. *See Richmond*, 29 Cal. 3d at 473; *Ballard v. Equifax Check Servs.*, *Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) (the size of individual damages under consumer fraud statutes are typically too small to afford incentive for plaintiffs to sue individually).

17

Here, a class action is superior to other available methods for the fair and efficient adjudication of the instant controversy. Neither Plaintiffs nor the proposed Class members have an interest in controlling the prosecution of this action, as their claims are virtually identical. Class certification of the case at bar also promotes judicial efficiency because it permits Plaintiffs' and Class members' common claims  and issues to be tried once with a binding effect on all parties.  Given the relatively small size of each Class members' claim, approximately $16 to $17 per Product, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the instant causes of action.  Denial of class certification in this regard would allow Defendant's deceptive conduct to continue unfettered, as no consumer could otherwise reasonably challenge Cobra's advertising in an individual suit arising out of such a nominal purchase amount.

    *v. The Class is Manageable*

Rule 23(b)(3)(D) requires that a class be manageable.  Generally, "courts determine manageability by reviewing affidavits, declarations, trial plans, and choice-of-law analyses;" "whether a need for individual proof will hinder the fair presentation of common questions . . . [;] and whether class members can be identified without making numerous fact-intensive inquiries."  Man. for Complex Litig. § 21.15.  As discussed above, there is no need for individual proof for Plaintiffs' claims because all of the theories of relief can be proved with common evidence of deception or unlawfulness.

The choice of law analysis is also simple because only California law will apply to this action.  A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law.  *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  California may apply its law to a class where the state has a "significant contact or significant aggregation of contacts' to the claims" asserted such that "application of the forum law is 'not arbitrary or unfair'" and "so long as the interests of other states are not found to outweigh California's interest in having its law applied." *Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 919-21 (2001) (quoting *Phillips*

*Petroleum Co v. Shutts*, 472 U.S. 797, 821-22 (1985)).

Here, by definition, all putative Class members were located in California when they purchased Cobra. Accordingly, there is significant contact with California for all of the claims asserted. It is not arbitrary or unfair to apply California law to Defendants because Defendants are registered to do business in California and purposefully sought out the benefits of the lucrative California market, by distributing Cobra to hundreds of retailers in California for their eventual sale to California consumers. *See* ¶¶ 5-12; *see also Mazza*, 666 F.3d at 594 (concluding that the law of the "place of the wrong" applies to false advertising cases, and the place of the wrong is "the state where the misrepresentations were communicated to plaintiffs, not the state where the intention to misrepresent was formed") (citation omitted).

> vi. *Monetary relief is readily calculable and tethered to Plaintiffs' theories of liability*

Parties seeking class certification must "establish that damages could be measured on a classwide basis" in order to establish predominance. *Comcast v. Behrend*, 569 U.S. __, 133 S. Ct. 1426, 1431, n.4 (2013). "Calculations need not be exact, . . . but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case." *Id.* at 1433 (citation omitted). A party seeking class certification should meet this burden of proof with "evidence demonstrating the existence of a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability." *See Guido*, 2013 WL 3353857, at *15. The Court should bear in mind, however, that "predominance requires a qualitative assessment . . . it is not bean counting." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. Aug. 22, 2013), *cert. denied*, *Sears, Roebuck & Co. v. Butler*, 134 S. Ct. 1277 (2014). Thus, Plaintiffs' evidence must merely show that class wide relief is tethered to common and predominate theories of liability, and need consist of calculations of damages on the merits. *Id.* (finding error where "district court asked not for a showing of common questions, but for a showing of common answers to those questions. Rule 23(b)(3) does not impose such a

19

heavy burden.")  Here, for each of Plaintiffs' theories of liability, damages and equitable restitution can be determined on a classwide basis because Plaintiffs seek to restore the entire purchase price to the Class.[4]

The UCL and FAL allow Plaintiffs to recover restitution and injunctive relief, but not damages.  *Kwikset Corp.*, 51 Cal. 4th at 337 (citing Cal. Bus. & Prof. Code § 17203).  Under the CLRA, Plaintiffs may seek injunctive relief and restitution plus actual, statutory and punitive damages.  *See* Cal. Civ. Code § 1780(a).  The appropriate measure for restitution under all three prongs of the UCL is Plaintiffs' out-of-pocket cost.  *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 228-229 (2012) ("Section 17203 [of the UCL] provides for restitution 'to restore to any person in interest any money or property, real or personal, which may have been acquired' by means of the unfair practice.  'The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.'") (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003)).  The out-of-pocket measure is also the appropriate measure of restitution for Plaintiffs' CLRA and FAL claims based on fraud.  *Delarosa*, 275 F.R.D. at 592 (the appropriate measure of relief for all consumer fraud claims was out-of-pocket cost to the consumer).

The amount spent on Cobra by the class can be established by Defendants' own sales data and suggested retail sales prices produced in discovery.  *See* Marron Decl., Exs. 5 & 6.  Defendants produced a sales chart in a prior lawsuit about the same Product at issue in this case, which shows that approximately 160,000 bottles of the Product were sold in California from 2006 to 2011 (this figure can be updated through discovery in this case); and Defendants have produced sales figures for the Product in the State of California in this case.  *See* Marron Decl. ¶¶ 27, 28 & Ex. 5 (chart of units sold, by year), Ex. 6 (actual sales data for California).  Thus, using the average suggested retail sales

---

[4] This case is unlike the antitrust action in *Comcast* because that case involved deception arising out of a *pricing structure itself*.  *See Comcast*, 133 S. Ct. at 1428.  Plaintiffs here allege Cobra's labeling is false or deceptive and do not challenge its pricing structure.

price for the Product ("MSRP"), which can also be obtained in discovery, multiplied by the number of units sold, will establish total amount of restitution dollars owing to the class. *See id.*  In the alternative, the out-of-pocket dollars spent by the class on the Product can be acquired by Plaintiffs from companies that collect point-of-sale information, such as Spins. *See* Marron Decl., Ex. 7.  Or, Plaintiffs can establish through discovery the amount of restitutionary disgorgement Defendants owe to the class as a whole, then divide it on a pro rata, capped basis so that all class members receive the same refund (*i.e.*, $10 per product purchased, up to $100 per household).  *See Delarosa*, 275 F.R.D. at 592 (ruling that because out-of-pocket damages would apply, the amount of money each class member would receive would be the same, whether determined under damages or restitution theories).

Similarly, the appropriate damages measure for Plaintiffs' CLRA and breach of warranty damage claims is also full restoration of the purchase price because Plaintiffs allege and will prove that the Products were worthless, lacking in any value whatsoever. *See id.*; *Guido*, 2013 WL 3353857, at *14 (setting forth benefit of the bargain rule under UCC, which has been adopted in California) (citing Cal. Com. Code § 2714(2)).  This can be established on a classwide basis by using the same methodology for restitution – number of units sold times average MSRP.  *See* Marron Decl., Exs. 5 & 6.  Identical damages are not required for classwide certification and predominance, so long as "issues of liability are genuinely common issues."  *Butler*, 727 F.3d at 801 ("common proof of damages for class members . . . is not required").

Plaintiffs' CLRA punitive damages claim can also be established on a classwide basis.  The appropriate measure under California law requires an assessment of three factors.  *Adams v. Murakami*, 54 Cal. 3d 105, 110-111 (1991) (party seeking punitive damages bears burden of proving an appropriate amount, and relevant factors include "the nature of the defendant's wrongdoing . . . the amount of compensatory damages . . . [and] the wealth of the particular defendant . . .."); *see also Barnes v. Logan*, 122 F.3d 820, 824 (9th Cir. 1997) (citing *Adams*, 54 Cal. 3d at 123).  In discovery, Plaintiffs will

be able to obtain information as to Defendants' wealth, and will be able to establish the particular nature of the wrongdoing at issue.   For example, Plaintiffs can prove Defendants' knew of the unlawfulness of the Product due to a prior lawsuit over the same issues, *Peviani v. Natural Balance, Inc.*, No. 3:10-cv-02451-AJB (BGS) (S.D. Cal.), but continued to take advantage of consumers who were vulnerable to Defendants' promises of a sexual enhancement product.  *See* Marron Decl. ¶ 27.

Finally, not only is a full refund of the purchase price (i.e., out-of-pocket price) consistent with all of Plaintiffs' theories of liability, but this assessment will not require individualized proof.  *See id.*; *Hansen Beverage Co. v. Vital Pharm., Inc.*, 08-CV-1545-IEG POR, 2010 WL 1734960, at *3-4 (S.D. Cal. Apr. 27, 2010) (applying Lanham Act standards, which are identical to the CLRA, UCL and FAL (*see* 15 U.S.C. §§ 45(a), 52), and holding that where an advertiser makes false efficacy claims, injury to the class is presumed); *In re Steroid Hormone Prod. Cases*, 104 Cal. App. 4th 145, 160 (2010) (finding that illegality of a product would be material to the class and no individualized proof of reliance or injury for class members was necessary under the CLRA).

## F.     The Requirements of Rule 23(b)(2) Are Satisfied

Plaintiffs request certification under Rule 23(b)(2) in the alternative, or in addition, to certification under (b)(3).  In the Ninth Circuit, a class may be certified under both (b)(2) and (b)(3).  *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1196 (9th Cir. 2000). First, certification under (b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Second, "[a] class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where [monetary] relief is 'merely incidental to [the] primary claim for injunctive relief.'"  *Zinser*, 253 F.3d at 1195 (citation omitted).  Applying *Dukes*, the Ninth Circuit has held "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted;" meaning, damages are not an issue if they need not be determined individually.  *Ellis*, 657 F.3d at 987 (quotations omitted).

22

For the first element, Defendant's conduct affected the class equally because the Products' packaging is uniform throughout the state and all class members were accordingly exposed to the same misleading or false labels. *See* Marron Decl. ¶ 25 & Ex. 4. The same standard applies to the entire class for injunctive relief because California law protects consumers from advertising that, even if true, is likely to deceive. *Kwikset Corp.*, 51 Cal. 4th at 328. Plaintiffs' proposed injunctive relief would benefit the entire Class equally because a corrective advertising campaign would ensure that class members who purchased a misleadingly labeled Product are made aware of Defendants' false and deceptive claims. *See id.* Plaintiffs also seek to enjoin Defendants from using misleading claims in the future, which would ensure class members in the market for future purchases are not misled again.

For the second element, Plaintiffs' actual damages are not subject to individualized proof because Plaintiffs are limited to their out-of-pocket cost as restitution and damages, and this monetary relief is equitable in nature, flowing from the very wrongs asserted. *See Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995) (en banc) ("In California, a defrauded party is ordinarily limited to recovering his out-of pocket loss.") (quotations and citation omitted). "In fraud cases involving the 'purchase, sale or exchange of property,' the [California] Legislature has expressly provided that the 'out-of-pocket' rather than the 'benefit-of-the-bargain' measure of damages should apply." *Id.* (citing Cal. Civ. Code §§ 3343(a), (b)(1)); *see also Dukes*, 131 S. Ct. at 2559 (commenting favorably on 5th Cir. decision that damages are incidental when they "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief") (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)).

While ordinarily a breach of warranty claim provides benefit of the bargain damages (*see* U.C.C. § 2-714(2)), the benefit of the bargain "is the difference between the actual value of what the plaintiff has received and that which he expected to receive." *Salahutdin v. Valley of Cal., Inc.*, 24 Cal. App. 4th 555, 564 (1994). Because Plaintiffs

23

expected to receive an effective, truthfully advertised Product and did not receive what they paid for, the entire purchase price needs to be restored to give the class benefit of the bargain damages. *See id.* A buyer may also elect to receive the price paid in lieu of benefit of the bargain, which translates to out-of-pocket cost. U.C.C. § 2-711(1).

Punitive damages under the CLRA would not require an individualized determination for each class member because each class member would receive a pro rata share of any punitive damages awarded. *See Ellis*, 657 F.3d at 987 ("The court may consider whether punitive damages are an allowable form[] of incidental monetary relief consistent with the Court's interpretation of 23(b)(2) because they do not require an individual determination.") (internal quotations and citations omitted). And, the Class members' actual damages and remedies for their claims are limited to the amount they spent purchasing Cobra and are not individualized in nature. This case does not involve compensatory damages, as would an employment class, and thus the second and third factors highlighted by the Ninth Circuit in *Ellis* are not at issue. *See id.* at 987-988.

Finally, manageability, which is at issue for a Rule 23(b)(3) class, is not at issue for a (b)(2) class. *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) ("[B]y its terms, Rule 23 makes manageability an issue important only in determining the propriety of certifying an action as a (b)(3), not a (b)(2), class action."), *aff'd in pertinent part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). Accordingly, the Court should certify the class under (b)(2) in the alternative or in addition to (b)(3). *See Ellis*, 657 F.3d at 988 (stating a court could certify a "Rule 23(b)(2) class for equitable relief and a separate Rule 23(b)(3) class for damages").

## IV.   THE COURT SHOULD APPROVE NOTICE TO THE CLASS

Under Rule 23(c)(2)(B), for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Filed concurrently with this Motion is the Declaration of Gajan Retnasaba of Classaura, detailing a Notice Plan for this case. Because the Products are not sold

directly to consumers but are purchased off store shelves, individual notice is not possible in this action except for the handful of consumers for whom Defendants possess contact information. Retnasaba Decl. ¶¶ 3, 13. Thus, to reach all potential class members, the best notice practicable under the circumstances is notice by publication. *See id.* ¶¶ 3-10, 12; Fed. R. Civ. P. 23(c)(2)(B). But the Court should also order Defendants to post notice on their own website(s) relating to the Product at no cost to the class, as this will significantly increase the reach of the Class Notice. Retnasaba Decl. ¶ 11.

Plaintiffs include draft notices to the class, in summary and detailed form, notifying them of the certification of this class, how it will affect their rights, and the deadline to opt-out of the class, as required under Rule 23(c)(2)(B). *See* Marron Decl., Ex. 8. The short notice directs class members to the claims administrator-created web site, where the detailed notice may be viewed. The notices contain all information required under Rule 23(c)(2)(B) and contain neutral language. *See id.* The Court should respectfully approve the Notice Plan, the proposed Notices, and set an opt-out date for three months after its order certifying the class.

## V. <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request this Court grant their Motion for Class Certification in its entirety.

Dated: April 7, 2014                          Respectfully Submitted,

**THE LAW OFFICES OF RONALD A. MARRON**
*/s/ Ronald A. Marron*
RONALD A. MARRON
SKYE RESENDES
ALEXIS WOOD
651 Arroyo Drive
San Diego, CA 92103
Telephone:  (619) 696-9006
Facsimile:   (619) 564-6665

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
PAUL K. JOSEPH (287057)
*paul@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (480) 247-4553

***Counsel for Plaintiffs and the Proposed Class***

*Ortega, et al., v. Natural Balance Inc., et al.*, 2:13-cv-05942-ABC-E
MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION