1 | IRELL & MANELLA LLP
John C. Hueston (164921)
2 | *jhueston@irell.com*
Andra B. Greene (123931)
3 | *agreene@irell.com*
Steven N. Feldman (281405)
4 | *sfeldman@irell.com*
840 Newport Center Drive, Suite 400
5 | Newport Beach, California 92660-6324
Telephone: (949) 760-0991
6 | Facsimile: (949) 760-5200

7 | MONROY, AVERBUCK & GYSLER
Jon F. Monroy (51175)
8 | Jennifer E. Gysler (143449)
32123 Lindero Canyon Road, Suite 301
9 | Westlake Village, California 91361
Telephone: (818) 889-0661
10 | Facsimile: (818) 889-0667

11 | Attorneys for Defendant
NUTRACEUTICAL CORP.

12 |

13 | UNITED STATES DISTRICT COURT

14 | CENTRAL DISTRICT OF CALIFORNIA

15 | WESTERN DIVISION

16 | FRANK ORTEGA and TROY
LAMBERT, on behalf of themselves
17 | and all others similarly situated,

18 | Plaintiffs,

19 | vs.

20 | NUTRACEUTICAL CORP., a
Delaware Corporation,

21 |
Defendant.
22 |

23 |

24 |

25 |

26 |

27 |

28 |

Case No. 2:13-cv-05942-AB-E

**DEFENDANT NUTRACEUTICAL CORP.'S NOTICE OF MOTION AND MOTION FOR CLASS DECERTIFICATION; DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Filed Concurrently With Declaration of Andra B. Greene; Declaration of Leslie Garvin; and [Proposed] Order]

Date: December 22, 2014
Time: 10:00 a.m.
Judge: Hon. André Birotte Jr.
Courtroom: 790

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

## NOTICE OF MOTION AND MOTION

### TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 22, 2014 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 790, of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, before the Honorable André Birotte Jr., Defendant Nutraceutical Corp. (hereinafter "Nutraceutical") will and hereby does move the Court for an order to decertify Plaintiffs' class.  Nutraceutical's motion is based upon this Notice of Motion, the Memorandum of Points and Authorities offered in support of the motion, all documents in the Court's file, any matters of which this Court may take judicial notice, and any evidence or argument presented at or prior to the hearing on this matter.  Nutraceutical seeks an order decertifying Plaintiffs' class.

Pursuant to Local Rule 7-3, the parties met-and-conferred regarding this Motion on November 10, 2014 and November 12, 2014, and further agreed that the hearing would be noticed for December 22, 2014.


Dated:  November 17, 2014                    Respectfully submitted,

IRELL & MANELLA LLP
John C. Hueston
Andra B. Greene
Steven N. Feldman



By:_____*/s/ Andra B. Greene*_____
      Andra B. Greene
      Attorneys for Defendants
      NUTRACEUTICAL CORP

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 1 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................1

II.   BACKGROUND ...................................................................................2

III.  LEGAL STANDARD ...........................................................................3

IV.   DECERTIFICATION SHOULD BE GRANTED BECAUSE
      PLAINTIFFS CANNOT MEET THE REQUIREMENTS OF
      RULE 23(b)(3) ......................................................................................5

      A.   Materiality Varies From Consumer to Consumer, And
           Therefore, The Class Should Be Decertified .........................5

      B.   Plaintiffs' Damages Model Fails to Satisfy *Comcast* And,
           Therefore, The Class Should Be Decertified .......................11

           1.   Plaintiffs' "Full Refund Model" Fails As A Matter
                of Law ........................................................................11

           2.   Even If A Full-Refund Model Were Proper,
                Plaintiffs Have Provided Insufficient Evidence Of
                Class-Wide Damages. ................................................14

VI.   PLAINTIFFS NO LONGER SATISFY THE REQUIREMENTS
      OF RULE 23(a) BECAUSE THEIR CLAIMS ARE NOT
      TYPICAL OF THE CLASS ...............................................................17

      A.   Plaintiffs' Unrealistic and Non-Representative Product
           Expectations Give Rise To Unique Defenses ....................17

VII.  CONCLUSION ...................................................................................21

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- i -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Algarin v. Maybelline, LLC*,
   300 F.R.D. 444 (S.D. Cal. 2014)............................................................passim

*Antonio v. Wards Cove Packing Co.*,
   810 F.2d 1477 (9th Cir. 1987)................................................................4

*Bristow v. Lycoming Engines*,
   No. CIV S-061947 LKK GGH, 2008 WL 850306 (E.D. Cal.
   Mar. 28, 2008) ........................................................................................4

*Caldera v. J.M. Smucker Co.*,
   CV 12-4936-GHK VBKX, 2014 WL 1477400 (C.D. Cal.
   Apr. 15, 2014)...........................................................................11, 12, 14

*Camp v. Lockheed Martin Corp.*,
   No. CIV.A. H-97-1938, 1998 WL 966002 (S.D. Tex. Dec. 29,
   1998).........................................................................................................13

*Caro v. Procter & Gamble Co.*,
   18 Cal. App. 4th 644, 664 (1993)...........................................................18

*Cholakyan v. Mercedes-Benz, USA, LLC*,
   281 F.R.D. 534 (C.D. Cal. 2012) ....................................................15, 17

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ....................................................................passim

*Coopers & Lybrand v. Livesay*,
   437 U.S. 463 (1978) ................................................................................3

*Drimmer v. WD-40 Co.*,
   No. 06-CV-900 W (AJB), 2007 WL 2456003 (S.D. Cal. Aug. 24,
   2007).........................................................................................................16

*Edwards v. Ford Motor Co.*,
   No. 11-CV-1058-MMA BLM, 2012 WL 2866424 (S.D. Cal.
   June 12, 2012) .........................................................................................10

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011)....................................................................8

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992)...................................................17, 18, 19, 21

*In re Countrywide Fin. Corp. Mortgage-backed Sec. Litig.*,
   No. 2:11-ML-02265-MRP, 2014 WL 4162382 (C.D. Cal. June
   18, 2014)...................................................................................................13

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- ii -

3177934

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

**Page(s)**

*In re POM Wonderful LLC,*
   No. ML 10-02199 DDP RZX, 2014 WL 1225184 (C.D. Cal.
   Mar. 25, 2014) .................................................................................... 2, 13, 14

*In re Vioxx Class Cases,*
   180 Cal. App. 4th 116 (2009) .................................................................... 6

*Johnson v. Harley-Davidson Motor Co.,*
   285 F.R.D. 573 (E.D. Cal. 2012) ........................................................... 9, 10

*Jones v. ConAgra Foods, Inc.,*
   C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ........... 8, 10

*Lanovaz v. Twinings N. Am., Inc.,*
   No. C-12-02646-RMW, 2014 WL 1652338 (N.D. Cal. Apr. 24,
   2014) .............................................................................................................. 14

*Lavie v. Procter & Gamble Co.,*
   105 Cal.App.4th 496 (2003) ........................................................................ 17

*Marlo v. United Parcel Serv.,*
   639 F.3d 942 (9th Cir. 2011) .......................................................... 3, 8, 10, 17

*Moheb v. Nutramax Labs. Inc.,*
   No. CV 12-3633-JFW JCX, 2012 WL 6951904 (C.D. Cal.
   Sept. 4, 2012) ............................................................................................... 16

*Newcal Indus., Inc. v. Ikon Office Solution,*
   513 F.3d 1038 (9th Cir. 2008) ..................................................................... 9

*O'Brien v. Sky Chefs, Inc.,*
   670 F.2d 864 (9th Cir.1982) ......................................................................... 4

*Perry v. Schwarzenegger,*
   704 F. Supp. 2d 921 (N.D. Cal. 2010) ......................................................... 8

*Rice v. Sunbeam Products, Inc.,*
   No. 2:12-CV-07923-CAS, 2014 WL 794331 (C.D. Cal. Feb. 24,
   2014) .............................................................................................................. 15

*Ries v. Arizona Beverages USA LLC,*
   No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) .................. 4

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ................................................................... 1, 3

*Simon v. Ashworth, Inc., No.* CV071324GHKAJWX, 2007 WL
   4811932, at *3 (C.D. Cal. Sept. 28, 2007) .................................................. 21

*Southland Sod Farms v. Stover Seed Co.,*
   108 F.3d 1134 (9th Cir. 1997) ..................................................................... 9

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

**Page(s)**

*Stanley v. U.S. Steel Co.,*
    04-74654, 2006 WL 724569 (E.D. Mich. March 17, 2006) ...................... 3, 19

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ........................................................................... 15, 16

*Webb v. Carter's Inc.,*
    272 F.R.D. 489 (C.D. Cal. 2011) .................................................................. 10

*Williams v. Gerber Products Co.,*
    552 F.3d 934 (9th Cir. 2008) ......................................................................... 5

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ................................................................. 5, 15

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................. passim

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- iv -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

**MEMORANDUM AND POINTS OF AUTHORITIES**

## I.   INTRODUCTION

It is well-established law that "[a] district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also* Fed. R. Civ. P. 23(c)(1)(C).  Decertification is necessary here, for several reasons.

*First,* in their class certification briefing, Plaintiffs, two purchasers of a dietary supplement known as Natural Balance Cobra ("Cobra"), repeatedly promised the Court that they would provide expert testimony to demonstrate that their claims could be resolved on a class-wide basis.  Relying on these representations, Judge Collins certified the class under Rule 23(b)(3).  Now that discovery is complete, however, it is clear that Plaintiffs' promises were hollow.  Their failure to provide any such promised expert testimony to demonstrate this case can be decided on a class-wide basis compels decertification.

*Second,* Nutraceutical has offered persuasive survey data and expert evidence demonstrating that consumers' interpretations of Cobra's label vary dramatically.  Indeed, the evidence shows that there are no universally held beliefs among consumers regarding any benefits being conveyed by Cobra's label.  What's more, Plaintiffs have failed to offer *any* consumer survey or other reliable evidence to suggest otherwise.  These facts alone likewise compel decertification – in fact, district courts routinely deny certification in such cases.  *See, e.g., Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 459 (S.D. Cal. 2014).

*Third*, Plaintiffs' full refund damages model fails the test set forth by the U.S. Supreme Court in *Comcast Corp. v. Behrend,* 133 S. Ct. 1426 (2013), because – despite expert evidence establishing that Cobra provided a health benefit – it impermissibly assumes that every purchaser is entitled to a full refund.  Notably, a federal court in this District recently decertified a class action on precisely this basis, correctly holding that a full refund model cannot accurately measure damages under these circumstances because it "makes no attempt to account for benefits conferred

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 1 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

upon" consumers. *In re POM Wonderful LLC*, No. ML 10-02199 DDP RZX, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014).

*Fourth*, Plaintiffs' claims are not typical of the class – and are thus not properly certified under Rule 23(a)(3) – because Plaintiffs are subject to unique defenses based on (1) their wholly unreasonable interpretations of Cobra's label, and █████████████████████████████████████████████████ ████████████████

For these reasons, which we full explain fully below, this Court should grant the Motion for Decertification.

## II.   BACKGROUND

This case concerns Plaintiffs' far-fetched allegations that they purchased Cobra, a dietary supplement comprised of herbs, extracts, and other plant based materials, because they thought that it would let middle-aged men maintain erections and have sex for at least an hour at a time every day of the week.  Greene Decl., Ex. A ("Ortega Tr.") at 70:14-21; Greene Decl., Ex. B ("Lambert Tr.") at 28:15-18.  Specifically, despite nothing on the label remotely promising as much, Plaintiff Frank Ortega testified that he purchased Cobra because he believed that using it would allow him to have sex for an "hour, hour and a half" at a time, "multiple times [] per day" every day of the week, with an erection that lasted for "hours."  Ortega Tr. at 70:14-71:13; 72:3-6.  Similarly, Plaintiff Troy Lambert testified that he purchased Cobra because he thought that Cobra would let him have sex for "at least an hour" at a time, every day of the week.  Lambert Tr. at 23:5-10, 28:15-18.  According to Plaintiffs, their beliefs were based primarily on the accurate depiction of a cobra snake on the product's label.  Ortega Tr. at 44:24-45:7, 46:24-47:13; Lambert Tr. 25:11-26:25.

When Cobra purportedly failed to live up to Plaintiffs' fantasies, they sued, alleging claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 2 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

Plaintiffs also sought to represent the class of all persons who had previously purchased Cobra in California, SAC ¶ 109, though they had not yet offered any proof that other consumers shared their unique expectations.  Indeed, they have never offered any such evidence.

Relying on numerous representations from Plaintiffs that have since been proved false – for example, that they would produce consumer survey evidence to demonstrate class-wide reliance – Judge Collins granted Plaintiffs' Motion for Class Certification on June 19, 2014.  Dkt. No. 80 at 17.[1]  Now, with both fact and expert discovery closed, it is clear that Plaintiffs cannot satisfy their burden of showing that class certification is still warranted.

## III.   <u>LEGAL STANDARD</u>

It is well-established law that "[a] district court may decertify a class at any time."  *Rodriguez*, 563 F.3d at 966; *see also* Fed. R. Civ. P. 23(c)(1)(C).  Consequently, as the U.S. Supreme Court has stated, a class certification order is "inherently tentative."  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978).

Critically, the burden of proof on a motion for decertification does not shift to the moving party, but rather remains with the party advocating for class certification.  *Marlo v. United Parcel Serv*., 639 F.3d 942, 947 (9th Cir. 2011) (affirming district court's decertification order).  In fact, if anything, the burden on a plaintiff is greater at the decertification stage because courts are often willing to give plaintiffs the benefit of the doubt when certifying classes at the early stages of litigation.  *See Stanley v. U.S. Steel Co.,* 04-74654, 2006 WL 724569, at *7 (E.D. Mich. March 17, 2006) (noting that courts tend to be "quite liberal in certifying a

---

[1] Specifically, Judge Collins certified a class of "[a]ll persons (excluding officers, directors, and employees of Defendants Natural Balance, Inc., Nutraceutical Corp. and Nutraceutical International Corp.) who purchased, on or after August 14, 2009, Defendants' Cobra Products (in all packaging sizes and iterations) in California for their own use rather than resale or distribution."  Dkt. No. 83 at 2.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1  class when that decision is made at an early stage" because "the action always can

2  be decertified . . . if later events suggest that it is appropriate to do so") (internal

3  quotations marks omitted).

4      While Judge Collins gave Plaintiffs the benefit of the doubt in the early stages

5  of this litigation, with discovery now complete, Plaintiffs are no longer entitled to

6  such generosity.  Plaintiffs' failure to produce the evidence they promised is

7  grounds for decertification.  *See O'Brien v. Sky Chefs, Inc.*, 670 F.2d 864, 869 (9th

8  Cir.1982) (affirming decertification where plaintiffs failed to present evidence

9  supporting their claims), *overruled on other grounds by Antonio v. Wards Cove*

10  *Packing Co.*, 810 F.2d 1477 (9th Cir.1987); *see also Holloway v. Full Spectrum*

11  *Lending*, No. CV065975DOCRNBX, 2008 WL 4184648, at *1 (C.D. Cal. Sept. 4,

12  2008) ("If later evidence disproves the plaintiff's contentions, the court can modify

13  or decertify the class."); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482,

14  493 (C.D. Cal. 2006) ("If the further development of the litigation brings forth

15  evidence that seriously undermines plaintiffs' contentions, then decertification may

16  be appropriate.").

17      Indeed, district courts in the Ninth Circuit routinely decertify classes for lack

18  of sufficient evidence regarding any one of the Rule 23(a) or (b) factors.  *See, e.g.,*

19  *Bristow v. Lycoming Engines*, No. CIV S-061947 LKK GGH, 2008 WL 850306, at

20  *6-7 (E.D. Cal. Mar. 28, 2008) (granting decertification on plaintiffs' UCL and

21  CLRA claims where plaintiffs failed to present sufficient evidence of class-wide

22  damages); *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL

23  1287416, at *9 (N.D. Cal. Mar. 28, 2013) (granting decertification on plaintiffs'

24  UCL, FAL, and CLRA claims where plaintiffs failed to produce evidence of

25  defendant's liability).

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 4 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1  **IV.   DECERTIFICATION SHOULD BE GRANTED BECAUSE**
2  **PLAINTIFFS CANNOT MEET THE REQUIREMENTS OF RULE**
3  **23(b)(3)**

4      Plaintiffs' class was previously certified solely under Rule 23(b)(3), which
5  requires that "questions of law or fact common to class members predominate over
6  any questions affecting only individual members."  Dkt. No. 80 at 16; Fed. R. Civ.
7  P. 23(b)(3).  Under *Comcast*, district courts must conduct a "rigorous analysis" of
8  predominance under Rule 23(b)(3).  133 S.Ct. at 1432.  Where a court's analysis
9  reveals that individual claims predominate, a class may not be certified under Rule
10 23(b)(3).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.
11 2001).  This is precisely the case here, for two reasons:  (1) expert evidence
12 establishes that consumers do not share uniform beliefs regarding the meaning of
13 Cobra's label, and (2) Plaintiffs have failed to provide, as they must under Supreme
14 Court precedent, a class-wide method for determining damages.  Each of these
15 independently sufficient reasons compels decertification.

16      **A.   <u>Materiality Varies From Consumer to Consumer, And Therefore,</u>**
17      **<u>The Class Should Be Decertified.</u>**

18      Plaintiffs allege that they are part of a class of consumers who "[a]bsent
19 Defendants' deceptive claims, would not have purchased Cobra."  SAC ¶ 112.  To
20 prove reliance on a class-wide basis – as they must to maintain a class action –
21 Plaintiffs are required to show that a "reasonable consumer" would likely be misled
22 by Cobra's labeling, *i.e.,* that the label is materially misleading.  *See Williams v.*
23 *Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (allegations of false
24 advertising brought under the UCL, FAL, and CLRA are all governed by the same
25 "reasonable consumer" standard).[2]  Where, however, the evidence demonstrates that
26

27      [2] Any suggestion by Plaintiffs that they are not required to demonstrate actual
class-wide reliance for their UCL and FAL claims can be set aside.  Like the CLRA,
28 the UCL and FAL are governed by the reasonable consumer standard.  *Colgan v.*
*Leatherman Tool Grp.*, 135 Cal. App. 4th 663, 682 (2006).  Thus, under well-

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 5 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1    expectations "vary from consumer to consumer," then "the issue is ***not*** subject to

2    common proof, and the action is properly ***not*** certified as a class action."  *In re*

3    *Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) (emphasis added).  A widely

4    accepted way to determine whether or not consumer expectations vary is through the

5    use of expert evidence regarding consumer behavior, such as consumer surveys.

6         In recognition of this fact, Plaintiffs ***promised over and over again*** in their

7    class certification briefing that they would satisfy the reasonable consumer standard

8    "through use of objective proof *such as consumer survey evidence*."  Dkt. No. 65-1

9    at 11; *id.* at 16 ("Plaintiffs will use expert testimony, *such as a consumer survey*

10   *expert*, to establish both that Defendants' advertising is likely to deceive and is

11   material to a reasonable consumer."); Dkt. No. 75 at 1 ("[t]he standard for all of

12   Plaintiffs' statutory consumer fraud claims is the reasonable consumer, an objective

13   standard that can be accessed via common proof such as *consumer surveys*."); *id.* at

14   4 ("[T]he intended message [of Cobra's label] actually conveyed to consumers *can*

15   *be tested through use of a consumer survey*.").  Yet, discovery is now complete, and

16   Plaintiffs have failed to provide such evidence.  Indeed, Plaintiffs never offered any

17   affirmative marketing expert, let alone any expert survey or other reliable evidence

18   suggesting Cobra's packaging would be perceived as misleading by the reasonable

19   consumer.  This failure is especially glaring given that Judge Collins relied on

20   Plaintiffs' promises in finding that their claims were subject to common proof.  Dkt.

21   No. 80 at 11 (listing "consumer surveys" as among the evidence that Plaintiffs will

22   provide).

23        Nutraceutical, on the other hand, commissioned Dr. Eli Seggev, a well-

24   established "expert in the field of marketing," *Algarin*, 300 F.R.D. at 453, to

25   conduct "a consumer survey to gauge potential purchasers' opinions regarding the

26   ─────────────────────────────

27   established law, "in order to obtain class wide restitution under the UCL [and
     FAL]," Plaintiffs must demonstrate that Cobra's label "was likely to deceive" a

28   reasonable consumer.  *See In re Vioxx Class Cases*, 180 Cal. 4th 116, 136
     (2009).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 6 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1   overall meaning of . . . Cobra['s] packaging, the individual statements . . . on

2   Cobra['s] packing, and consumer expectations regarding the . . . benefits that Cobra

3   . . . may deliver."  Greene Decl., Ex. C ("Seggev Rpt.") at 1.  Dr. Seggev's expert

4   report, attached hereto, provides powerful consumer survey data about purchaser

5   expectations and behavior, which conclusively demonstrate that "potential

6   purchasers harbor ***inconsistent opinions*** regarding the Cobra product packaging,"

7   and that "many respondents did not believe that the various statements and imagery

8   on Cobra['s] . . . packaging conveyed any specific benefit" at all.  Seggev Rpt. at 1

9   (emphasis added).

10      Indeed, Dr. Seggev's expert report shows that when consumers were asked to

11   describe what Cobra's labeling meant to them after viewing the package, they

12   provided a "***wide range of responses***," with answers "falling into at least ***65 unique***

13   ***categories***."  Seggev Rpt. at 15 (emphasis added).  In fact, nearly half of all

14   potential purchasers "either did not believe that the Cobra product packaging

15   communicated a specific benefit . . . or had no opinion."  *Id.*  Notably, even those

16   that did think Cobra's packaging conveyed a specific benefit, "very few cited the

17   same benefit."  *Id.*  Dr. Seggev thus correctly concluded, "[T]here are no universally

18   held beliefs among consumers regarding benefits they believed are being conveyed

19   by the Cobra packaging."  *Id.*[3]

20      Tellingly, the minimal rebuttal expert testimony that Plaintiffs have offered,

21   supports Nutraceutical's position – not Plaintiffs'.  For example, Plaintiffs' rebuttal

22   marketing expert, Dr. George Belch, repeatedly conceded during his deposition that

23

24   ───────────────
       [3] Notably, the survey produced similar results when potential purchasers were

25   asked to consider the statements and images on Cobra's label in isolation.  For
       example, both Ortega and Lambert testified that the picture of the cobra snake led

26   them to believe that Cobra could produce near fantastical results.  *See* Ortega Tr. at
       47:1-6; Lambert Tr. at 25:11–26:16.  Yet, the survey revealed that when other

27   potential customers were asked what the cobra snake meant to them, "***63 percent*** . . .
       either did not believe that [it] . . . communicated a specific benefit . . . or had no

28   opinion."  Seggev Rpt. at 17 (emphasis added).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934                NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

the meaning of the statements on Cobra's label were wholly subjective.

Specifically, Dr. Belch admitted that the phrase "sexual energy" could "mean *different things to different people*."  Greene Decl., Ex. D ("Belch Tr.") at 50:15-51:13.  Similarly, when asked to interpret the phrase "perform at your best with animal magnetism," Dr. Belch said "[i]t could be *different things*" depending on the person.  Belch Tr. at 53:1-12.  He likewise stated that the meaning of the phrase "perform at your best" would "*depend[] on . . . how it's interpreted* by the individual."  Belch Tr. at 54:15-17.  Even Plaintiffs' health and nutrition expert witness, Dr. David Rowland, echoed the same conclusion at his deposition: specifically, when asked about the meaning of Cobra's label, Dr. Rowland stated, "I think it is *vague* and therefore can be interpreted in a variety of ways."  Greene Decl., Ex. E ("Rowland Tr.") at 62:18-20.[4]

Plaintiffs' inability to present affirmative evidence demonstrating that Cobra's label is materially misleading is, in fact, not at all surprising given that – as will be detailed in Nutraceutical's forthcoming motion for summary judgment – the statements on Cobra's label, such as "powerful men's formula" and "perform your

---

[4] Should Plaintiffs assert that Dr. Belch's report rebuts Dr. Seggev's conclusions, this fails for two reasons.  *First*, under well-established law, Dr. Belch's contrary admissions in his deposition (discussed above) severely undermine the credibility of his report.  *See Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 952 (N.D. Cal. 2010) (discrediting expert testimony where expert gave inconsistent opinions).  *Second*, the conclusions Dr. Belch reaches in his report lack foundation, given that Plaintiffs chose not to have Dr. Belch conduct his own consumer survey.  Belch Tr. at 17:20-25.  His opinions are therefore mere conjecture, and are thus entitled to little weight.  *See Jones v. ConAgra Foods, Inc.*, C 12-01633 CRB, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014) (discrediting an expert's testimony that labeling claims were misleading where the expert "did not survey any customers to assess whether the challenged statements were in fact material to their purchases").

Thus, Plaintiffs' minimal rebuttal expert evidence is insufficient to carry their burden.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (reversing class certification where district failed to resolve expert disputes and "merely concluded that, because both Plaintiffs' and [defendant's] evidence was admissible," class certification was appropriate); *see also Marlo*, 639 F.3d at 947 (plaintiff bears the burden of showing class certification should be maintained).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

best with animal magnetism," are nothing more than "general, subjective" claims that have "no fixed meaning" and are not "quantifiable"; thus, under Ninth Circuit precedent, they are non-actionable puffery.  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (vague, generalized claims "amount to nonactionable puffery"); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("general" and "subjective" claims constitute "mere puffery" that are "extremely unlikely to induce consumer reliance").

Regardless, Dr. Seggev's report, and Plaintiffs' failure to present any affirmative evidence to the contrary, are fatal to Plaintiffs' ability to prove class-wide reliance and alone compel decertification.  Indeed, as discussed below, district courts confronted with this very situation – *i.e.,* where expert survey evidence demonstrates that consumers do not share uniform beliefs and expectations about a product's label – routinely deny class certification.

*Algarin v. Maybelline,* a recent Southern District of California case also involving UCL, FAL and CLRA causes of action, is instructive.  300 F.R.D. 444 (S.D. Cal. 2014).  There, Judge Battaglia refused to certify a putative class action alleging that a lipstick manufacturer's "24HR" line of products did not deliver the advertised staying power, because a consumer survey conducted by Dr. Eli Seggev (who is Nutraceutical's expert, here) revealed that purchasers "had a variety of duration expectations." *Algarin*, 300 F.R.D. at 457.  Because Dr. Seggev's study showed "that materiality and reliance varie[d] from consumer to consumer," the court correctly held that the elements of plaintiffs' claims were "not an issue subject to common proof." *Id.*

Similarly, in *Johnson v. Harley-Davidson Motor Co.,* defendants' expert reports established that motorcycle purchasing behavior and expectations varied from consumer to consumer.  285 F.R.D. 573, 580-81 (E.D. Cal. 2012).  The court thus refused to certify the class given that the evidence showed that "reasonable

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 9 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

consumers" would consider a number of factors material to their purchase decision and that materiality was not subject to common proof.  *Id.*

Likewise, in *Edwards v. Ford Motor Co.*, the court refused to certify a class of consumers who were not warned of a car's defective safety system where "persuasive expert evidence" demonstrated that consumers place varying levels of importance on safety features.  No. 11-CV-1058-MMA BLM, 2012 WL 2866424, at *9 (S.D. Cal. June 12, 2012).  Accordingly, the court concluded "that the reasonable consumer standard [could not] be applied on a classwide basis," further emphasizing that the existence of expert testimony on consumer purchasing behavior is what distinguished the case in front of it from others in which class certification had been granted.  *Id.* at *9-10.

And in *Webb v. Carter's Inc.*, a Central District court also denied class certification where expert testimony showed that consumers' responses to such warnings inevitably "vary based on many factors."  272 F.R.D. 489, 502-03 (C.D. Cal. 2011).  As such, the putative class's claims were "not subject to common proof under the reasonable consumer standard" and "individual issues predominat[ed]."  *Id.* at 503.

This Court should follow suit and decertify the class here.[5]  Simply put, given the proven lack of uniformity in consumer expectations, as demonstrated through Dr. Seggev's report, Plaintiffs cannot meet their burden of demonstrating sufficient cohesion among class members to satisfy the predominance requirement of Rule 23(b)(3).  The Motion should, therefore, be granted.  *See Marlo*, 639 F.3d at 947; *Jones v. ConAgra Foods, Inc.*, C 12-01633 CRB, 2014 WL 2702726, at *17 (N.D. Cal. June 13, 2014) (denying class certification and noting that "even if the

---

[5] In light of the expert evidence demonstrating that *actual* consumers were not uniformly misled in the way Plaintiffs suggest, the Court need not consider how a "*hypothetical* reasonable consumer" would interpret Cobra's labeling.  *See Algarin*, 300 F.R.D. at 453 (finding the hypothetical consumer standard inapplicable where defendant produced survey evidence, also from Dr. Seggev, regarding consumer expectations) (emphasis added).

1  challenged statements were *facially* uniform, consumers' *understanding* of those

2  representations [were] not.") (internal quotations marks omitted).

3  **B.**   **Plaintiffs' Damages Model Fails to Satisfy *Comcast* And, Therefore,**

4  **The Class Should Be Decertified.**

5  1.   Plaintiffs' "Full Refund Model" Fails As A Matter of Law.

6  Pursuant to the Supreme Court's decision in *Comcast,* to maintain a class

7  action under Rule 23(b)(3), Plaintiffs must prove that monetary relief for Cobra's

8  allegedly false advertising is measurable "on a class-wide basis through use of a

9  'common methodology.'" 133 S. Ct. at 1430.  Critically, the proposed methodology

10  "must measure only those damages attributable to [Defendants' alleged

11  misconduct]." *Id.* at 1433.  In other words, any methodology that includes damages

12  in excess of a defendant's liability, "cannot possibly establish that damages are

13  susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."

14  *Id.*

15  Here, Plaintiffs fail to satisfy *Comcast's* "common methodology" test because

16  their theory of damages is impermissibly over-inclusive.  Specifically, Plaintiffs –

17  who, notably, have failed to offer any damages expert – exclusively rely on a "full

18  refund model," according to which class members are all entitled to a full

19  reimbursement of the amount they spent to purchase Cobra.  Dkt. No. 65-1 at 20-21.

20  However, a full refund is only appropriate where – unlike here – "not a single class

21  member received any benefit from the products." *Caldera v. J.M. Smucker Co.*, CV

22  12-4936-GHK VBKX, 2014 WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014)

23  (emphasis added).  As the expert evidence here shows, Cobra did provide a health

24  benefit to consumers. *See* Greene Decl., Ex. F ("Gershwin Rpt.") at 13.

25  Specifically, Nutraceutical has offered the expert report of Dr. Eric Gershwin,

26  Distinguished Professor of Medicine at University of California Davis, which cites

27  numerous peer-reviewed studies demonstrating that Cobra's ingredients improve

28  sexual wellbeing.  Gershwin Rpt. at 1.  According to these studies, Cobra's

ingredients can "increase[] sexual desire" and "improve[] erectile function." *Id.* at 8.
Dr. Gershwin's report also cites various other studies showing that Cobra's
ingredients provide many other positive health effects.  *Id.*  For example, Cobra's
ingredients have been found to "support prostate function," *id.* at 5, act as an "anti-
oxidant[]," *id.* at 7, and "positive[ly] impact . . . cognitive performance," *id.* at 12.
Dr. Gershwin's report thus concludes that Cobra's ingredients have been shown to
provide "improvement in a number of areas of men's health."  *Id.* at 13.

In addition, Nutraceutical has presented evidence demonstrating that many
Cobra consumers are satisfied with their purchases.  Garvin Decl. ¶ 7.  Specifically,
Leslie Garvin, Vitamins Manager at Mother's Market & Kitchen, a health food and
dietary supplement retailer that has sold Cobra for many years, has testified by
declaration that many of her Cobra customers are not only repeat purchasers, but
have commented that they found Cobra to be effective.  *Id.* ¶¶ 2, 7.  These repeat
customers have clearly received a benefit from purchasing Cobra.  *See Algarin*, 300
at 454 ("[I]t sounds in common sense that making repeat purchases indicates that the
customer's expectations have been met and she was satisfied with the product.").
Under Plaintiffs' flawed theory, however, these consumers would be entitled to a
full refund.  This cannot be reconciled with *Comcast*.  *See Caldera,* 2014 WL
1477400, at *4 (full refund model was inappropriate under *Comcast* where some
"class members undeniably received some benefit from the products").

Critically, Plaintiffs have failed to show otherwise:  indeed, despite promising
during certification briefing that they would "prove that [Cobra was] worthless,
lacking any value whatsoever," they ***again failed to deliver***.  Dkt. No. 65-1 at 21.
Indeed, to the extent Dr. Rowland's expert report baldly asserts, without support,
that Cobra is valueless, it is hardly credible in light of the fact that (1) Dr. Rowland
admitted that his report was first prepared by Plaintiffs' counsel, Rowland Tr. at
15:1-25, 16:1-13, and (2) Dr. Rowland's previously published work directly
supports Nutraceutical's position that Cobra provides real benefits.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 12 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1    For example, Dr. Rowland co-authored an article on the use of "Plant-

2  Derivatives and Herbs" in the "Promotion of Sexual Health," which stated that

3  "[b]oth animal and human studies have shown *positive . . . effects* of  yohimbe [one

4  of Cobra's ingredients] over placebo on male sexual performance."  Greene Decl.,

5  Ex. G ("Rowland Article") at 234 (emphasis added).  His article offers a similarly

6  positive assessment regarding the benefits of ginseng – another Cobra ingredient –

7  highlighting a study that concluded subjects "receiving ginseng showed *significant*

8  *improvement* in erectile parameters, such as penile rigidity and girth, duration of

9  erection, libido, and overall patient satisfaction." *Id.* at 238 (emphasis added).

10  Thus, even Plaintiffs' own expert has admitted, on numerous occasions, that Cobra's

11  ingredients have been shown to produce various benefits.

12    Under well-established law, this previously published work is entitled to great

13  weight and provides sufficient grounds to discredit any assertion to the contrary

14  contained in Dr. Rowland's expert report.  *See In re Countrywide Fin. Corp.*

15  *Mortgage-backed Sec. Litig.*, No. 2:11-ML-02265-MRP, 2014 WL 4162382, at *7

16  (C.D. Cal. June 18, 2014) (discrediting an expert witness where the expert's

17  testimony "contravene[ed] [his] prior scholarship"); *Camp v. Lockheed Martin*

18  *Corp.*, No. CIV.A. H-97-1938, 1998 WL 966002, at *3 (S.D. Tex. Dec. 29, 1998)

19  (refusing to admit an expert's testimony where the expert ignored "significant

20  portions" of his prior research which "contradict[ed]" the conclusion he was hired to

21  provide).

22    Once again, Plaintiffs' failure to deliver on this issue compels decertification.

23  Indeed, just this year, in *In re POM Wonderful LLC*, a Central District court, relying

24  on *Comcast*, granted defendant's motion to decertify for this same reason.  2014 WL

25  1225184.  In *POM Wonderful*, plaintiffs alleged that a fruit juice label made false

26  and misleading health-related claims.  The court concluded, however, that the

27  plaintiffs' full-refund model of damages was improper because it "[made] no

28  attempt to account for benefits conferred upon" class members.  *Id.* at *3 (finding

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 13 -

3177934

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1  that "consumers still received value [from the product] in the form of hydration,

2  vitamins, and minerals.").

3      In short, given (1) that, as described above, class members "undeniably

4  received some benefit from" Cobra, and (2) Plaintiffs' failure "to offer any

5  evidence, let alone expert testimony" regarding "the difference between the market

6  price and true value of [Cobra]," Plaintiffs' have failed to "satisfy [their] burden of

7  proving that damages may be proven on a classwide basis." *Caldera*, 2014 WL

8  1477400, at *5; *see also In re POM Wonderful LLC*, 2014 WL 1225184, at *3;

9  *Lanovaz v. Twinings N. Am., Inc., No.* C-12-02646-RMW, 2014 WL 1652338, at *7

10  (N.D. Cal. Apr. 24, 2014).  Accordingly, the Motion should be granted.  *See*

11  *Comcast*, 133 S. Ct. at 1433.

12              2.    <u>Even If A Full-Refund Model Were Proper, Plaintiffs Have</u>

13                    <u>Provided Insufficient Evidence Of Class-Wide Damages.</u>

14      Even if the full-refund model were appropriate here (it is not), Plaintiffs have

15  failed to produce sufficient evidence to invoke it.  Under California law, "[t]he

16  amount of restitution awarded under the [FAL][,] [UCL] and the CLRA must be

17  supported by substantial evidence*." Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.

18  App. 4th 663, 700 (2006).  Plaintiffs, however, have provided no evidence regarding

19  restitutionary damages.  Most glaringly, they have provided no means for

20  determining how much each customer even paid for Cobra.  Critically, this number

21  is likely to vary given that Cobra is not (except in rare instances) sold directly to

22  consumers.  Instead, it is predominantly sold through health food stores, where each

23  "retailer sets their own pricing."  Greene Decl., Ex. H ("Hinrichs Tr.") at 144:17.

24      At the certification stage, Plaintiffs represented to Judge Collins that they

25  could determine the proper amount of restitution "through expert accountant

26  testimony" and "independent, third parties that gather point-of-sale data, such as

27  Spins." Dkt. No. 75 at 12-13. ***Yet, once again, Plaintiffs failed to deliver***.  To date,

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 14 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1   they have provided no expert report regarding Cobra's retail pricing or sales data.

2   Nor have Plaintiffs disclosed any witness who could provide such evidence.

3       Simply put, Plaintiffs cannot claim to satisfy *Comcas's* common methodology

4   test because they have failed to put forth any evidence whatsoever to support their

5   proposed methodology.  "This lack of expert evidence" alone warrants

6   decertification.  *See Rice v. Sunbeam Products, Inc.*, No. 2:12-CV-07923-CAS,

7   2014 WL 794331, at *6 (C.D. Cal. Feb. 24, 2014) (concluding that the

8   predominance requirement was not met where plaintiff "proffered [no] expert

9   evidence at all on the subject of calculating relief").

10  **V.   PLAINTIFFS LIKEWISE FAIL TO SATISFY THE REQUIREMENTS**

11  **FOR CERTIFICATION UNDER RULE 23(b)(2)**

12      Having failed to satisfy the requirements of Rule 23(b)(3), Plaintiffs may try

13  to argue that their class action is alternatively maintainable under Rule 23(b)(2).  To

14  the extent Plaintiffs attempt to resurrect this argument, which Judge Collins

15  expressly declined to rule on at the certification stage, this Court should reject it.

16  Dkt. No. 80 at 9.  Under Rule 23(b)(2), a plaintiff can maintain a class action where

17  "the party opposing the class has acted or refused to act on grounds that apply

18  generally to the class, so that final injunctive relief or corresponding declaratory

19  relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

20  Plaintiffs cannot satisfy this standard for at least three reasons.

21      *First*, certification under Rule 23(b)(2) is inappropriate where, as here,

22  plaintiffs seek non-incidental damages.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.

23  Ct. 2541, 2557 (2011).  Nor does Rule 23(b)(2) apply simply because a request for

24  injunctive relief is attached to monetary claims.  *Id.* at 2559.  To the contrary, a

25  putative class can only be certified under Rule 23(b)(2) if the "primary relief sought

26  is declaratory or injunctive."  *Zinser*, 253 F.3d at 1195.  Indeed, seeking damages at

27  all "cast[s] doubt on the propriety of certifying a class under Rule 23(b)(2*)*."

28  *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 560 (C.D. Cal. 2012).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 15 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

Here, Plaintiffs seek monetary relief in the form of (1) restitution, SAC Prayer for Relief ¶ F, (2) disgorgement of profits, *id.* at ¶ D, and (3) compensatory and punitive damages, SAC ¶ 141.  These monetary damages are clearly the primary focus of Plaintiffs' litigation, and are, by no means, incidental.

*Second*, certification under Rule 23(b)(2) is inappropriate where, if successful, putative class members could be entitled to individualized monetary awards.  *See Dukes*, 131 S. Ct. at 2557 (Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.").  This is precisely the case here, where, as discussed above, class members' potential damages will vary widely depending on (1) the retail price they paid, (2) the number of bottles they purchased, and (3) the value or benefit they individually received from taking Cobra.  Accordingly, under well-established law, Rule 23(b)(2) is inapplicable.  *See Moheb v. Nutramax Labs. Inc.*, No. CV 12-3633-JFW JCX, 2012 WL 6951904, at *6 (C.D. Cal. Sept. 4, 2012).

*Finally*, certification under Rule 23(b)(2) is inappropriate where, as here, the plaintiffs' proposed injunctive relief would not benefit all putative class members. *Dukes*, 131 S.Ct. at 2560.  While Plaintiffs request that this Court issue an injunction requiring Nutraceutical to conduct a corrective advertising campaign and to destroy all misleading advertisements and packaging, they fail to explain – as they must – how putative class members who have no intention of buying Cobra in the future will benefit from these injunctions.  SAC Prayer for Relief ¶¶ C and E; *see Drimmer v. WD-40 Co.,* No. 06-CV-900 W (AJB), 2007 WL 2456003, at *5 (S.D. Cal. Aug. 24, 2007) (holding Rule 23(b)(2) inapplicable where an "injunction prohibiting the allegedly false statements can only benefit future purchasers").  Indeed, the injunctions Plaintiffs request would not even benefit Plaintiffs themselves, since they have testified that they have no intention of ever purchasing Cobra again. Ortega Tr. at 99:6-10; Lambert Tr. at 46:16-20.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 16 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1   Accordingly, for each of the above independently sufficient reasons,

2   alternative certification under Rule 23(b)(2) is inappropriate.

3   **VI.   PLAINTIFFS NO LONGER SATISFY THE REQUIREMENTS OF**

4   **RULE 23(a) BECAUSE THEIR CLAIMS ARE NOT TYPICAL OF**

5   **THE CLASS**

6   To maintain class certification, Plaintiffs also bear the burden of showing that

7   they satisfy each of the prerequisites outlined in Federal Rule of Civil Procedure

8   23(a).  *Marlo*, 639 F.3d at 947.  Class certification is inappropriate "where a putative

9   class representative is subject to unique defenses which threaten to become the focus

10  of the litigation."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

11  (internal quotations marks omitted).  This "typicality" standard, outlined in Rule

12  23(a)(3), is demanding:  "[E]ven an arguable defense peculiar to the named plaintiff

13  or a small subset of the plaintiff class may destroy the required typicality of the

14  class[.]"  *Cholakyan*, 281 F.R.D. at 557 (internal quotation marks omitted).

15  In this case, discovery has disclosed that Plaintiffs' claims are atypical and are

16  thus subject to unique defenses that will become a focal point of the litigation.

17  *First*, expert evidence shows that Plaintiffs' interpretations of Cobra's label are both

18  unreasonable and not commonly shared by other consumers.  ██████████████

19  ████████████████████████████████████████████

20  ████████████████████████████████████████████

21  ████████████████████ Both of these reasons compel decertification.

22  **A.   Plaintiffs' Unrealistic and Non-Representative Product**

23  **Expectations Give Rise To Unique Defenses.**

24  California law does not protect "the unwary, unreasonable consumer[.]"

25  *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003).  An

26  advertisement is, therefore, not false and misleading "merely because it will be

27  unreasonably misunderstood by an insignificant and unrepresentative segment of the

28  class of persons to whom the representation is addressed."  *Id.* at 507.  Here, fact

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 17 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1    discovery and expert evidence has shown that Plaintiffs Ortega and Lambert are the

2    paradigm example of "unreasonable consumer[s]," and are, therefore, subject to

3    unique defenses under California law that "threaten to become the focus of the

4    litigation." *See Hanon*, 976 F.2d at 508.

5         Specifically, Dr. Seggev's survey data and expert report, as discussed above,

6    demonstrates that consumers did not form any uniform expectations after viewing

7    Cobra's labeling – let alone the far-fetched expectations Plaintiffs Ortega and

8    Lambert had.  *See* Seggev Rpt. at 1; Sec. II, *supra* (Ortega and Lambert believed,

9    based primarily on the picture of a cobra on the label, that Cobra would allow them

10   to have sex for an "hour, hour and a half" at a time, "multiple times [] per day").

11   Ortega Tr. at 44:24-45:7, 70:14-71:13; Lambert Tr. at 25:11-26:16, 28:15-18.  In

12   fact, the survey revealed that the clear majority of respondents – 63 percent – "did

13   not believe that the cobra image," (*i.e.,* the one Ortega and Lambert primarily relied

14   upon), "communicated a specific benefit . . . or had no opinion."  Seggev Rpt. at 17.

15   Furthermore, of the minority of consumers that *did* think that the cobra image

16   conveyed a specific benefit, "less than one in five . . . believed that the Cobra

17   product was very or somewhat likely to deliver [that] benefit."  *Id.* at 18.

18        Consequently, Plaintiffs were – at best – within a small minority of

19   consumers who thought that Cobra could deliver specific benefits based on the

20   cobra image.[6]  Under well-established law, this renders their claims atypical.  *See*

21   *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 664 (1993) (finding that the

22   typicality requirement was not satisfied where plaintiff "did not claim to be misled

23   in the manner the class was allegedly deceived").  Indeed, the *Algarin* court denied

24   class certification in a similar situation, holding that, where, as here, consumer

25

26        [6] To the extent that Plaintiffs attempt to backtrack and argue that they relied
27   on other statements made on Cobra's label in addition to the image of the cobra
     snake, their typicality argument still fails.  As discussed in Section IV(A)(1) *supra*,
28   Dr. Seggev's survey found that consumer expectations varied widely with respect to
     all twelve statements found on Cobra's label.  Seggev Rpt. at 39.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 18 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1   survey evidence indicates that consumers' interpretations of the relevant product

2   varied, "Plaintiffs' reliance on the alleged misrepresentations [is] not typical of other

3   class members." *Algarin*, 300 F.R.D. at 458.  This Court should likewise decertify

4   the class here.

5          While Judge Collins did not have the advantage of Dr. Seggev's expert report

6   at the class certification stage – and thus accepted Plaintiffs' unsupported contention

7   that all consumers shared "the same marketing-induced expectation that [Cobra]

8   would be virility-enhancing" – this Court need not, and should not, do so.  Dkt. No.

9   80 at 7; *see, e.g.*, *Stanley*, 2006 WL 724569, at *7 (noting that courts tend to be

10  "quite liberal in certifying a class when that decision is made at an early stage"

11  because "the action always can be decertified . . . if later events suggest that it is

12  appropriate to do so") (internal quotations marks omitted).

13         In short, because Plaintiffs' idiosyncratic beliefs will be "a major focus" of

14  this litigation, class certification is no longer appropriate.  *See Hanon*, 976 F.2d at

15  509.

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 19 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION



**VII.   CONCLUSION**

Plaintiffs have failed to sustain their burden of proving that class certification remains appropriate. *Marlo*, 639 F.3d at 947.  With both fact and expert discovery closed, it is clear that Plaintiffs were either unable, or unwilling, to follow through on the numerous promises they made at the class certification stage, which Judge Collins relied upon in granting certification.  In light of these failures, under both Rule 23 and the United States Supreme Court's decision in *Comcast*, the class must be decertified.  Accordingly, Nutraceutical's Motion should be granted.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934

- 21 -

NUTRACEUTICAL'S MOTION FOR CLASS DECERTIFICATION

1    Dated:  November 17, 2014            Respectfully submitted,

2                                         IRELL & MANELLA LLP
                                          John C. Hueston
3                                         Andra B. Greene
                                          Steven N. Feldman
4

5                                         By:_____/s/ Andra B  Greene_____

6                                             Andra B. Greene
                                              Attorneys for Defendant
7                                             NUTRACEUTICAL CORP.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3177934