1 | IRELL & MANELLA LLP
John C. Hueston (164921)
2 | *jhueston@irell.com*
Andra B. Greene (123931)
3 | *agreene@irell.com*
Steven N. Feldman (281405)
4 | *sfeldman@irell.com*
840 Newport Center Drive, Suite 400
5 | Newport Beach, California 92660-6324
Telephone: (949) 760-0991
6 | Facsimile: (949) 760-5200

7 | MONROY, AVERBUCK & GYSLER
Jon F. Monroy (51175)
8 | Jennifer E. Gysler (143449)
32123 Lindero Canyon Road, Suite 301
9 | Westlake Village, California 91361
Telephone: (818) 889-0661
10 | Facsimile: (818) 889-0667

11 | Attorneys for Defendants
NUTRACEUTICAL CORP.

12 |

13 | UNITED STATES DISTRICT COURT

14 | CENTRAL DISTRICT OF CALIFORNIA

15 | WESTERN DIVISION

16 | FRANK ORTEGA and TROY ) Case No. 2:13-cv-05942-AB-E
LAMBERT, on behalf of themselves )
17 | and all others similarly situated, )
)
18 | ) **DEFENDANT NUTRACEUTICAL**
) **CORP.'S NOTICE OF MOTION**
19 | Plaintiffs, ) **AND MOTION FOR SUMMARY**
) **JUDGMENT**
20 | )
vs. ) [Filed concurrently with the Declaration
21 | ) of Andra B. Greene, Defendant's
) Separate Statement of Uncontroverted
22 | NUTRACEUTICAL CORP., a ) Facts and Conclusions of Law, and
Delaware Corporation, ) [Proposed] Order]
23 | )
)
24 | Defendant. ) Date: February 2, 2015
) Time: 10:00 a.m.
25 | _____ ) Judge: Hon. André Birotte Jr.
) Courtroom: 790
26 |

27 |

28 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND ...................................................................2

III.  LEGAL STANDARD .............................................................................3

IV.   THE STATEMENTS ON COBRA'S LABEL ARE NON-
      ACTIONABLE PUFFERY .....................................................................4

      A.   The Statements on Cobra's Label Are General and
           Ambiguous Rather than Specific and Measurable, As
           Expert Evidence Demonstrates. ...................................................5

      B.   Summary Judgment is the Proper Procedure for
           Dismissing Lambert's Claims, and Prior Court Decisions
           Regarding Cobra's Label at the Motion to Dismiss Stage
           are Irrelevant Now ......................................................................10

V.    LAMBERT LACKS STANDING TO BRING A UCL CLAIM
      BECAUSE HE WAS NOT INJURED BY COBRA'S
      ALLEGED FAILURE TO COMPLY WITH FDCA
      STANDARDS ........................................................................................12

VI.   CONCLUSION .....................................................................................16

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3184196

- i -

DEF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Case No. 2:13-cv-05942-AB-E

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Algarin v. Maybelline*,
 300 F.R.D. 444 (S.D. Cal. 2014) ................................................................. 8

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ....................................................................... 3, 4, 12

*Anunziato v. eMachines, Inc.*,
 402 F. Supp. 2d 1133 (C.D. Cal. 2005) ....................................................... 5, 6

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ........................................................................... 4

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
 173 F.3d 725 (9th Cir. 1999) .............................................................. 4, 5, 6

*Colgan v. Leatherman Tool Grp., Inc.*,
 135 Cal. App. 4th 663 (2006) ............................................................... 5, 12

*Consumer Advocates v. Echostar Satellite Corp.*,
 113 Cal. App. 4th 1351 (2003) ............................................................... 1, 4

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
 911 F.2d 242 (9th Cir. 1990) ........................................................... 5, 6, 7, 8

*Daro v. Super. Ct.*,
 151 Cal. App. 4th 1079 (2007) ................................................................ 12

*Figy v. Amy's Kitchen, Inc.*,
 No. CV 13-03816 SI, 2013 WL 6169503 (N.D. Cal. Nov. 25,
 2013) ...................................................................................... 15

*Freeman v. Time, Inc.*,
 68 F.3d 285 (9th Cir. 1995) ................................................................. 14

*Hale v. Sharp Healthcare*,
 183 Cal. App. 4th 1373 (2010) ............................................................... 12

*Hansen Beverage Co. v. Vital Pharm.*,
 No. 08-CV-1545-IEG POR, 2010 WL 1734960 (S.D. Cal. Apr.
 27, 2010) .................................................................................. 7

*Hansen v. United States*,
 7 F.3d 137 (9th Cir. 1993) .................................................................. 5

*Hill v. Roll Int'l Corp.*,
 195 Cal. App. 4th 1295 (2011) ............................................................ 1, 14

*Hill's Pet Nutrition, Inc. v. Nutro Prods., Inc.*,
 No. CV–04–8413–AHM,  2005 WL 5908852 (C.D. Cal. Apr. 28,
 2005) ...................................................................................... 8

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

**Page(s)**

*K & N Eng'g, Inc. v. Spectre Performance,*
No. EDCV 09-01900-VAP, 2011 WL 4387094 (C.D. Cal. Sept.
20, 2011)................................................................................................ 6

*Kane v. Chobani, Inc.,* No. 12-CV-02425-LHK, 2013 WL 5289253
(N.D. Cal. Sept. 19, 2013)................................................................... 15

*Newcal Indus., Inc. v. Ikon Office Solution,*
513 F.3d 1038 (9th Cir. 2008)....................................................... 1, 5, 9

*Pampered Chef v. Magic Kitchen, Inc.,*
No. 97 C 1091, 1999 WL 20922 (N.D. Ill. Jan. 7, 1999)................... 10

*Pestube Sys., Inc. v. HomeTeam Pest Def., LLC,*
No. CV 05-2832-PHXMHM, 2007 WL 973964 (D. Ariz. Mar.
30, 2007)............................................................................................... 6

*Peviani v. Natural Balance, Inc.,*
774 F. Supp. 2d 1066 (S.D. Cal. 2011) .......................................... 10, 11

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.,*
227 F.3d 489 (5th Cir. 2000).................................................................. 9

*Princess Cruise Lines, Ltd. v. Super. Ct.,*
179 Cal. App. 4th 36 (2009)...................................................... 13, 14, 15

*Rebel Oil Co. v. Atl. Richfield Co.,*
51 F.3d 1421 (9th Cir. 1995)................................................................ 10

*Sensible Foods, LLC v. World Gourmet, Inc.,*
No. 11-2819 SC, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ...........8

*Shaker v. Nature's Path Foods, Inc.,*
No. EDCV 13-1138-GW OPX, 2013 WL 6729802 (C.D. Cal.
Dec. 16, 2013) ....................................................................................... 6

*Shaker v. Nature's Path Foods, Inc.,*
No. EDCV 13-1138-GW OPX, 2013 WL 6729802 (C.D. Cal.
Dec. 16, 2013) ....................................................................................... 8

*Southland Sod Farms v. Stover Seed Co.,*
108 F.3d 1134 (9th Cir. 1997)............................................................ 4, 7

*Stokely-Van Camp, Inc. v. Coca-Cola Co.,*
646 F. Supp. 2d 510 (S.D.N.Y. 2009)................................................... 7

*Williams v. Gerber Products Co.,*
552 F.3d 934 (9th Cir. 2008)............................................................... 11

**Statutes**

Bus. & Prof. Code § 17204.................................................................... 12

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

**Page(s)**

Fed. R. Civ. P. 56.................................................................................................. 3, 4

**Regulations**

21 C.F.R. § 101.14................................................................................................. 13

21 C.F.R. § 310.528.............................................................................................. 13

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3184196

- iv -

DEF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Case No. 2:13-cv-05942-AB-E

## NOTICE OF MOTION AND MOTION

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on February 2, 2015 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 790, of the above-entitled Court, located at 255 East Temple Street, Los Angeles, California 90012, before the Honorable André Birotte Jr., Defendant Nutraceutical Corp. (hereinafter "Nutraceutical") will and hereby does move the Court for an order for summary judgment. Nutraceutical's motion is based upon this Notice of Motion, the Memorandum of Points and Authorities offered in support of the motion, all documents in the Court's file, any matters of which this Court may take judicial notice, and any evidence or argument presented at or prior to the hearing on this matter. Nutraceutical seeks an order granting summary judgment on all of Plaintiffs' claims.

Pursuant to Local Rule 7-3, the parties met and conferred regarding this Motion on November 17, 2014.

Dated:  November 24, 2014

IRELL & MANELLA LLP
John C. Hueston
Andra B. Greene
Steven N. Feldman


By: _____ */s/ Andra B. Greene*_____

Andra B. Greene
Attorneys for Defendants
NUTRACEUTICAL CORP.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3184196

- v -

DEF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT   Case No. 2:13-cv-05942-AB-E

1  **I.    <u>INTRODUCTION</u>**

2         Plaintiff Troy Lambert ("Lambert") has brought claims under California law

3  against Defendant Nutraceutical alleging that its product, Natural Balance Cobra<sup>TM</sup>

4  ("Cobra"), makes false and misleading claims on its label.  California law, however,

5  protects only reasonable consumers, *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295,

6  1304 (2011), not those who rely on exaggerated hyperbole, or who fail to read a

7  product's label.  Accordingly, this Court should grant summary judgment in favor of

8  Nutraceutical for the following reasons.

9         *First,* Cobra's label consists solely of vague hyperbole – or "puffery" – on

10  which no reasonable consumer would rely.  These statements are non-actionable

11  under well-established California and Ninth Circuit precedent.  *See, e.g., Newcal*

12  *Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008); *Consumer*

13  *Advocates v. Echostar Satellite Corp.,* 113 Cal. App. 4th 1351, 1361 n.3 (2003).

14  Nutraceutical has even produced expert survey evidence which further demonstrates

15  that the label contains mere puffery.  Plaintiffs, on the other hand, have provided no

16  contrary survey evidence, or any other affirmative evidence to rebut Nutraceutical's

17  evidence.  Hence, there is no genuine dispute of material fact regarding this issue.

18         *Second,* under applicable law, Lambert lacks standing to bring a UCL claim

19  based on Cobra's alleged failure to comply with Food Drug and Cosmetic Act

20  ("FDCA") labeling requirements.  Lambert has not produced any evidence to

21  indicate that he was injured by Cobra's purported non-compliance.  In fact, he

22  admitted in his deposition that, before purchasing Cobra, he did not consider

23  whether it would function like a drug, nor did he read Cobra's list of ingredients.

24  Accordingly, Lambert cannot show – as he must – that he would not have been

25  injured but for Cobra's alleged FDCA violations.

26         For these reasons, as explained in further detail below, this Court should grant

27  summary judgment in full.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3184196

- 1 -

DEF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT    Case No. 2:13-cv-05942-AB-E

## II.    FACTUAL BACKGROUND

This case began with two lead plaintiffs, but it is now down to one. Lambert's co-plaintiff, Frank Ortega, recently voluntarily withdrew as lead plaintiff and was dismissed with prejudice, Dkt. No. 121, after Nutraceutical pointed out in its Motion for Class Decertification that Ortega perjured himself during his deposition when he lied about his medical history.  Dkt No. 111 at 19-21.  Lambert is thus the sole remaining class representative.  Unfortunately for Lambert, his claims fare no better than Ortega's.

Lambert purchased Cobra, a dietary supplement comprised of herbs, extracts, and other plant based materials, purportedly believing that it would allow him to maintain erections and have sex for at least an hour.  Greene Decl., Ex. A ("Lambert Tr.") at 28:15-18.  The operative Second Amended Complaint ("SAC") specifically alleges that Lambert inferred that he could achieve such fantastical results based on the following words and imagery on Cobra's label:

- the Product's name, "Cobra Sexual Energy"
- "Powerful Men's Formula"
- "with Yohimbe & Horny Goat Weed
- "Take Virility to the Max!"
- "Perform Your Best with Animal Magnetism"
- "improve . . . performance"
- "'aphrodisiac' plants to enhance . . . sexual energy"
- "Scientifically blending select, high-quality herbs"
- "Natural Balance has energized people's health and well-being"
- "offering specialty supplements that work"
- "Helping people live healthier, more enjoyable lives"
- "proprietary formulas"
- "Most famous of all performance enhancing herbs"

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3184196

- 2 -

DEF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT     Case No. 2:13-cv-05942-AB-E

- the "graphic of a cobra snake with an erect head on the front of the Cobra box"
- "Cobra blends exotic herbs from the Orient, South Pacific, and Africa"
- "Discover Natural Balance"
- "Yohimbe Bark Extract" and "Legendary herb from Africa that contains Yohimbine.  Yohimbe is intended to provide nutritive support for healthy blood flow"
- "Horny Goat Weed" and "From China, it is thought to support sensitivity in the sensory nerves"
- "Muira Puama" and "Stimulating Brazilian herb known as 'potency wood'"
- "Saw Palmetto" and "North American herb known for its reputed ability to help promote prostate function"

SAC ¶ 96; Greene Decl., Ex. B ("Cobra Label").  Lambert later admitted, however, that he actually paid little attention to the contents of Cobra's label – in fact, he did not even look at its ingredients.  Lambert Tr. at 39:4-6.  Rather, when deciding to purchase Cobra, Lambert primarily relied on the label's accurate depiction of a cobra snake.  Lambert Tr. 25:11-26:16.

When Cobra purportedly failed to live up to Lambert's fantasies, he sued, alleging claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA").

## III.   LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  While a court must construe the facts in the light most favorable to the nonmoving party, the nonmoving party stills bears the burden of showing that there is "sufficient evidence . . . for a jury to return a verdict" in his or her favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Further,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3184196

- 3 -

DEF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT     Case No. 2:13-cv-05942-AB-E

1  when the nonmoving party would bear the burden of proof at trial, the moving party

2  need only point out "that there is an absence of evidence to support the nonmoving

3  party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

4      Crucially, "the mere existence of some alleged factual dispute" will not defeat

5  summary judgment. *Anderson,* 477 U.S. at 247.  Rather, the party opposing

6  summary judgment must show that there is a "*genuine* issue of *material* fact." *Id.* at

7  248.  In other words, mere allegations or assertions that would be sufficient at

8  pleading stage are not enough to defeat a motion for summary judgment. *Id.*

9  Instead, the nonmoving party "must set forth specific facts showing that there is a

10  genuine issue for trial." Fed. R. Civ. P. 56(e).  As we explain below, applying this

11  standard, Lambert's claims should be dismissed.

12  **IV.   THE STATEMENTS ON COBRA'S LABEL ARE NON-ACTIONABLE**

13  **PUFFERY**

14      California law is clear:  to be actionable under California's UCL, FAL, and

15  CLRA, an advertisement must amount to more than "meaningless superlatives."

16  *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal. App. 4th 1351, 1361, n.3

17  (2003) (holding that "crystal clear" video and "CD quality" audio were hyperbolic

18  boasts and thus non-actionable).  Rather, the advertisement must advance a "specific

19  and measurable claim, capable of being proved false or of being reasonably

20  interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc. v. First*

21  *Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).  Where, instead, advertising

22  consists only of "blustering, and boasting upon which no reasonable consumer

23  would rely," it is considered non-actionable puffery. *See Southland Sod Farms v.*

24  *Stover Seed Co*., 108 F.3d 1134, 1145 (9th Cir. 1997) (holding that the statement

25  "Less is More" was puffery whereas "50% Less Mowing" was not because the latter

26  promised a specific, measurable standard) (internal quotation marks omitted).

27      At the motion to dismiss stage, Judge Collins expressly declined to decide

28  whether the statements on Cobra's label consisted of mere puffery, stating that it

1  would have been premature to do so.  Dkt. No. 54 at 4.  With discovery now

2  complete, however, the issue is ripe for decision, and this Court should grant

3  summary judgment on Lambert's claims on the ground that no reasonable consumer

4  would interpret Cobra's label as making "specific measurable claims."  *Coastal*

5  *Abstract Serv.,* 173 F.3d at 731.  Critically, Lambert bears the burden of producing

6  evidence demonstrating that Cobra's label is not puffery.  *See Colgan v. Leatherman*

7  *Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (2006).  He has not done so, and any

8  "conclusory" assertions offered by himself or any of his witnesses are not enough to

9  create a genuine dispute of material fact.  *Hansen v. United States*, 7 F.3d 137, 138

10  (9th Cir. 1993).

11  　　　　Indeed, as set forth in this Motion, all of the evidence presented in this case –

12  including the label itself and extensive consumer survey data from a well-

13  established expert – shows that the claims made on Cobra's label are nothing but

14  "[g]eneralized, vague, and unspecified assertions."  *Anunziato v. eMachines, Inc.*,

15  402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (holding that promises relating to

16  "quality," "reliability," and "performance" were puffery).  In other words, they are

17  "classic puffery."  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053

18  (9th Cir. 2008) (advertisement's promise to "provide . . . customers with low costs

19  and with flexibility was puffery").

20  　　　**A.**　　　**The Statements on Cobra's Label Are General and Ambiguous**

21  　　　　　　　**Rather than Specific and Measurable, As Expert Evidence**

22  　　　　　　　**Demonstrates.**

23  　　　　As the Ninth Circuit has explained, the "common theme" running through

24  puffery cases "is that consumer reliance will be induced by specific rather than

25  general assertions."  *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv.*

26  *Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).  Puffery thus consists in "claims [which] are

27  either vague or highly subjective."  *Id.* (internal quotation marks omitted) (alteration

28  in the original).  This is because statements that have no fixed meaning cannot, by

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3184196

- 5 -

DEF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Case No. 2:13-cv-05942-AB-E

1   their nature, be subject to measurement or testing.  *See Pestube Sys., Inc. v.*

2   *HomeTeam Pest Def., LLC*, No. CV 05-2832-PHXMHM, 2007 WL 973964, at *12

3   (D. Ariz. Mar. 30, 2007) ("It is difficult to see how [a] statement could be

4   actionabl[e]" when it "is subject to broad and varying degrees of meaning and is not

5   a specific and detailed statement of fact that [could be] supported by testing."); *see*

6   *also Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW OPX, 2013 WL

7   6729802, at *5 (C.D. Cal. Dec. 16, 2013) (a statement is puffery if it "is a subjective

8   boast without a specific type of interpretation").

9        All of the statements on Cobra's label are "vague and highly subjective."

10  *Cook*, 911 F.2d at 246.  While the SAC alleges that a litany of statements on

11  Cobra's label are misleading, SAC ¶ 96, none of these statements can be reasonably

12  interpreted as promising specific *measurable* benefits.  *Coastal Abstract Serv.*, 173

13  F.3d at 731.  Indeed, to the extent that the gravamen of Plaintiffs' Complaint is that

14  Cobra's label, when viewed as whole, promised to "improve sexual performance,"

15  SAC ¶ 90, this is quintessential puffery, as at least one court in the Central District

16  of California has previously recognized.  *See Anunziato*, 402 F. Supp. 2d at 1440

17  (statements relating to quality of "performance" amount to mere "puffing").  The

18  word "performance," as with all puffery, is an inherently subjective concept, one not

19  capable of being measured.  *See id.*

20       The same is true for all the other statements on Cobra's label.  For example,

21  phrases such as, "Perform at Your Best with Animal Magnetism," "Take Virility to

22  the Max!," and "Powerful Men's Formula," SAC ¶ 96, are not the sort of claims that

23  are subject to actual measurement.  "Perform at Your *Best*" is yet another

24  "prototypical example of puffery," *K & N Eng'g, Inc. v. Spectre Performance*, No.

25  EDCV 09-01900-VAP, 2011 WL 4387094, at *15 (C.D. Cal. Sept. 20, 2011)

26  (listing cases in which the word "best" has been held to be puffery).  Likewise, there

27  is no "product testing" that one could to perform to determine just how "powerful"

28  Cobra's formula is, or the extent to which it helps exude "*animal* magnetism," or

1  just exactly how much "virility" is the *maximum* amount.  *See Southland Sod*, 108

2  F.3d at 1145 (describing non-puffery as claims that promise specific, testable

3  results).

4        Indeed, courts routinely dismiss claims predicated on similarly hyperbolic

5  promises to boost performance or physical prowess.  For example, in *Hansen*

6  *Beverage Co. v. Vital Pharm.*, Judge Gonzalez of the Southern District of California

7  held that an energy drink's boast that it would "leave you 'amped' to the max in

8  minutes, ready to tear apart the weights and wear out the treadmill like a tiger

9  released from its cage!" was non-actionable puffery, as none of these claims were

10  "verifiable or measurable."  No. 08-CV-1545-IEG POR, 2010 WL 1734960, at *8

11  (S.D. Cal. Apr. 27, 2010).  Similarly, in *Stokely-Van Camp, Inc. v. Coca-Cola Co.*,

12  the court held that the phrase "Upgrade your game," as used to promote a sports

13  drink, could not be reasonably interpreted as a promise to "improve athletic

14  abilities."  646 F. Supp. 2d 510, 529-30 (S.D.N.Y. 2009).  As the court stressed, the

15  advertisement "[did] not say that [the product would] upgrade consumers' game by

16  a *specific amount*, nor [did] it claim that it [would] upgrade their game in any

17  *particular way*."  *Id.* (emphasis added).

18        The same is true here.  Notably absent from Cobra's label is any claim that it

19  can produce specific results.  For example, contrary to Lambert's expectations,

20  Cobra does not say that it will help you "last longer," Lambert Tr. at 18:10-12, or

21  "maintain an erection for an hour without ejaculating" as Lambert wished.  *Id.* at

22  28:22-25.  Lambert admitted as much in his deposition.  *Id.* at 28:8-21; 47:24-48:12.

23        This lack of specificity is what distinguishes Cobra's label from other

24  advertisements that courts have found to be actionable.  For example, in *Hansen*

25  *Beverage*, discussed above, the court held that the phrase "one serving of Power

26  Rush will provide seven hours of energy" was actionable because it made a specific

27  durational claim that could be proven "literally false."  2010 WL 1734960, at *5.

28  Likewise, in *Cook*, the Ninth Circuit contrasted the hyperbolic, and therefore non-

1   actionable, phrase "far brighter than any lamp ever," with the more specific, and

2   therefore actionable, phrase "35,000 candle power and 10-hour life." *Cook*, 911

3   F.2d at 246.

4        Cobra's label, however, does not make any durational claims – such as "7

5   hour" energy or "10-hour life" – nor does it try to quantify the extent to which it

6   enhances sexual energy or performance.[1]  The claims made on its label are thus non-

7   actionable puffery.

8        Furthermore, there can be no genuine dispute of fact regarding this issue.

9   Nutraceutical has produced expert survey evidence (the only evidence in this case

10  that actually measures consumer sentiment) that demonstrates that consumers

11  perceive the statements on Cobra's label as "vague and highly subjective" rather

12  than specific and measurable. *Cook*, 911 F.2d at 246.  As detailed in Nutraceutical's

13  Motion for Class Decertification, Dkt. No. 111, Nutraceutical commissioned Dr. Eli

14  Seggev, a well-established "expert in the field of marketing," *Algarin v. Maybelline*,

15  300 F.R.D. 444, 453 (S.D. Cal. 2014), to conduct "a consumer survey to gauge

16  potential purchasers' opinions regarding the overall meaning of . . . Cobra['s]

17  packaging, the individual statements . . . on Cobra['s] packing, and consumer

18  expectations regarding the . . . benefits that Cobra . . . may deliver."  Greene Decl.,

19

20

---

21       [1] Lambert also cannot rely on the statements on Cobra's label regarding the
     quality of its ingredients, such as, "Scientifically Blend[ed]," "high quality herbs,"
22   and "proprietary formulas."  SAC ¶ 96.  These too are puffery as numerous courts
     have held.  For example, in *Shaker v. Nature's Path Foods, Inc.*, the court held that
23   Cereal's representation that it contained "optimum" ingredients was non-actionable
     because "any reasonable consumer would understand that the word is not a specific
24   and objective representation."  No. EDCV 13-1138-GW OPX, 2013 WL 6729802,
     at *5 (C.D. Cal. Dec. 16, 2013).  *See also Hill's Pet Nutrition, Inc. v. Nutro Prods.,*
25   *Inc.*, No. CV–04–8413–AHM, 2005 WL 5908852, at *3 (C.D. Cal. Apr. 28, 2005)
     ("optimum combination of premium ingredients" is non-actionable puffery).
26   Likewise, *Sensible Foods, LLC v. World Gourmet, Inc.,* No. 11-2819 SC, 2012 WL
     566304, at *6 (N.D. Cal. Feb. 21, 2012) (statement that Defendants' products
27   contain the 'right' ingredients" was puffery).

28

Ex. C ("Seggev Rpt.") at 1.  Dr. Seggev's expert report yielded two significant results.

First, it found that consumers "harbor **inconsistent opinions** regarding" Cobra's packaging.  *Id*. (emphasis added).  Specifically, consumers' reactions to the statements found on Cobra's label were "characterized by a great deal of ***variation***, ***lack of uniformity*** and ***unpredictability***."  *Id.* at 40 (emphasis added).  As noted above, such variance in consumer reaction is the hallmark of puffery.  *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 499 (5th Cir. 2000) (statements that are "wholly a matter of individual taste" are puffery).

Second, Dr. Seggev's expert report showed that only "between 12 and 27 percent of respondents believed Cobra was somewhat or very likely" to provide any benefit, depending on which individual statement was at issue.  Seggev Rpt. at 39.  Thus, ***at best***, a small minority of consumers thought Cobra would deliver any specific, tangible results at all based on its labeling.  Further, even among this minority, there was little agreement as to what these results would be.  *Id.* at 38-39.  Again, this is exactly the result one would expect with mere puffery.  Since puffery makes no specific, measurable promises, it is "extremely unlikely to induce" reliance in most consumers.  *See Newcal Indus., Inc*., 513 F.3d at 1053.

Lambert has not rebutted and cannot meaningfully rebut Nutraceutical's survey evidence.  Indeed, testimony from *his own experts* confirms that the statements on Cobra's label are highly ambiguous and subject to varied interpretations.  For example, Lambert's rebuttal marketing expert, Dr. George Belch, repeatedly conceded during his deposition that the meaning of the statements on Cobra's label were wholly subjective.  Specifically, Dr. Belch admitted that the phrase "sexual energy" could "mean ***different things to different people***."  Greene Decl., Ex. D ("Belch Tr.") at 50:15-51:13.  Similarly, when asked to interpret the phrase "perform at your best with animal magnetism," Dr. Belch said "[i]t could be ***different things***" depending on the person.  *Id.* at 53:1-12.  He likewise stated that

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3184196

- 9 -

DEF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT          Case No. 2:13-cv-05942-AB-E

the meaning of the phrase "perform at your best" would "***depend[] on . . . how it's
interpreted*** by the individual." *Id.* at 54:15-17.  Even Plaintiffs' health and nutrition
expert witness, Dr. David Rowland, echoed the same conclusion at his deposition:
specifically, when asked about the meaning of Cobra's label, Dr. Rowland stated, "I
think it is ***vague*** and therefore can be interpreted in a variety of ways."  Greene
Decl., Ex. E ("Rowland Tr.") at 62:18-20.

Given Nutraceutical's extensive survey evidence and the admissions of
Lambert's own experts, Lambert cannot demonstrate that there is any real dispute
over whether the statements on Cobra's label constitute puffery.  Significantly,
while Lambert bears the burden of proof at trial, Nutraceutical is the only party that
has produced affirmative evidence addressing the central question of this case:
whether consumers are generally misled by Cobra's label.  To the extent that
Lambert or his witnesses have merely asserted that Cobra's label is misleading, this
is not sufficient to create a genuine dispute of material fact.  *See Pampered Chef v.
Magic Kitchen, Inc.*, No. 97 C 1091, 1999 WL 20922, at *1 (N.D. Ill. Jan. 7, 1999)
(witnesses' opinions that statements were misleading were not sufficient to sustain
party's evidentiary burden "[i]n the absence of surveys showing actual confusion");
*see also Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1440 (9th Cir. 1995)
("Assertions in expert affidavits do not automatically create a genuine issue of
material fact.").

**B.**     **Summary Judgment is the Proper Procedure for Dismissing
Lambert's Claims, and Prior Court Decisions Regarding Cobra's
Label at the Motion to Dismiss Stage are Irrelevant Now.**

In his opposition to Defendants' motion to dismiss, Lambert relied primarily
upon *Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066 (S.D. Cal. 2011),

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

another dispute involving Cobra – which was voluntarily dismissed by plaintiffs[2] – to support his allegation that Cobra's label consists of more than just puffery.  The decision has no relevance here on summary judgment.

That is because, in *Peviani*, Judge Huff explicitly declined to decide whether the claims on Cobra's label amounted to puffery at the motion to dismiss stage, finding that it was not one of the "rare situations" in which it would be appropriate to grant a motion to dismiss on a UCL claim.  *Id.* at 1072 (citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).  The court's decision thus kept in line with established law holding that dismissal in a deceptive-business-practices case is only appropriate where "it [would be] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."  *Williams*, 552 F.3d at 939.

Where a plaintiff ultimately fails to provide such proof, however, summary judgment is the proper remedy.  Indeed, Judge Huff explicitly left open the possibility that the court could revisit the issue at summary judgment.  *Peviani*, 774 F. Supp. at 1072 n.1 (noting that defendant "is free to raise the issue of puffery again on a motion for summary judgment").  She never had the chance, however, because Plaintiffs voluntarily dismissed their case.  Judge Collins made a similar determination here.  In her Order denying Defendant's Motion to Dismiss on the issue of puffery, Judge Collins stated that she was not yet prepared to determine whether all of the statements on Cobra's label were puffery, and she further "decline[d] to rule on a piecemeal basis" at that time.  Dkt. No. 54 at 4.

The time to resolve these questions is now.  Critically, this Court now has the benefit of, among other things, Lambert's own testimony and expert survey evidence, which Judges Collins and Huff lacked.  As explained above, all of this evidence (and the lack of evidence produced by Plaintiffs during discovery)

---

[2] *Peviani v. Natural Balance, Inc.* No. 3:10-cv-02451 at Dkt. No. 46.  Plaintiff voluntarily dismissed her case after the Court denied her motion for class certification.  *Peviani v. Natural Balance Inc.*, No. 3:10-CV-2451 AJB BGS, 2011 WL 1648952, at *4 (S.D. Cal. May 2, 2011).

1   demonstrates that Cobra's label consists exclusively of puffery.  Lambert has not

2   carried his burden of affirmatively demonstrating that consumers are actually misled

3   by Cobra's label.  *See Colgan*, 135 Cal. App. 4th at 682.  The fact that Lambert's

4   claims were able to survive a motion to dismiss does not relieve him of his burden

5   of production at summary judgment, *see Anderson*, 477 U.S. at 249 (party opposing

6   summary judgment must show that there is "sufficient evidence . . . for a jury to

7   return a verdict" in his or her favor), and it certainly does not entitle him to proceed

8   to trial when his claim lacks merit.  Accordingly, this Court should grant summary

9   judgment in favor of Nutraceutical.

10  **V.     LAMBERT LACKS STANDING TO BRING A UCL CLAIM**

11  **BECAUSE HE WAS NOT INJURED BY COBRA'S ALLEGED**

12  **FAILURE TO COMPLY WITH FDCA STANDARDS**

13          Lambert alleges that Cobra's labeling is "unlawful," and therefore actionable

14  under the UCL, because it "violates the FDCA and its implementing regulations."

15  SAC ¶ 122.  While Nutraceutical vigorously contests this allegation, even assuming

16  for argument's sake that it were true, Lambert does not have standing to pursue this

17  claim because, as the evidence shows, he was not injured by Cobra's alleged failure

18  to comply with the FDCA.  Bus. & Prof. Code § 17204 (A UCL claim may only be

19  brought by "a person who has suffered injury in fact . . . as a result of [] unfair

20  competition.").

21          To establish standing under the "unlawful prong" of the UCL, a plaintiff must

22  prove that his or her purported injury was caused by a defendant's allegedly

23  unlawful act.  *Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1099 (2007).  Further, in

24  a case in which "the predicate unlawful conduct is misrepresentation," the plaintiff

25  must demonstrate that he or she relied on the allegedly misleading statement.  *Hale*

26  *v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1385 (2010).  Lambert cannot do so,

27  however, because he has failed to produce a shred of evidence demonstrating that

28  Cobra's alleged failure to comply with the FDCA had any effect whatsoever on his

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3184196

- 12 -

DEF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT      Case No. 2:13-cv-05942-AB-E

purchasing decisions.  And, under well-established law, causation does not lie where a plaintiff would have purchased a product even in the absence of defendant's allegedly unlawful and misleading advertising.  *See Princess Cruise Lines, Ltd. v. Super. Ct.,* 179 Cal. App. 4th 36, 43-44 (2009) (plaintiffs lacked standing under the UCL where defendant's unlawful activity "made no difference" on their decision to purchase the product).

Specifically, Lambert has admitted that he did not rely on those features of Cobra's label that allegedly violate the FDCA and accompanying Food and Drug Administration ("FDA") regulations.  In his SAC, Lambert advanced two distinct theories of liability with respect to his FDCA-based claims.

First, Lambert alleged that, under 21 CFR § 310.528(b) and other related provisions, Cobra constitutes an unapproved "drug."  SAC ¶ 122(d).  Lambert, however, has produced no evidence that he relied on Cobra's representation that it was a drug when he purchased it.  Nor has he ever stated that he believed it would function like one.  Indeed, Lambert expressly admitted that he did not think about whether Cobra was a drug until sometime much later, after he stopped using it. Lambert Tr. at 57:7-58:12.

It thus is clear, based on Lambert's own testimony, that Cobra's status as "drug," unlawful or otherwise, was immaterial to his purchasing decisions. Accordingly, he cannot claim that he was somehow misled into believing that Cobra was a drug when he bought it.  *See Princess Cruise,* 179 Cal. App. 4th at 43-44. Lambert thus lacks standing under this first theory.

Lambert's second theory fairs no better.  Lambert also alleges in his SAC that Cobra violates 21 C.F.R. §§ 101.14(a)(3), (b)(3)(i). SAC ¶ 122 (b).[3]  Those

---

[3] Lambert also alleges that Cobra violates FDCA provisions prohibiting products from making "false or misleading" statements.  SAC ¶¶ 122(a), (c).  These claims are thus not predicated on the FDCA itself.  Rather they are merely duplicative of Lambert's other fraud-based claims and do not serve as an independent basis of liability.

1  provisions govern whether a product may make health claims based on the nutritive

2  effects of its ingredients.  Lambert, however, did not purchase Cobra because of its

3  ingredients.  Indeed, Lambert admitted that he ***did not even look*** at the panel

4  describing Cobra's ingredients and their respective functions when he bought the

5  product.  Lambert Tr. at 39:4-6.  Specifically, when Lambert was asked about the

6  ingredients on Cobra's label, he said the following under oath:

7        Q:    And that [ingredient] didn't attract you to the [product ?]

8        A:    No, I didn't look at the ingredients as most of these ingredients

9                I don't recognize.  No, I don't know.

10        Q:    So you weren't relying on the ingredients?

11        A:    No.

12  Lambert Tr. at 47:12-17.  Lambert's failure to make even a modest effort to read the

13  contents of Cobra's label is fatal to his claim of standing.  California's UCL is

14  premised on a "reasonable consumer" standard.  *Hill v. Roll Int'l Corp.*, 195 Cal.

15  App. 4th 1295, 1304 (2011).  Accordingly, it does not protect the "unwary" or "least

16  sophisticated" consumer.  *Id.*  Rather, the UCL assumes that a consumer will

17  exercise at least some diligence before purchasing a product by investigating its

18  contents.  *See id; see also Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir.

19  1995) (reasonable consumer standard was not satisfied where any purchaser who

20  had done "sufficient reading" would not have been misled by the advertising).

21  Lambert's own admissions demonstrate that he would have purchased Cobra *no*

22  *matter what* its ingredients had been.  He thus cannot now claim that he relied on

23  what Cobra's label said about those ingredients when he purchased it.  *See Princess*

24  *Cruise,* 179 Cal. App. 4th at 43-44.

25        Several recent district court decisions in the Ninth Circuit have dismissed

26  UCL claims on this exact ground.  For example, in *Figy v. Amy's Kitchen, Inc*.,

27  Judge Illston of the Northern District of California held that a plaintiff lacked

28  standing to bring a UCL suit predicated on a product's failure to properly identify its

1   ingredients as "sugar" because he had not "read the ingredients label."  No. CV 13-

2   03816 SI, 2013 WL 6169503, at *1, *4 (N.D. Cal. Nov. 25, 2013).  As such, the

3   plaintiff could not "establish[] that he relied on the alleged misbranding in

4   purchasing the products."  *Id.* at *4.  Judge Illston further explained that the mere

5   fact that the product's misrepresentation violated the law was not enough to

6   establish standing.  *Id.*  Rather, "a plaintiff must still at a minimum allege that he

7   saw the representation at issue."  *Id.*

8        Similarly, in *Kane v. Chobani, Inc.,* Judge Koh of the Northern District held

9   that Plaintiffs lacked standing to bring suit against a Yogurt brand for its violation of

10  the FDA's "no sugar added" labeling requirements because they never actually read

11  this particular label.  No. 12-CV-02425-LHK, 2013 WL 5289253, at *2, *8 (N.D.

12  Cal. Sept. 19, 2013).  Judge Koh emphasized that the mere fact that plaintiffs bought

13  a product that was not FDCA compliant was insufficient to establish standing, as

14  this "would eviscerate . . . the standing requirements imposed" by the UCL.  *Id.* at

15  *9.  Instead, Plaintiffs had to show that they would not have bought the product *but*

16  *for* defendant's allegedly unlawful statements.  *See id.*

17       Lambert's standing claim here fails for the same reason.  Whether Cobra's

18  description of the nutritive properties of its ingredients complied with FDA

19  regulations or not, Lambert did not read it.  It thus had no influence on his decision

20  to purchase Cobra and accordingly cannot confer him standing.  *See Princess*

21  *Cruise,* 179 Cal. App. 4th at 43-44.

22       In sum, Lambert was motivated neither by Cobra's alleged representation that

23  it was a drug (which it did not make), nor by the nutritive qualities of its ingredients.

24  Rather, according to Lambert's own testimony, the real motivating force behind his

25  decision to purchase Cobra was the label's accurate depiction of a cobra snake.[4]

26  _____

27       [4] To the extent that Lambert argues that he relied on Cobra's use of the word
    "aphrodisiac," this argument lacks credibility (even assuming that the use of that
    word was improper, which Nutraceutical strongly contests).  In his deposition,

28  Lambert admitted that he didn't even know what the word "aphrodisiac" meant,
    Lambert Tr. at 27:1-3.  Thus, he could not have relied on it.

1  Lambert Tr. at 25:11-26:16.  Lambert's reliance on the cobra image, however, does

2  not give him standing to bring a UCL claim.  Not surprisingly, Lambert has been

3  unable to identify any FDCA provision regulating the use of animal logos on dietary

4  supplements.

5     There is thus no material dispute as to whether Lambert has standing to

6  pursue his FDCA-based claims.  The Court should accordingly grant summary

7  judgment in favor of Nutraceutical on Lambert's UCL claim.

8  **VI.    <u>CONCLUSION</u>**

9     Lambert's allegations in this case turn on a product label that, according to his

10  own admission, he essentially ignored and did not even bother to read, and that

11  consists entirely of non-actionable puffery.  For all the reasons explained in the

12  Motion, Lambert's claims are meritless and should not proceed past summary

13  judgment.

14

15  Dated:  November 24, 2014          IRELL & MANELLA LLP
                                      John C. Hueston
16                                    Andra B. Greene
                                      Steven N. Feldman
17

18

19                                    By:_____/s/ Andra B. Greene_____
                                         Andra B. Greene
20                                       Attorneys for Defendant
                                         NUTRACEUTICAL CORP.
21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

3184196

- 16 -

DEF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Case No. 2:13-cv-05942-AB-E