1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
MELANIE PERSINGER (275423)
*mel@westonfirm.com*
PAUL K. JOSEPH (287057)
*paul@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:   (619) 798-2006
Facsimile:    (480) 247-4553

*Class Counsel*

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone:   (619) 696-9006
Facsimile:    (619) 564-6665

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

IN RE COBRA SEXUAL ENERGY
SALES PRACTICES LITIGATION

Case No: CV 13-05942-AB-Ex

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR CLASS DECERTIFICATION**

Judge:        Honorable André Birotte Jr.
Location:     Courtroom 790
Date:         December 22, 2014
Time:         10:00 a.m.

# **TABLE OF CONTENTS**

INTRODUCTION......................................................................................................1

LEGAL STANDARD...............................................................................................2

ARGUMENT .............................................................................................................2

I.   MATERIALITY IS A QUESTION OF FACT FOR THE JURY TO
     DETERMINE AND NOT SUITABLE FOR DECERTIFICATION....................2

   A. Plaintiff Has Made a Sufficient Showing of Materiality ................................3

   B. Reliance, and Thus Materiality, Are Only Elements of the CLRA
      Claim, Not Plaintiff's Other Causes of Action. ..........................................5

   C. Plaintiff's Supposed "Unrealistic" Expectations are Irrelevant....................7

   D. Defendant Grossly Mischaracterizes Dr. Belch's Testimony.........................7

   A. Plaintiff's Proposed Damages Methodology is Consistent
      With His Liability Theories........................................................................12

   B.  Damages are Not Predominating Individual Issues....................................14

II.  DEFENDANT MISUNDERSTANDS PLAINTIFF'S ALTERNATIVE
     REQUEST FOR RULE 23(B)(2) CERTIFICATION ...........................................15

III. PLAINTIFF CONTINUES TO SATISFY RULE 23(A)(3)................................17

   A.  Defendant's Contentions with Respect to Plaintiff Ortega are Moot..........18

   B.  Plaintiff Lambert's Claims are Typical of the Class. ..................................18

CONCLUSION .......................................................................................................20

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. CV 13-05942-AB-Ex
PLAINTIFF'S OPPOSITION TO MOTION FOR CLASS DECERTIFICATION

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Hyland's Inc.*,
--- F.R.D. ---, CV 12-01150 DMG MANX, 2014 WL 3819713
(C.D. Cal. Aug. 1, 2014) ............................................................... 12, 13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ....................................................................... 10

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ............................................................. 20

*Brazil v. Dole Packaged Foods, LLC*,
12-CV-01831-LHK, 2014 WL 2466559 (N.D. Cal. May 30, 2014) ....... 11, 12

*Bruno v. Eckhart Corp.*,
280 F.R.D. 540 (C.D. Cal. 2012) ................................................... 2, 20

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) ....................................................... 15

*Colgan v. Leatherman Tool Group, Inc.*,
135 Cal. App. 4th 663 (2006) ........................................................... 15

*Comcast v. Behrend*,
133 S. Ct. 1426 (2013) ....................................................................... 10

*Conn. Ret. Plans & Trust Funds v. Amgen Inc.*,
660 F.3d 1170 (9th Cir. 2011) ........................................................ 2, 3

*Dvora v. Gen. Mills, Inc.*,
2011 U.S. Dist. LEXIS 55513 (C.D. Cal. May 16, 2011) ...................... 4

*Fine v. ConAgra Foods, Inc.*,
2010 U.S. Dist. LEXIS 101830 (C.D. Cal. Aug. 26, 2010) ................... 6

*Forcellati v. Hyland's*,
CV 12-1983-GHK MRWX, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ............. 12, 13

*Hanlon v. Chrysler Corp.*,
150 F. 3d 1011 (9th Cir. 1998) ..................................................... 14, 19

*Henderson v. the J.M. Smucker Company*,
2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) .................. 16, 17

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ............................................................. 20

ii

*In re POM Wonderful LLC Marketing & Sales Practices Litig.*,
   2012 WL 4490860 (C.D. Cal. Sept. 28, 2012) ................................................7

*In re POM Wonderful LLC*,
   ML 10-02199 DDP (RZx), 2014 WL 1225184 (C.D. Cal. March 25, 2014) ...............12

*In re Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145, 157 (2009) ..........................................................4, 14

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ...........................................................5, 6, 7, 16, 18

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
   *Sales Practices, & Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal 2010) ...........................................................4

*Johns v. Bayer Corp.*,
   2012 U.S. Dist. LEXIS 13410 (S.D. Cal. Feb. 3, 2012) ........................................3

*Johnson v. Gen. Mills, Inc.*,
   276 F.R.D. 519 (C.D. Cal. 2011) .................................................................14

*Koehler v. Litehouse, Inc.*,
   2012 U.S. Dist. LEXIS 176971 (N.D. Cal. Dec. 13, 2012) ......................................16

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011).........................................................................3, 16

*Lanovaz v. Twinings N. Am., Inc.*,
   C-12-02646-RMW, 2014 WL 165238 (N.D. Cal. Apr. 24, 2014)................................12

*Larsen v. Trader Joe's Co.*,
   2012 U.S. Dist. LEXIS 162402 (N.D. Cal. June 14, 2012) ......................................16

*Leyva v. Medline Indust., Inc.*,
   716 F.3d 510 ...................................................................................11, 14

*McCrary v. Elations Co., LLC*,
   EDCV 13-00242 JGB (OPx), 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ...............13

*Menagerie Prods. v. Citysearch*,
   2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009).......................................7

*Occidental Land, Inc. v. Super. Ct.*,
   18 Cal. 3d 355 (1976)............................................................................4

*Ortega v. Natural Balance, Inc.*,
   300 F.R.D. 422 (C.D. Cal. 2014) .........................................12, 13, 15, 18, 20

iii

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008) ...............................................................14

*Pfizer Inc. v. Super. Ct.*,
   182 Cal. App. 4th 622 (2010) .......................................................................6

*Ries v. Ariz. Bevs. United States LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ...............................................................17

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010).....................................................................19

*Sanchez v. Wal-Mart Stores, Inc.*,
   No. 2:06-CV-02573-JAM-KJM, 2009 WL 2971553 (E.D. Cal Sept. 11, 2009)...........18

*Sevidal v. Target Corp.*,
   189 Cal. App. 4th 905 (2010) .......................................................................6

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) .................................................................2

*Soto v. Superior Telcoms., Inc.*,
   2011 U.S. Dist. LEXIS 145205 (S.D. Cal. Dec. 15, 2011)........................14

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ..........................................................2, 5, 20

*Tourgeman v. Collins Fin. Servs.*,
   No. 08-cv-1392 JLS(NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011)....................6

*United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*,
   265 U.S. 438 (1924) .....................................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541, 2557 (2011) .....................................................................15

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal. App. 4th 1213, 1223 n.8 (2010)......................................................4

*Werdebaugh v. Blue Diamond Growers*,
   12-CV-2724-LHK, 2014 WL 2191901 (N.D. Cal. May 23, 2014) ........................11, 12

*Wiener v. Dannon Co.*,
   255 F.R.D. 658 (C.D. Cal. 2009) ............................................................4, 15

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008).....................................................................4, 7

*Yamada v. Nobel Biocare Holding AG*,
   2011 U.S. Dist. LEXIS 92598 (C.D. Cal. Aug. 12, 2011) ..........................14

iv

---

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. CV 13-05942-AB-Ex
PLAINTIFF'S OPPOSITION TO MOTION FOR CLASS DECERTIFICATION

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010)...................................................20

**Statutes**

21 C.F.R. § 310.528 ...................................................................................................13

Cal. Bus. & Prof. Code § 17200 ................................................................................1

Cal. Bus. & Prof. Code § 17203 ...........................................................................5, 6

Cal. Bus. & Prof. Code § 17500 ................................................................................1

Cal. Civ. Code § 1750. ...............................................................................................1

**Rules**

Fed. R. Civ. P. 23(a)(3) .............................................................................................19

Fed. R. Civ. P. 23(b)(2) .......................................................................................15, 16

Fed. R. Civ. P. 23(b)(3)..................................................................................10, 11, 12, 14

Fed. R. Civ. P. 23(c)(1)...............................................................................................2

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. CV 13-05942-AB-Ex
PLAINTIFF'S OPPOSITION TO MOTION FOR CLASS DECERTIFICATION

**INTRODUCTION**

Plaintiff Troy Lambert brings this consumer protection class action lawsuit on behalf of himself and the certified class of purchasers of Defendant Nutraceutical Corporation's product, called "Cobra Sexual Energy," for violations of the California Consumer Legal Remedies Act ("CLRA," Civ. Code §§ 1750, *et seq*.), the California Unfair Competition Law ("UCL," Bus. & Prof. Code §§ 17200, *et seq*.), and the California False Advertising Law ("FAL," Bus. & Prof. Code §§ 17500, *et seq*.). *See* Dkt. No. 56.

Defendant is a Delaware corporation with its principal place of business in Park City, Utah, and is authorized to do business in California. *See* SAC ¶¶ 6-12. Defendant manufactures, markets, distributes and sells dietary supplements under the brand name "Cobra Sexual Energy" (hereinafter "Cobra" or the "Product"). *See* ¶¶ 1; 5-9. Defendant further advertises Cobra as an aphrodisiac comprised of a "proprietary" blend of various herbal extracts, but the Product in fact is nothing more than expensive snake oil manufactured and sold in violation of federal and state law. *See* ¶¶ 1; 26-30; 55-57; 90-94. As a result, the representations made on Cobra's packaging and label are false and misleading. On June 19, 2014, this Court granted Plaintiff's Motion for Class Certification. *See* Dkt. No. 80. Defendant now moves for Decertification (Dkt. No. 11, "Mot."), which should be denied for the following reasons:

First, Plaintiff need not demonstrate materiality at class certification because it is a question of fact for the jury to determine. Moreover, under the CLRA, UCL and FAL, materiality is an objective standard subject to common proof and is thus not determined on an individual basis. Plaintiff has nevertheless sufficiently demonstrated materiality for class certification purposes.

Second, Plaintiff's damages methodology for restitution of the full purchase price is tethered to his liability theory that Cobra is ineffective and illegal. The methodology is capable of application to the class because damages can be readily determined by Defendant's sales numbers and an average retail price.

1

Third, Defendant's contentions with respect to Plaintiff Ortega are moot because Mr. Ortega has since voluntarily dismissed his claims.  Plaintiff Lambert remains an adequate class representative whose claims are typical of those of absent Class members.

## LEGAL STANDARD

An order certifying a class represents a tentative ruling that is subject to alteration or amendment before final judgment.  Fed. R. Civ. P. 23(c)(1).  Because a plaintiff seeking certification bears the burden of demonstrating that the proposed class satisfies the requirements of Rule 23, "[i]t follows, therefore, that a party seeking decertification of a class bear the burden of demonstrating that the elements of Rule 23 have not been established."  *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000); *see also Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 544 (C.D. Cal. 2012).  The burden for decertification is "relatively heavy, since doubts regarding the propriety of class certification should be resolved in favor of certification." *Slaven*, 190 F.R.D. at 651.  This is because upon certification the "parties can be expected to rely on it, conduct discovery, prepare for trial, and engage in settlement discussions on the assumption that it will not be altered except for good cause."  *Bruno*, 280 F.R.D. at 544.

## ARGUMENT

## I.  MATERIALITY IS A QUESTION OF FACT FOR THE JURY TO DETERMINE AND NOT SUITABLE FOR DECERTIFICATION

Defendant first contends that "materiality varies from consumer to consumer, and therefore, the class should be decertified."  Mot. at 5-10.  Defendant is wrong, however, because materiality is a question of fact susceptible to common proof that Plaintiff need not demonstrate for class certification.  *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011); *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011) ("a plaintiff need not prove materiality at the class certification stage . . . [because] materiality is a merits issue to be reached at trial or by summary judgment"); *Zeisel*, 2011 U.S. Dist. LEXIS 60608, at *31-31 ("Diamond's

2

argument and evidence focus largely on its position that the disputed labels were not material to a reasonable consumer. That argument goes to the merits of Zeisel's claims, and Diamond does not argue persuasively that Zeisel would be unable to establish reliance by means of common proof."); *Johns v. Bayer Corp.*, 2012 U.S. Dist. LEXIS 13410, at *16-17 (S.D. Cal. Feb. 3, 2012) (

> Bayer claims the related issue of materiality also involves individual inquiries, since people buy multivitamins for a variety of reasons, many of which have nothing to do with prostate health benefits. But as noted above, California's consumer protection laws evaluate materiality under a reasonable person standard, not on an individualized basis. Given that the prostate health language appeared on four panels of every package of Men's Vitamins, it very well could have been material to a reasonable person. However, that is a question of fact to be determined at a later stage.).

Defendant even concedes that they will argue this point "in Nutraceutical's forthcoming motion for summary judgment," Mot. at 8, which would be the correct forum for these arguments. *See Conn. Ret. Plans & Trust Funds*, 660 F.3d at 1177.  Any effort to argue the point now is an inappropriate attempt to supplement their summary judgment motion and bypass the local rules on page limits.

Defendant's attempts to have the materiality of the claims and purchases decided as part of decertification proceedings is entirely inappropriate, as the issue should be decided at summary judgment or trial.  Indeed, this Court already found that "Plaintiffs' claims are more than sufficient such that materiality can and should be determined by a jury." *See* Dkt. 80 at 12.

### A.    Plaintiff Has Made a Sufficient Showing of Materiality

Even if Plaintiff was required to make some threshold showing of materiality to obtain certification, he has done so.

First, California courts have recognized the materiality of label representations. *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328 (2011) ("Simply stated: labels matter. The marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label . . .

3

."); *accord Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939, n.3 (9th Cir. 2008) ("It is not difficult to choose statements, designs and devices which will not deceive." (quoting *United States v. Ninety-Five Barrels More or Less of Alleged Apple Cider Vinegar*, 265 U.S. 438, 443 (1924))); *Dvora v. Gen. Mills, Inc.,* 2011 U.S. Dist. LEXIS 55513, at *15 (C.D. Cal. May 16, 2011) (finding it "difficult to discount Plaintiff's contention that Defendant marketed its product . . . to capitalize on current health conscious messages" (record citation and internal quotation mark omitted)).

Second, it defies common sense to accept Defendant's assertion it labeled Cobra for years with prominent but immaterial claims.[1]  Nor does Defendant's argument that consumers buy products for a variety of reasons defeat a finding that "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action . . ." *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2009). Finally, Plaintiff's own behavior evinces materiality. *See* ¶¶ 18-22, 95-104; Lambert Dep. 23:11-20, 25:4-25, 26:1-16; *see also Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) ("'[T]he purchases made by plaintiffs were acts consistent with their reliance on Dannon's alleged misrepresentations regarding the health benefits of the Products. Thus, the Court finds that the evidence presently before the Court allows for an inference of reliance in this case." (quoting *Occidental Land, Inc. v. Super. Ct.*, 18 Cal. 3d 355 (1976))); *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010) (materiality of Defendant's representations established objectively by plaintiffs' use of product in accordance with representations).

---

[1]  The application of common sense to facts is a well-established method for determining materiality. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1191 (C.D. Cal 2010) ("The Court agrees. . . that 'common experience supports Plaintiffs' claim that a potential car buyer would view as material a defect' that relates to control over the speed of the car.") (internal citation omitted).

**B.      Reliance, and Thus Materiality, Are Only Elements of the CLRA Claim, Not Plaintiff's Other Causes of Action.**

"A CLRA claim warrants an analysis different from a UCL claim because the CLRA requires each class member to have an actual injury caused by the unlawful practice." *Stearns*, 655 F.3d at 1022 (citation omitted). Except for the lead plaintiff, reliance is not an element of the class's UCL or FAL claims. *See id*. at 1020; *In re Tobacco II Cases*, 46 Cal. 4th 298, 324 (2009). Accordingly, no such presumption is necessary.[2]  Rather, entitlement to restitution in a UCL or FAL action requires nothing more than *exposure* to the alleged misrepresentation:  "The focus of the UCL is 'on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices.'" *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 154 (quoting *Tobacco II*, 46 Cal. 4th at 312).  Accordingly, the UCL authorizes restitution "to restore to any person . . . any money or property . . . which *may have* been acquired" by unfair practices. Cal. Bus. & Prof. Code § 17203 (emphasis added). But someone unexposed to an unfair practice cannot have lost money or property (even potentially) because of it. *See generally Tobacco II*, 46 Cal. 4th at 320. On the other hand, someone exposed to a misrepresentation, even if he did not rely on it, "may have" been injured, for example, because the product commanded a higher market price than it would have without the misrepresentation.

Moreover, under the UCL, every person enjoys the "substantive right . . . to protection from fraud, deceit and unlawful conduct." *Id.* at 324 (citation omitted). Accordingly, any person who purchases a product containing a fraudulent statement, even if he does not actually rely on the statement, has both suffered a UCL injury and lost money or property, justifying restitution.

---

[2] *Tobacco II's* discussion of a reliance presumption concerned only the named plaintiff's standing under Proposition 64.  *See* 46 Cal. 4th at 326-27.

While class certification should be denied where "the proposed classes encompassed individuals who were never exposed to the alleged misrepresentations," *Tourgeman v. Collins Fin. Servs.*, No. 08-cv-1392 JLS(NLS), 2011 WL 5025152 at *52 (S.D. Cal. Oct. 21, 2011), that is not the case here.  Rather, "the UCL class members necessarily were exposed to the misrepresentation . . . by definition. . . . Because they were exposed to the misrepresentation, any money that the class members paid to Defendants 'may have been acquired by means of Defendants' [unlawful business practices]." *Id.* at *53 (citing Cal. Bus. & Prof. Code § 17203 and distinguishing *Pfizer Inc. v. Super. Ct.*, 182 Cal. App. 4th 622 (2010)[3] and *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905 (2010)[4]).

---

[3]  In *Pfizer*, the California Court of Appeals overturned a lower court's order granting certification to a class comprised of "all persons who purchased Listerine, in California, from June 2004 through January 7, 2005." 182 Cal. App. 4th at 625. This class was "grossly overbroad" because the definition captured "34 different Listerine mouthwash bottles, 19 [of which] never included any label that made any [challenged] statement," and "even as to those . . . bottles to which Pfizer did affix the labels that are at issue . . . not every bottle shipped between June 2004 and January 2005 bore such a label." *Id.* at 631-32. The *Pfizer* court's statement, however, that as a result of the overbroad class definition, "perhaps the majority of class members who purchased Listerine . . . did so not because of any exposure to Pfizer's allegedly deceptive conduct, but rather, because they were brand-loyal customers or for other reasons," *id.* at 632, improperly ascribes a causation requirement to absent class members by suggesting that the "reasons" for their purchases are relevant. To the contrary, exposure is only required for entitlement to restitution under § 17203, not because exposure suggests reliance. *See Tobacco II*, 46 Cal. 4th at 320; *Stearns*, 655 F.3d at 1021 n.13. *Fine v. ConAgra Foods, Inc.*, 2010 U.S. Dist. LEXIS 101830 (C.D. Cal. Aug. 26, 2010) is similarly distinguishable because the court determined "the vast majority of putative class members have never read (let alone considered)" the challenged claim. *Id.* at *9-10. To the extent the *Fine* court suggested absent class members' reasons for purchasing popcorn (e.g., actual reliance) were relevant, however, the decision is clearly erroneous and should be distinguished as such.

[4]  In *Sevidal*, 189 Cal. App. 4th at 916, a class of all purchasers was overbroad because Target provided evidence that "less than 17% of the proposed class" were affected by a computer error that caused a false "Made in USA" claim to appear on its website.. By

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. CV 13-05942-AB-Ex
OPPOSITION TO MOTION FOR CLASS DECERTIFICATION

### C.   Plaintiff's Supposed "Unrealistic" Expectations are Irrelevant

The central, overriding and predominate question is whether Cobra's advertising violates the UCL, FAL and CLRA.  This determination is not made with regard to each class member, but under the common reasonable consumer standard, which is itself resolved through objective inquiries, like materiality and veracity.  *See*, *e.g.*, *Tobacco II*, 46 Cal. 4th at 327-328 (reversing motion to decertify class and ruling that materiality is an objective standard); *Williams*, 552 F.3d at 938; *In re POM Wonderful LLC Marketing & Sales Practices Litig.*, 2012 WL 4490860, at *4 (C.D. Cal. Sept. 28, 2012) ("A false or misleading advertising campaign need not 'consist of a specifically-worded false statement repeated to each and every [member] of the plaintiff class.'").  Accordingly, Defendant's incessant focus on absent class members' characteristics, habits, thoughts, feelings, motivations and beliefs is misplaced. *See Menagerie Prods. v. Citysearch*, 2009 U.S. Dist. LEXIS 108768, at *43-44 (C.D. Cal. Nov. 9, 2009) ("common issues predominate with regard to plaintiffs' claim of a common classwide omission under the 'fraudulent' prong of the UCL. This UCL claim will be adjudicated under the 'reasonable consumer' standard rather than by examining the individual circumstances of each plaintiff.") (citation omitted)

### D.   Defendant Grossly Mischaracterizes Dr. Belch's Testimony

Defendant's credibility is undermined by its inaccurate portrayal of the testimony and opinion of Plaintiff's expert, Dr. Belch.  *See* Mot. 8:2-8.  Indeed, Defendant attributes statements to Dr. Belch that he did not make.  For example, Defendant states that "Dr. Belch admitted that the phrase 'sexual energy' could mean 'different things to different people."  *Id.*  However, when asked at his deposition what "the phrase 'sexually energy means to you," Dr. Belch immediately responded "[t]hat it would give me the energy to perform well sexually."  Dkt. No. 111-6 at 50:12-13.  Dr. Belch never stated that that "it could mean different things to different people;" rather, that is the

contrast, the class definition in this case is, by definition, limited to packaging bearing the challenged labeling claims.

7

question Defendant posed to Dr. Belch. *Id.* at 50:24 to 51:5.

Additionally, Defendant claims that when asked to interpret the phrase, "perform at your best with animal magnetism," Dr. Belch stated "it could mean different things depending on the person." Mot. 8:4-6. This is patently false. The following represents what Dr. Belch actually stated in response to the question:

> Well, you have to look at what that means in the context of all the claims made on the package. So there are multiple claims made on this package mentioning sexual performance. And if I interpret that in the context of performing with animal magnetism, I think that's kind of a popular culture idea that – you hear people sometime say he – or I guess it could be a she – could be a sexual animal. Meaning that they perform well.

Dkt. No. 111-6 at 52:15-24. Accordingly, Defendant's mischaracterization of Dr. Belch's testimony is self-serving and misleading. It further reveals the poverty of Defendant's position, which is merely to generate confusion. Dr. Belch concluded, as to this entire line of questioning, that all advertising phrases had to be read "in the context of all the claims made on the package," and not parsed out as Defendant was attempting to do. *Id.*

Furthermore, contrary to Defendant's contentions, Dr. Belch's deposition testimony only reinforces the opinions offered in his rebuttal report analyzing the consumer survey performed by Defendant's expert, Dr. Seggev. *See* Decl. of Ronald A. Marron, Ex. 1 at ¶¶ 5-10. Dr. Belch identified multiple flaws in the survey, including 1) the selection of overly broad screening questions that were more likely to include unrepresentative participants; 2) the use of broad, open-ended questions rather than a "more structured approach that asked respondents to evaluate specific efficacy claims related to enhancement of sexual performance;" and 3) the selection of a misleading manner in which to interpret and calculate the results that eschewed the unremarkable conclusion that "most of these benefits related to a common them regarding sex, sexual enhancement or sexual performance and that a very high percentage of the respondents described at least one benefit related to sex, sexual enhancement or sexual

performance." *Id*. at ¶ 9.

Dr. Belch's reinterpretation of Dr. Seggev's raw survey data, after correcting for the many deficiencies in his conclusions, including those listed above, led Dr. Belch to the following conclusions:

- "I do not agree with the conclusions made by Dr. Seggev in his expert report that consumers' expectations and understanding of the Cobra product are dispersed and diffused and that the packaging does not communicate a consistent message."

- "While there is a large and varied number of responses to the statements on the Cobra packaging, there is also a large percentage of respondents who listed responses that center on a specific theme such as sexual performance or enhancement."

- "Analysis of these responses shows that nearly two thirds of the respondents listed thoughts that can be categorized as being related to sex or sexual performance as shown in Table 2 of this report which is presented below."

- "Examination of the numbers in the last column of Table 3 shows that 173 of the 219 benefits (79%) described by the 151 respondents as being communicated by the Cobra Sexual energy product package relate to sex, sexual enhancement or sexual performance."

- "The analysis based on the coded benefits reveals that 112 of the 151 respondents (74%) who indicated that the Cobra packaging communicated a specific benefit related to sex, sexual enhancement or sexual performance."

- "It is my opinion that the various statements and claims made on the Cobra packaging are designed to convey a meaning and create belief among men that this product can enhance sexual energy and performance and would be interpreted as such by the reasonable consumer."

9

- "It is my opinion that the sum total of all the information and representations made on the packaging or the Cobra Sexual Energy product would lead the reasonable consumer to conclude that this product is intended to enhance sexual performance."

Therefore, Plaintiff has evidence that a uniform message of enhanced sexual performance was made to the class, and it consists of Defendant's own consumer survey evidence. *See id.* Accordingly, there can be no dispute, for purposes of class certification, that Cobra's packaging and labeling conveyed a standardized message that it is a sexual-performance virility-enhancing product, for which falsity, deception, and unlawfulness can be adjudicated on a classwide basis. *See id.*

## II. COMCAST HELD THAT PREDOMINANCE UNDER RULE 23(B)(3) REQUIRES A DAMAGES METHODOLOGY THAT IS CONSISTENT WITH PLAINTIFF'S LIABILITY THEORY

A court shall certify a class action upon an affirmative demonstration of Rule 23(a) and one provision of 23(b). See *Comcast v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Rule 23(b) must further be satisfied with "evidentiary proof," and the court shall conduct a rigorous analysis to ensure this is done. *Id*. at 1432. The rigorous analysis employed by the court inevitably entails broaching the merits of the case, but this is permissible only insofar as it relates to the issues of class certification. *See id*.; *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013). Rule 23(b)(3), at issue in *Comcast* and in the present case, requires "that questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

*Comcast* stands for the proposition that, to satisfy the predominate element under Rule 23(b)(3) for class certification, plaintiffs must present a damages methodology that is capable of application to the class and consistent with the liability theory of the case. *Comcast*, 133 S. Ct. at 1433. The damage calculation need not, however, be perfect, nor must it be performed at the class certification stage; indeed, individual damage

calculations alone will not defeat class certification in the Ninth Circuit. *See id*. at 1433; *Leyva v. Medline Indust., Inc.*, 716 F.3d 510, 514 (2013) (citing *Comcast*); *Werdebaugh v. Blue Diamond Growers*, 12-CV-2724-LHK, 2014 WL 2191901 at *25 (N.D. Cal. May 23, 2014) (same); *Brazil v. Dole Packaged Foods, LLC*, 12-CV-01831-LHK, 2014 WL 2466559 at *15 (N.D. Cal. May 30, 2014) (same). Plaintiffs need only show "that their damages stemmed from defendant's actions that created the legal liability." *Leyva*, 716 F.3d at 514.

In *Comcast*, plaintiffs were cable subscribers in counties in and around the Philadelphia region. *Comcast*, 133 S. Ct. at 1430. Comcast entered into swapping agreements with competitor cable providers in the region to concentrate Comcast's operations there. *Id*. The plaintiffs alleged that Comcast's conduct effectively monopolized cable provider control in the region, resulting in higher prices because its agreements decreased penetration of satellite providers, deterred overbuilder competition, reduced benchmark competition and increased Comcast's overall bargaining power in the region. *Id*. Plaintiffs sought class certification under Rule 23(b)(3), but the court ultimately accepted only one theory for classwide proof: overbuilder deterrence. *Id*. at 1431.

In *Comcast*, to satisfy the predominance element of Rule 23(b)(3), plaintiffs needed to evidence that their damages stemming from the violation were measurable on a class-wide basis through the use of a common methodology. *Id*. at 1430. Plaintiffs' proposed methodology, however, calculated their damages inclusive of all theories despite the court accepting only one for class action treatment. A damage model inclusive of all theories, the Court ruled, "cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id*. at 1433. The reason being is that plaintiffs' damage case must be consistent with their liability case because should plaintiffs prevail, they will only be entitled to damages attributable to overbuilder deterrence. *Id*. Because plaintiffs failed to furnish a damage methodology consistent with the accepted liability issue, the Court properly denied class

certification.   *Comcast* serves as no impediment to class certification in this case. As further explained below, Plaintiff's full refund damage model is consistent with his liability theory that Cobra is ineffective and illegal.

## A.   Plaintiff's Proposed Damages Methodology is Consistent With His Liability Theories

Plaintiffs seek restitution of the full purchase price of Cobra sold during the class period for their CLRA, UCL and FAL claims. Restitution in a mislabeling case contemplates the difference between what the consumer paid versus the value of what the consumer actually received. *See Werdebaugh*, 2014 WL 2191901 at *22; *Brazil*, 2014 WL 2466559 at *15; *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422, 429-30 (C.D. Cal. 2014). Allegations that a product's efficacy statements are false and misleading will justify returning the full purchase price of the product. *Allen v. Hyland's Inc.*, --- F.R.D.---, CV 12-01150 DMG MANX, 2014 WL 3819713, at *22 (C.D. Cal. Aug. 1, 2014) (holding full restitution damage model consistent with liability theory of complete ineffectiveness); *Ortega*, 300 F.R.D. at 430 (same); *Forcellati v. Hyland's*, CV 12-1983-GHK MRWX, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (same); *with Brazil*, 2014 WL 2466559 at *15 (rejecting full refund as inconsistent where mislabeled food product had ancillary value in the form of "calories, nutrition, vitamins, and minerals."); *Werdebaugh*, 2014 WL 2191901 at *25 (same); *In re POM Wonderful LLC*, ML 10-02199 DDP (RZx), 2014 WL 1225184 at *3 (C.D. Cal. March 25, 2014) (same); *Lanovaz v. Twinings N. Am., Inc.*, C-12-02646-RMW, 2014 WL 165238, at *6 (N.D. Cal. Apr. 24, 2014) (same).

Under Rule 23(b)(3), courts in the Ninth Circuit have not hesitated certifying classes on the basis that a full refund methodology coincides with a liability theory of total ineffectiveness. *See, e.g.*, *Ortega*, 300 F.R.D. at 430 (holding that recovery of full purchase price consistent with theory that "product was valueless because it provided none of the advertised benefits"); *Forcellati*, 2014 WL 1410264, at *11 (certifying class where liability theory alleges that defendant's homeopathic drugs are ineffective); *Allen*,

2014 WL 3819713, at *22 (holding that "[p]laintiffs' damages theory – predicated on the notion that class members are entitled to full restitution for products with no value – is consistent with [p]laintiffs' liability theory.").

Furthermore, the circumstances affecting each class member's particular purchase are irrelevant where the product in question is alleged to be ineffective, as it cannot "reasonably [be] argue[d] that a putative class member would purchase a product that does not work." *Forcellati*, 2014 WL 1410264 at *11 (citing *McCrary v. Elations Co.*, LLC, EDCV 13-00242 JGB (OPx), 2014 WL 1779243 at *11 (C.D. Cal. Jan. 13, 2014).

Here, the gravamen of Plaintiff's SAC is that Defendant's Cobra product is illegal and incapable of producing its advertised benefits. *See generally* SAC ¶¶ 28-43, 64-94, 119-125.  Under these circumstances, restitution of the full purchase price is justified, as this Court has already ruled.  *See* Dkt. No. 80.  Additionally, Plaintiff has since produced further evidence such as Dr. Rowland's expert testimony,[5] numerous scientific studies and the FDA's scientific panel that supported its basis that these drugs are dangerous, ineffective and thus valueless.  *See* Marron Decl., Ex. 2 at ¶ 46; 21 C.F.R. § 310.528. There is no ancillary value in Cobra, for example, in the form of calories or nutrients. *See* SAC ¶ 122. Cobra's ingredients cannot and have not been shown to produce sexual enhancement or virility in humans. *See id.* ¶¶ 65-94.

Proposing a workable methodology for full restitution of the purchase price will prove a facile achievement.  Indeed, restitution of the full purchase price can "be readily calculated using Defendant's sales number and an average retail price." *Ortega*, 300 F.R.D. at 430; *see also*, *Allen*, 2014 WL 3819713 at *22 (citing *Ortega* for the purpose

---

[5]  Defendant's selectively quoting of Dr. Rowland's article on yohimbe is telling. Defendant uses an ellipsis to quote Dr. Rowland, stating "studies have shown positive . . . effects of yohimbe over placebo," however, the critical words omitted by Defendants through creative punctuation were "although mild." Dkt. No. 112-1 at p. 234; *see also id.* at p. 235 (opining that yohimbe in "over-the-counter supplement[s] . . . as with any uncontrolled product, its efficacy . . . has not been determined").  This, coupled with extensive sections in Dr. Rowland's report about the inefficacy of yohimbe, make clear his opinion that Cobra is not effective.  Marron Decl., Ex. 2 at ¶¶ 1-22.

13

of showing that the methodology is capable of classwide application).  Plaintiff has already filed evidence of damages and restitution in the action, which consists, *inter alia*, of Defendant's own sales data and unit sales.  Dkt. No. 65-2, Exs. 5-7.

In addition, the decision of the California Court of Appeal, that full restitution of the purchase price is the standard for unlawfully sold products, is also binding on this Court as it is a state court of appeal interpreting state law.  *See In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 157. Accordingly, Plaintiff has set forth damages models that are consistent with his liability theories. and capable of application to the class.

**B.    Damages are Not Predominating Individual Issues**

Despite Defendant's attempts to so argue, damages are not predominating individual issues under Rule 23(b)(3). "The predominance inquiry hinges on the cohesiveness of the class—whether common legal and factual questions appear more significant than individual legal and factual questions." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588-589 (C.D. Cal. 2008).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (citation omitted). "Rule 23(b)(3) itself implies that a court may certify a class even though there will, at some point, be issues that must be determined individually." *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 522 (C.D. Cal. 2011).

Where the requirements of Rule 23 are met, damages cannot, as a matter of law, defeat certification. *See Leyva*, 716 F.3d at 514 (citing *Comcast*); *Yamada v. Nobel Biocare Holding AG*, 2011 U.S. Dist. LEXIS 92598, at *15 (C.D. Cal. Aug. 12, 2011); *Soto v. Superior Telcoms., Inc.*, 2011 U.S. Dist. LEXIS 145205, at *18 (S.D. Cal. Dec. 15, 2011) ("The differences presented by [defendant] are at most individual issues related to damages, but the Ninth Circuit has explained that 'damages calculations alone

cannot defeat certification.'") (quoting *Yokoyama* v. Midland Nat'l Life Ins. Co 594 F.3d 1087, 1094). Plaintiff met his burden when the class was certified by demonstrating "a likely method for determining class damages." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010); *see also Wiener*, 255 F.R.D. at 670-71 (holding "the Court is confident that a workable method of calculating damages for the proposed class could be achieved").

Defendant contends the class should be decertified because Plaintiff has "provided no evidence regarding restitutionary damages."  Mot. at 14.  However, Plaintiff has filed evidence of damages and restitution in the action, which consists, *inter alia*, of Defendant's own sales data and unit sales.  Dkt. No. 65-2, Exs. 5-7. This "Court has 'very broad' discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 695 (2006)).  This negates Defendant's assertion that damages issues will predominate over common class issues relating to its liability.  *See Wiener*, 255 F.R.D. at 670 ("[A]lthough the Court recognizes the problems inherent in calculating damages for a class action based on consumer products sold at varying prices, Dannon overstates these difficulties."). Judge Collins already dismissed this argument, affirming that damages "can be readily calculated using Defendant's sales numbers and an average retail price." *Ortega*, 300 F.R.D. at 430.

## II.   DEFENDANT MISUNDERSTANDS PLAINTIFF'S ALTERNATIVE REQUEST FOR RULE 23(B)(2) CERTIFICATION

Just as he did before, Plaintiff requests certification under 23(b)(2) in the alternative. Defendant misunderstands this request, however, as one for certification of Plaintiff's damages and restitution claims under 23(b)(2), even though no such request was made. In the authorities cited by Defendant, the prior practice, until the United States Supreme Court reversed the Ninth Circuit's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011), was to certify claims for monetary relief and

15

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. CV 13-05942-AB-Ex
OPPOSITION TO MOTION FOR CLASS DECERTIFICATION

injunctive relief under 23(b)(2) upon a finding that monetary relief was incidental to the injunctive relief, under a broad definition of incidental. The Supreme Court reversed the Ninth Circuit on this issue, a ruling Plaintiff was well aware of, and only sought the alternative 23(b)(2) certification of their claims for injunctive relief.

Defendant, seemingly aware of its misdirection and strawman argument, then proceeds to argue that certification of only injunctive relief claims is not appropriate if some class members could also assert claims for damages. It offers no controlling authority on this point, nor could it, as such a ruling would preclude injunctive relief classes for false advertising *in every case*, since in cases of alleged false advertising damages might also exist.  Likewise, its argument that Plaintiff cannot assert injunctive relief claims for false advertising because he is now aware of the fraud would also preclude all actions, both class and individual, for injunctions against false advertising and unfair business practices generally, since anyone bringing suit to enjoin unlawful, unfair, or fraudulent business practices is necessarily now aware of such practices.

This argument, to end all actions to enjoin unethical business practices, would certainly be convenient to Defendant, who sells a wide variety of fake "natural" remedies and related quackery, with aggressive "miracle cure" claims, but is not the law in this Circuit. Indeed, this precise argument has been made, and rejected, repeatedly in recent years.  *See Henderson v. the J.M. Smucker Company*, 2011 U.S. Dist. LEXIS 41077, at *20 (C.D. Cal. Apr. 11, 2011) (quoting *Kwikset Corp.*, 51 Cal. 4th at 344 (emphasis in original)). *See also Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, at *16-17 (N.D. Cal. Dec. 13, 2012) ("The Court agrees with Henderson. To do otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief." (citing *Tobacco II*, 46 Cal. 4th at 320 ("The purpose of such [injunctive] relief, in the context of a UCL action, is to protect California's consumers against unfair business practices by stopping such practices in their tracks."))); *Larsen v. Trader Joe's Co.*, 2012 U.S. Dist. LEXIS 162402, at *10-12

(N.D. Cal. June 14, 2012) ("Construing Article III standing as narrowly as defendant suggests in consumer protection cases would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief.").

"Plaintiffs request to be relieved from false advertising by defendants in the future, and the fact that they discovered the supposed deception some years ago does not render the advertising any more truthful. Should plaintiffs encounter the . . . [challenged claims] at the . . . store today, they could not rely on th[e] representation[s] with any confidence. This is the harm California's consumer protection statutes are designed to redress." *Ries v. Ariz. Bevs. United States LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012). Additionally, "Defendant has not presented evidence or even alleged that it has removed its allegedly misleading advertising from its products. With such advertising remaining on supermarket shelves, Plaintiffs, as representatives of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from Defendant's alleged false advertising." *Henderson*, 2011 U.S. Dist. LEXIS 41077, at *21. Cobra is still being sold as labeled to Plaintiffs and a class was properly certified to halt this practice. Defendant does nothing to explain why the California Legislature provided for private rights of action to enjoin fraudulent business practices if such actions could never be brought. The Court should therefore reject Defendant's argument.

## III.   PLAINTIFF CONTINUES TO SATISFY RULE 23(A)(3)

Defendant contends that Plaintiffs' claims are atypical of the class because Plaintiffs allegedly harbored unreasonable interpretations of Defendant's label, and Plaintiff Ortega's past medical history subjects him to unique defenses that Defendant believes will become the focus of the litigation. Mot. p. 17-21. With respect to the first contention, Judge Collins already considered the same argument about Plaintiffs' purported unreasonable interpretations of the label, and rejected it. *See* Dkt. No. 80 at 6:15 to 7:5; *see also* Dkt. No. 75-1 at ECF pp. 8-12 (summary of Plaintiff Lambert's

17

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. CV 13-05942-AB-Ex
OPPOSITION TO MOTION FOR CLASS DECERTIFICATION

deposition testimony, demonstrating he relied on the overall product packaging and promises of sexual performance enhancement); *id.* at ECF pp. 63-66 (Lambert's deposition testimony).  And, any argument with respect to Plaintiff Ortega is moot as he already voluntarily dismissed his claims.  Dkt. No. 121.  Plaintiff Lambert's claims, as further demonstrated below, are typical of the class and thus satisfy Rule 23(a)(3).

### A.    Defendant's Contentions with Respect to Plaintiff Ortega are Moot

After a class has been duly certified, and it later appears that the original class representative is no longer adequate to represent the class, the "proper procedure would not be to decertify the class but grant leave to amend to redefine the class or add a new class representative." *Tobacco II*, 46 Cal. 4th at 328-329; *see also Sanchez v. Wal-Mart Stores, Inc.*, No. 2:06-CV-02573-JAM-KJM, 2009 WL 2971553, at *3 (E.D. Cal Sept. 11, 2009).  This Court duly certified a class on June 19, 2014, with Plaintiffs Ortega and Lambert serving as class representatives.  Dkt. No. 80.  Mr. Ortega has since voluntarily dismissed his claims.  *See* Dkt. No. 121.  Therefore, those portions of Defendant's Motion regarding Mr. Ortega are now moot.  As discussed below, Mr. Lambert remains an adequate class representative and can proceed without Mr. Ortega.

### B.    Plaintiff Lambert's Claims are Typical of the Class

Defendant raises the same unsuccessful argument here as it did in Plaintiff's motion for class certification.  *Compare* Mot. 17:17-18 (stating that "Plaintiffs' interpretations of Cobra's label are both unreasonable and not commonly shared by other consumers."); *with Ortega*, 300 F.R.D. at 427 (stating that "Defendant argues that Plaintiffs' claims are not typical because they had unrealistic expectations of the product and unreasonably interpreted the packaging.").  Defendant is thus wasting this Court's time and resources by revisiting this issue.  *See id.* (

> Defendant argues that Plaintiffs' claims are not typical because they had unrealistic expectations of the product and unreasonably interpreted the packaging.  Defendant goes into great detail about the exact expectations each Plaintiff claimed to have had about the product based on their understanding of the words and imagery on Cobra's packaging.  But these

particulars do not render Plaintiffs atypical: even if each Plaintiff and class member had somewhat varying conceptions of the results he could expect form a product marketed as virility-enhancing, each had the same marketing-induced expectation that the product would be virility-enhancing. Plaintiffs claim it fell short of that representation. Their claims are therefore typical, notwithstanding the variations Defendant points out.).

Defendant can cite to no evidence justifying a reversal of this Court's previous decision. To the extent Defendant offers Dr. Seggev's survey report, it is of no value to Defendant. As previously stated, Dr. Belch, after an exhaustive review of Dr. Seggev's survey methods, data and results, reported that it is clear that most of the benefits relate to a common them regarding sex, sexual enhancement or sexual performance and that a very high percentage of the respondents described at least one benefit related to sex, sexual enhancement or sexual performance. Marron Decl. Ex. 1 at ¶ 9 (opining, *inter alia*, that "analysis based on the coded benefits reveals that 112 of the 151 respondents (74%) who indicated that the Cobra packaging communicated a specific benefit described at least one benefit related to sex, sexual enhancement or sexual performance"). It is unsurprising that this Court arrived at the same common-sense conclusion without the need of a survey report. There is accordingly no reason to decertify the class on this basis. Plaintiff, like other absent Class members, was induced to purchase Cobra because of its false and misleading virility-enhancing statements. *See id.*; Dkt. No. 75-1 at ECF pp. 8-12 & 63-66. Plaintiff's claims are thus typical of the class as further demonstrated below.

Rule 23(a)(3) requires that the claims of the representative parties must be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). And when determining whether the prerequisites of Rule 23(a) are met, courts employ a "permissive standard." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1020 (9th Cir. 1998). The typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Armstrong v. Davis*,

275 F.3d 849, 868 (9th Cir. 2001)).

Here, Plaintiff satisfies the typicality standard because his claims are identical to those of absent Class members, both of which derive from the same set of facts and legal theories. Plaintiff purchased Cobra during the Class Period in reliance on Defendant's false and misleading representations about Cobra, and lost money as a result.  *See Ortega*, 300 F.R.D. at 427; SAC ¶¶ 18-22, 95-104; 109. Beyond that, a "plaintiff[']s individual experience with the product is irrelevant where, as here, the injury under the UCL, FAL, and CLRA is established by an objective test." *Bruno*, 280 F.R.D. at 534; *see also Stearns*, 655 F.3d at 1021-1022 (discussing objective standards applicable to UCL and CLRA).

At trial, Plaintiffs can prove their claims through use of objective proof "such as consumer survey evidence, that the challenged statements tend to mislead consumers." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010). Indeed, a consumer survey has already been produced for Cobra that Plaintiff's expert, Dr. Belch, opines will demonstrate that Cobra's packaging and label creates a belief among men that this product can enhance sexual energy and performance, and would be interpreted as such by the reasonable consumer.  Marron Decl., Ex. 1 at Tbls. 1-3 & ¶¶ 9-10. Moreover, a generalized referral to product labeling is sufficient proof of the representations consumers relied upon in purchasing that product. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006) ("A false or misleading advertising campaign need not 'consist of a specifically worded false statement repeated to each and every [member] of the plaintiff class.'").  Given that the same proof would suffice for Plaintiff's claims as it would for the Class' claims, Plaintiff's claims are typical of those of the putative Class. *See id.*; *Ortega*, 300 F.R.D. at 427.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion.

Dated: December 1, 2014                          Respectfully submitted,

20

1

2    */s/ Ronald A. Marron*
     RONALD A. MARRON
3    *ron@consumersadvocates.com*
     **THE LAW OFFICES OF RONALD A.**
4    **MARRON**
     SKYE RESENDES
5    651 Arroyo Drive
6    San Diego, CA 92103
     Telephone:   (619) 696-9006
7    Facsimile:   (619) 564-6665
8

9    **THE WESTON FIRM**
     GREGORY S. WESTON
10   MELANIE PERSINGER
11   PAUL K. JOSEPH
     1405 Morena Blvd., Suite 201
12   San Diego, CA 92110
     Telephone:   (619) 798-2006
13   Facsimile:   (480) 247-4553
14

15   ***Class Counsel***

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. CV 13-05942-AB-Ex
OPPOSITION TO MOTION FOR CLASS DECERTIFICATION