1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11

12   TROY LAMBERT,                      Case No. CV 13-05942-AB (Ex)

13            Plaintiff,

14   v.

15   NUTRACEUTICAL CORPORATION,         **ORDER GRANTING
                                         DEFENDANT'S MOTION FOR
16            Defendant.                 CLASS DECERTIFICATION**

17

18          Pending before the Court is Defendant Nutraceutical Corporation's Motion for

19   Class Decertification.  (Mot., Dkt. Nos. 111, 122.)  Plaintiff Troy Lambert filed an

20   Opposition and Defendant filed a Reply.  (Opp., Reply, Dkt. Nos. 141, 144.)  A

21   hearing was held on December 22, 2014.  (Dkt. No. 147.)  Having considered the

22   materials submitted and the oral argument presented at the hearing, the Court hereby

23   **GRANTS** the Motion.

24

25

26

27

28

## I.     BACKGROUND

This consumer class action involves a dietary supplement called Cobra Sexual Energy ("Cobra").  (*See* Second Amended Complaint "SAC," Dkt. No. 56.) Defendant manufactures and markets Cobra.  (*Id*.)  "Defendant's product Cobra primarily consists of a 'proprietary blend' of small amounts of extracts from herbs, roots, [ ] other organic substances…" and other plant-based materials.  (*Id*. at ¶¶ 26-30.)  From May 2011 through December 2011, on numerous occasions, Plaintiff bought Cobra from different locations in California.  (*Id*. at ¶ 15.)  Plaintiff contends that Defendant "falsely market[s] [Cobra] as having beneficial health and aphrodisiac properties and being scientifically formulated to improve virility, despite that none of the ingredients in Cobra, individually or in combination, provide such benefits."  (*Id*. at ¶ 1.)

On March 14, 2013, Plaintiff filed a class action complaint against Defendant alleging the following: Violation of the Unfair Competition Law ("UCL"), Unlawful Prong (Cal. Bus. & Prof. Code § 17200 *et seq.*); Violation of the UCL, Unfair and Fraudulent Prong (Cal. Bus. & Prof. Code § 17200 *et seq.*); Violation of the False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500 *et seq.*); Violation of the Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750 *et seq.*).  (*Id*.)

On June 19, 2014, this Court certified Plaintiff's class action.  (Dkt. No. 80.) The class is defined as: **All persons (excluding officers, directors, and employees of [Defendant]) who purchased, on or after August 14, 2009, [Defendant's] Cobra Products (in all packaging sizes and iterations) in California for their own use rather than for resale or distribution.**  (*See* Dkt. No. 83 (emphasis in original)).

Now that discovery is completed, Defendant moves for class decertification under Federal Rule of Civil Procedure ("Rule") 23.  Plaintiff opposes decertification on several grounds.

2.

## II.   LEGAL STANDARD

Rule 23 governs class certification in federal court.  Fed. R. Civ. P. 23. Although it is not an express component of Rule 23, "courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Zeisel v. Diamond Foods, Inc.*, C 10-01192 JSW, 2011 WL 2221113, at* 6 (N.D. Cal. June 7, 2011).  A district court's decision to decertify a class is committed to its sound discretion.  *See Knight v. Kenai Peninsula Borough School Dist.*, 131 F.3d 807, 816 (9th Cir. 1997).  The standard used in reviewing a motion to decertify is the same as the standard used in evaluating a motion to certify.  A district court "must conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996) (citing *In re American Medical Sys.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996)).

A court may choose to decertify a class on a party's motion or *sua sponte* at any time after the court conditionally certifies the class. Fed. R. Civ. P. 23(c)(1).  Even on a motion to decertify, the party seeking to maintain class certification bears the burden of demonstrating that the Rule 23 requirements are satisfied. *Marlo v. U.P.S.*, 639 F.3d 942, 947 (9th Cir. 2011).

Based on discovery or other developments, a party may move to decertify the class on the basis that the prerequisites and grounds for certification do not exist.  *See Pierce v. County of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008); *Owner-Operator Independent Drivers Ass'n, Inc. v. Landstar System, Inc.*, 622 F.3d 1307, 1326 (11th Cir. 2010) (concluding that decertification was appropriate where the court ultimately determined that damages cannot easily be calculated for all class members).

## III.   DISCUSSION

This Court certified this class action under Rule 23(b)(3).  (Dkt. No. 80, p. 16 ¶ 1.)  Rule 23(b) states that a court may certify a class if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members…."  Fed. R. Civ. P. 23(b)(3).  "A court must

1  decide 'whether there are so many questions common to all of the plaintiffs that
2  having class action treatment would be far more efficient than having a number of
3  separate trials.'"  *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 657 (C.D. Cal. 2000)
4  (citation omitted).

5      Defendant moves to decertify the class on the ground that individual issues
6  predominate over common issues.  Most importantly, Defendant argues that Plaintiff's
7  full refund model fails because it does not satisfy the *Comcast* common methodology
8  test, and because Plaintiff failed to obtain the evidence necessary to calculate
9  damages.  (Mot., pp. 11-14 (citing *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1430,
10  185 L.Ed.2d 515 (2013)).  Plaintiff opposes Defendant's Motion, arguing that
11  Plaintiff's proposed damages methodology is consistent with his theories of liability.
12  (*See* Opp., pp. 12-15.)

13      The Court finds that class decertification is warranted because although
14  Plaintiff's full refund model is consistent with his theories of liability, Plaintiff has not
15  presented enough evidence to demonstrate that classwide damages can be measured.[1]

16      **1.  Plaintiff's Theory for Measuring Damages is Consistent with Plaintiff's**
17          **Theories of Liability**

18      The class was certified under Plaintiff's FAL, UCL, and CLRA theories and the
19  theories were to be measured using the full refund damages model theory, which
20  would be "readily calculated using Defendant's sales numbers and an average retail
21  price."  (*See* SAC; Dkt. No. 80, p. 13.)

22          **a.  The Legal Standard for Classwide Damages**

23      To maintain a class under Rule 23(b)(3), a plaintiff must demonstrate that

24

25  [1]The Court finds that the issue pertaining to the full refund model is dispositive and therefore need
26  not reach the remaining issues involving the reliance and materiality prongs of Plaintiff's state law
    claims.  (*See* Mot., pp. 5-11; Opp., pp. 2-10.)  Because the Court certified this class under Rule
27  23(b)(3), the Court will not reach the Parties' arguments addressing certification under Rule
    23(b)(2).  (*See* Mot., pp. 15-16; Opp., pp. 15-17.)  The deadline to certify the class under Rule
28  23(b)(2) has passed pursuant to Local Rule 23-3.

4.

1   damages are measurable on a classwide basis through use of a "common

2   methodology." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1430, 185 L.Ed.2d 515

3   (2013); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal.

4   2010) ("[a]t class certification, plaintiff must present a likely method for determining

5   class damages…."). In order to certify a class, plaintiff's damages model must be

6   consistent with the theory of liability against a defendant. *Id.* at 1433-34. In *Comcast*,

7   the Supreme Court conducted a "rigorous analysis" of the Rule 23(b)(3)

8   predominance requirement and concluded that the plaintiff "failed to establish that

9   damages could be measure[d] on a [classwide] basis" because the common

10   methodology in measuring damages was in excess of the liability theories asserted.

11   *Id.* at 1431-32.

12   **b. Plaintiff's Claims Seek Classwide Damages Under the Full Refund**

13   **Model**

14   Plaintiff's claim under the FAL is defined to include any statements, pictures,

15   or labels made in connection with the sale of goods or services that is likely to deceive

16   the reasonable consumer. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th

17   Cir. 2008). A UCL action defines unfair competition to "mean and include any

18   unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or

19   misleading advertising and any act prohibited by [the FAL]." *See* Cal. Bus. & Prof.

20   Code § 17200; *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 93 Cal. Rptr. 3d

21   559 (Cal. 2009). Under the CLRA, a defendant is liable if it misrepresents its goods

22   to contain certain characteristics, uses, or benefits that the goods do not have or

23   advertises goods intending not to sell them as advertised. Cal. Civ. Code § 1770(a)

24   (5), (7), (9) and (16).

25   Plaintiff seeks restitution under these claims. "The False Advertising Law, the

26   Unfair Competition Law, and the CLRA authorize a trial court to grant restitution to

27   private litigants asserting claims under those statutes." *Colgan v. Leatherman Tool*

28   *Group, Inc.*, 135 Cal. App. 4th 663, 694, 38 Cal. Rptr. 3d 36 (Cal. App. 2006)

1    (citations omitted).  "The proper measure of restitution in a mislabeling case is the

2    amount necessary to compensate the purchaser for the difference between a product as

3    labeled and the product as received."  *Werdebaugh v. Blue Diamond Growers*, No. 12-

4    CV-02724-LHK, 2014 WL 7148923, at *8 (N.D. Cal. 2014) (citation omitted).

5    Restitution is determined by "taking the difference between the market price actually

6    paid by consumers and true market price that reflects the impact of the unlawful,

7    unfair, or fraudulent business practices."  *Werdebaugh*, 2014 WL 7148923, at *8.

8        Plaintiff uses the full refund model to measure restitution.  The full refund

9    model assumes the class members did not benefit from the product at issue, and

10   therefore are entitled to a full refund.  *In re POM Wonderful LLC*, No. ML 10-02199

11   DDP (RZx), 2014 WL 1225184, at *3 n.2 (C.D. Cal. Mar. 25, 2014) ("[T]he Full

12   Refund model depends upon the assumption that not a single consumer received a

13   single benefit…."); *cf. In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (Cal. App.

14   2009) ("The difference between what the plaintiff paid and the value of what the

15   plaintiff received is a proper measure of restitution.").  For a damages model such as

16   this, "[c]alculations need not be exact."  *Comcast*, 133 S.Ct. at 1433.

17       **c.  Plaintiff's Damages Model Matches His Theories of Liability**

18       Defendant contends that this full refund model does not match Plaintiff's claims

19   because it fails to account for the benefit that some class members got from Cobra.

20   (Mot., p. 11 (citing *Caldera v. J.M. Smucker Co.*, CV 12-4936-GHK VBKX, 2014

21   WL 1477400, at *4 (C.D. Cal. Apr. 15, 2014)); *In re POM*, 2014 WL 1225184 at *3

22   n.2.  Defendant argues that its experts and Leslie Garvin's declaration establish that at

23   least some class members received a benefit from Cobra, which renders the full refund

24   model inapplicable on a classwide basis.  (*See, e.g.*, Leslie Garvin Declaration,  Dr.

25   Eli Seggev Report, Dr. Eric Gershwin Report, Dkt. Nos. 111-1, 111-5, 111-8.)  As a

26   result, Defendant asserts that Plaintiff's damages model exceeds his liability theories

27   and is not a valid "common methodology," making individual issues predominate

28   over common issues.  *Comcast*, 133 S.Ct. at 1431.  Plaintiff has presented evidence

supportive of his principal theory that Cobra is valueless.  (*See*, *e.g.*, Dr. George E. Belch Report, Dr. David L. Rowland Report, Opp., Exs. 1, 2, (stating, *inter alia*, that Cobra's ingredients are ineffective and unreliable for sexual enhancement purposes)).

The Court finds that Plaintiff's full refund damages model matches his theories of liability.  Plaintiff claims that Cobra is valueless, and Plaintiff has produced evidence that supports his claim.  If the finder of fact finds that Cobra is in fact valueless then that justifies fully refunding the class for their purchases.  *In re POM*, 2014 WL 1225184, at *3 n.2 ("[T]he Full Refund model depends upon the assumption that not a single consumer received a single benefit ... from Defendant's [products].").

### 2.  Class Decertification is Warranted Because Plaintiff Cannot Demonstrate a Classwide Calculation of Damages

The Court certified this class under Rule 23(b)(3) based on Plaintiff's representations regarding the full refund model.  Based on these representations, the Court anticipated calculating damages using Defendant's sales data and an average retail price.  (Dkt. No. 65, pp. 20-21 ("Thus, using the average suggested retail sales price for [Cobra], which can also be obtained in discovery, multiplied by the number of units sold, will establish total amount of restitution dollars owing to the class.")).  However, Plaintiff has not produced an average retail price or any other point-of-sale data to support his damages model.  Instead, Plaintiff uses Defendant's sales data and unit sales as the only means of calculating damages.  (Opp., p. 14; *cf.* Dkt. No. 65-2, Exs. 5-6.)  Defendant argues that its sales data by itself cannot be used to calculate damages under Plaintiff's full refund model, and without the average retail price, no restitution can be calculated.

The average retail price is essential in this action.  Normally, under the UCL full restitution standards, restitution is calculated by taking the average market price the consumer actually paid and deducting it from the true market price.  *Werdebaugh*, 2014 WL 7148923, at *8 (citation omitted).  Courts routinely require the use of an average retail price to calculate damages.  *Chambers v. CVS Pharmacy, Inc.*, No.

09cv0419 JAH(RBB), 2009 WL 2579661, at *3 (S.D. Cal. 2009) (using the average retail price of $2.45 to determine that the plaintiff's causes of action could not exceed minimum amount in controversy required for diversity jurisdiction); *OS Enterprise, LLC v. Fairline Development Canada (1992) Ltd.*, No: C 11–4375 SBA, 2014 WL 1389540, at *3 (N.D. Cal. 2014) (accepting the magistrate's default judgment recommendation which calculated Plaintiff's lost profits using an average retail price of $13.00 per bird for the chicken brand).

In this context, the price Defendant sold Cobra to its wholesalers does not reflect the price class members actually paid.  It is the average retail price that reflects the price class members actually paid.  Obtaining the average retail price does not require Plaintiff to determine the individualized price each consumer spent.  Instead, the average retail price is a standard amount each class member would be refunded based on the retail information gathered through discovery.  Although the average retail price does not have to be exact, it is nevertheless critical at this stage of the litigation.  Missing this calculation is a defect in Plaintiff's evidence that is fatal to his class claims because restitution serves to provide what the class members lost, not what the Defendant gained.  *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 WL 60097 at *12-13 (N.D. Cal. Jan. 7, 2014) ("Restitutionary relief is an equitable remedy, and its purpose is 'to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.'") (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149, 131 Cal.Rptr.2d 29 (Cal. 2003)).

Plaintiff stated that he would use the average retail price to calculate damages and proposed no alternative method.  (Dkt. No. 65, pp. 20-21.)  However, during oral argument, it became clear that Plaintiff could only provide Defendant's own sales data and could not provide an average retail price.  (Dkt. No. 147, 8:21-25; 9:7-10 ("Q: Help me understand how you're going to calculate the average retail price of this product."  A: "Well, we have – what we had is we had the sales information for

1   almost the entire class but not quite the whole class, and we took that…The UCL

2   allows restitution of all funds received by way of unfair competition.  And the

3   defendants have told us what funds they received as a result of unfair competition.")).

4        Plaintiff already produced Defendant's sales data at the certification stage,

5   which the Court relied upon in granting class certification based on Plaintiff's

6   representations that he would supplement Defendant's sales data with the average

7   retail price.  (Dkt. No. 80, p. 13.)  Now discovery is closed, and Plaintiff seeks to

8   establish monetary relief on a classwide basis through Defendant's sales data only.

9   Yet, without the average retail price, classwide damages cannot be calculated.

10   *Caldera*, 2014 WL 1477400 at *4 ("[C]lasswide damages cannot accurately be

11   measured based on Defendant's sales data alone."); *Astiana*, 2014 WL 60097 at *12-

12   13 (denying class certification because, *inter alia*, plaintiff provided no evidence

13   regarding damages, and that "[e]stablishing a higher price for a comparable product

14   would be difficult because prices in the retail market differ and are affected by the

15   nature and location of the outlet in which they are sold").

16        Plaintiff claims that damages can be calculated based solely on Defendant's

17   sales data but does not explain how to do so without the average retail price.  (Opp., p.

18   14; *cf.* Dkt. No. 65-2, Exs. 5-7; Dkt. No. 147, 37:11-19.)  The Court understands that

19   the theory behind Plaintiff's claims is that consumers are not receiving any benefit

20   because Cobra is illegal; therefore, restitution is warranted using a full refund model.

21   However, Plaintiff has not provided the Court with a damages expert or any

22   affirmative evidence as to how this restitutionary calculation will be achieved come

23   trial.  Absent any retail data that would identify the actual class injury, the Court could

24   only speculate as to the extent of any classwide injury using only Defendant's sales

25   data.  For instance, retailers set their own pricing for Cobra, marking the prices up or

26   down.  (*See* Dkt. No. 111, Ex. H., 144:17-21, Jeffery A. Hinrich's Transcript ("The

27   retailer sets their own pricing. [Defendant has] a price that [Defendant sells] to the

28   retailer [at].  [Defendant does] not know what [the retailer] will do with that price. .

9.

1  .what [the retailer] will put as a markup once [the retailer receives] the product.")); 

2  *U.S. v. Parke, Davis & Co.*, 362 U.S. 29, 32 80 S.Ct. 503, 506 4 L.Ed.2d 505 (1960) 

3  ("[D]rug retailers in the two cities advertised and sold several [ ] vitamin products at 

4  prices substantially below the suggested minimum retail prices."); *see also F.T.C. v.* 

5  *Figgie Intern., Inc.*, 994 F.2d 595, 606 (9th Cir. 1993) ("[Defendant] sells heat 

6  detectors for cash to distributors, who apparently have complete discretion to set their 

7  own mark-ups.").  Because of the discrepancy in retail pricing, Defendant's sales data 

8  or what Defendant charges its wholesalers cannot be a substitute for the average retail 

9  price. 

10      Plaintiff contends that the average retail price is unnecessary because individual 

11  damage calculations alone do not defeat class certification.  (*See* Opp., pp. 10-11 

12  (citing *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).  In *Leyva*, the 

13  Ninth Circuit held that "the presence of individualized damages cannot, by itself, 

14  defeat class certification under Rule 23(b) (3)."  (*Id.*)  In justifying this position, the 

15  appellate court understood that within a wage and hour context, a class of aggrieved 

16  employees may very well have individualized damages owed to them because not 

17  every class member gets paid the same rate or works the same amount of hours.  Thus, 

18  "so long as the damages can be determined and attributed to a plaintiff's theory of 

19  liability, damage calculations for individual class members do not defeat 

20  certification."  *Lindell v. Synthes USA*, No. 11-CV-02053-LJO-BAM, 2014 WL 

21  841738, at *14 (E.D. Cal. Mar. 4, 2014) (citing *Leyva*, 716 F.3d at 514). 

22      *Leyva* is distinguishable.  In *Leyva*, individualized damage calculations did not 

23  defeat certification because the plaintiffs had a workable damages model that matched 

24  their theory of liability.  In the instant case, there simply is no evidence to calculate 

25  damages under Plaintiff's damages model is what stops the analysis.  The absence of 

26  an average retail price makes it impossible to calculate damages either classwide or on 

27  an individual basis.  Thus, the Court is presented with a full refund model that relies 

28  exclusively on Defendant's sales data, and that evidence alone does not suffice to

calculate damages.

     After a full opportunity to conduct discovery, Plaintiff has failed to produce the evidence needed under the full refund model.  Moreover, Plaintiff has not presented an alternative damages model to address this impasse.  The Court cannot allow this class to move forward if the damages model cannot be applied.  *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 135-36 (S.D.N.Y. 2006) (denying certification because the plaintiffs' damages analysis was incomplete and defective).

     Accordingly, because Plaintiff failed to provide the key evidence necessary to apply his classwide model for damages, the Court cannot find that common issues predominate under Rule 23(b)(3).  Therefore, class decertification is warranted.

## IV.   CONCLUSION

     For the foregoing reasons, Defendant's Motion to Decertify Class is GRANTED.

**IT IS SO ORDERED.**

Dated:  February 20, 2015      _____

                     HONORABLE ANDRÉ BIROTTE JR.

                     UNITED STATES DISTRICT COURT JUDGE

11.