**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (619) 343-2789

**Class Counsel**

LAW OFFICES OF RONALD
A. MARRON
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (305541)
*mike@consumersadvoctes.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

IN RE COBRA SEXUAL ENERGY
SALES PRACTICES LITIGATION

Case No. 2:13-cv-05942-AB-Ex
Pleading Type: Class Action

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES

Judge: The Honorable André Birotte, Jr.
Date: November 6, 2020
Time: 10:00 a.m.
Location: Courtroom 7B

## <u>NOTICE OF MOTION AND MOTION</u>

**PLEASE TAKE NOTICE** that on November 6, 2020 at 10:00 a.m., or as soon thereafter as the case may be heard, in Courtroom 7B of this Court, located at 350 West First St., Los Angeles, CA 90012, Plaintiff Troy Lambert will, and hereby does, move this Court for an order granting preliminary approval of his Class Action Settlement Agreement.

This motion is made pursuant to Federal Rule of Civil Procedure 23(e) and (b)(2) and is based on this Notice, the accompanying Memorandum of Points and Authorities, the attached Declarations of Gregory S. Weston and Gajan Retnasaba and exhibits thereto, the [Proposed] Preliminary Approval Order, the pleadings and papers on file herein, and such other matters as may be presented to the Court at the time of the hearing.

Dated: October 23, 2020

/s/ Gregory S. Weston
Gregory Weston

**<u>Class Counsel</u>**

i

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................iii

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................... 2

III.   TERMS OF THE SETTLEMENT AGREEMENT ............................... 4

    A.   The Settlement Class ......................................................................... 4

    B.   Monetary Relief ................................................................................. 5

    C.   Injunctive Relief ................................................................................ 5

        1.   "Potency Wood" Provision ....................................................5

        2.   "Virility" Provision ................................................................5

    D.   Class Notice ....................................................................................... 5

    E.   Release ................................................................................................ 7

    F.   Claims Process ................................................................................... 7

    G.   Opportunity to Opt-Out and Object .................................................. 7

    H.   Attorney Fees and Costs and Incentive Award to Class Representatives ........... 8

IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL ................ 8

V.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........................................................................................... 9

    A.   Plaintiff and Class Counsel Have Adequately Represented the Class. ............... 9

    B.   The Settlement was Negotiated at Arm's Length. ........................... 10

    C.   The Relief Provided to the Class is Adequate ................................ 10

    D.   The Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval .............................................................. 12

    E.   The Proposed Method of Distributing Relief to the Class Is Effective ............. 13

    F.   The Proposed Attorneys' Fee Award is Fair and Reasonable........... 14

    G.   No Side Agreements Were Made in Connection with the Proposed Settlement .................................................................... 14

    H.   The Proposed Settlement Treats Class Members Equitably Relative to Each Other .................................................................. 14

VI.    ADDITIONAL FACTORS SUPPORTING APPROVAL OF SETTLEMENT ...................................................................................... 15

    A.   The Strength of Plaintiff's Case ...................................................... 15

i

B.     The Extent of Discovery Completed and the State of the Proceedings ............. 15

C.     The Complexity and Likely Duration of Further Litigation ............................. 16

D.     The Experience and Views of Counsel ............................................... 16

VII.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE IS ADEQUATE AND SATISFIES THE REQUIREMENTS OF RULE 23. ............. 17

VIII.  PROPOSED SCHEDULE OF EVENTS ................................................ 18

IX.    CONCLUSION .................................................................................. 18

**Cases**

*Carlin v. DairyAmerica, Inc.*,
  380 F. Supp. 3d 998 (E.D. Cal. 2019) .......................................................8

*Caudle v. Sprint/United Mgmt. Co.*,
  2019 U.S. Dist. LEXIS 216056 (N.D. Cal. Dec. 16, 2019) ....................17

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ............................................................8, 12

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
  2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .......................................13

*Fulford v. Logitech, Inc.*,
  2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) .......................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...........................................................8, 9

*Haralson v. U.S. Aviation Servs. Corp.*,
  383 F. Supp. 3d 959 (N.D. Cal. 2019) ..................................................15

*Hawkins v. Kroger Co.*,
  906 F.3d 763 (9th Cir. 2018) ...............................................................16

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .........................................9

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ...........................................................8, 14

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................9

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)..................................................9

*In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*,
  2013 WL 3224585 (C.D. Cal. June 17, 2013)........................................13

iii

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
　　445 F. Supp. 3d 508 (N.D. Cal. 2020) ....................................................................... 1

*Kroessler v. CVS Health Corp.*,
　　_ F.3d. _, 2020 U.S. App. LEXIS 32061 (9th Cir. Oct. 9, 2020) ............................ 2

*Lambert v. Nutraceutical Corp.*,
　　2020 U.S. App. LEXIS 22230 (9th Cir. July 16, 2020) ........................................... 4

*Lambert v. Nutraceutical Corp.*,
　　2020 U.S. Dist. LEXIS 6391 (C.D. Cal. Jan. 8, 2020) ............................................ 4

*Lambert v. Nutraceutical Corp.*,
　　783 F. App'x 720 (9th Cir. 2019) ............................................................................ 3

*Lambert v. Nutraceutical Corp.*,
　　870 F.3d 1170 (9th Cir. 2017) ................................................................................. 3

*Linney v. Cellular Alaska P'ship*,
　　151 F.3d 1234 (9th Cir. 1998) ............................................................................... 15

*McGrath v. Wyndham Resort Dev. Corp.*,
　　2018 WL 637858 (S.D. Cal. Jan. 30, 2018) .......................................................... 13

*Muliane v. Cent. Hanover Bank & Trust Co.*,
　　339 U.S. 306 (1950) ............................................................................................... 17

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
　　221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 10, 12

*Nutraceutical Corp. v. Lambert*,
　　138 S. Ct. 2675 (2018) ............................................................................................. 3

*Nutraceutical Corp. v. Lambert*,
　　139 S. Ct. 710 (2019) ............................................................................................... 3

*Perdue v. Kenny A. ex rel. Winn*,
　　559 U.S. 542 (2010) ............................................................................................... 14

*Rodriguez v. Bumblebee Foods, LLC*,
　　2018 U.S. Dist. LEXIS 69028 (S.D. Cal. Apr. 24, 2018) ...................................... 12

iv

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................. 10

*Zamora Jordan v. Nationstar Mortg., LLC*,
    2019 WL 1966112 (E.D. Wash. May 2, 2019) ........................................ 8

**Other Authorities**

NEWBERG ON CLASS ACTIONS § 13:48 (5th ed.) ........................................ 9

NEWBERG ON CLASS ACTIONS § 13:49 (5th ed.) ........................................ 9

NEWBERG ON CLASS ACTIONS § 13:51 (5th ed.) .................................... 10, 11

NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.) ...................................... 13

NEWBERG ON CLASS ACTIONS § 13:56 (5th ed.) ...................................... 14

v

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# I.    INTRODUCTION

This case settled during a lengthy mediation before the Honorable Jay C. Gandhi (Ret.). The settlement is memorialized in the Class Action Settlement Agreement ("Settlement Agreement"), which is attached as **Exhibit 1** to the Declaration of Gregory S. Weston. Plaintiff respectfully requests the Court grant it preliminary approval.

"The court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'" *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 517 (N.D. Cal. 2020) (citation omitted). This motion shows the settlement, combining cash relief and label changes, easily is "within the range of possible approval" and should be advertised to class members via class notice to obtain their reaction, as well as served on the United States and California attorneys general, as provided by the Class Action Fairness Act.

The settlement requires Nutraceutical to make two of the most important changes Plaintiff demanded in his 2013 Complaint. It also acknowledges that other changes to the label that occurred after 2013 were catalyzed by this suit. It also provides cash relief equal to about half of the total amount Plaintiff sought in his affirmative MSJ on behalf of the Class. Defendant also is paying costs and any attorney fees and incentive award this Court might approve, but which after a trial might be subtracted from any cash recovery.

Having litigated this case for almost eight years, and all the way to the United States Supreme Court, through close of discovery and full briefing of summary judgment and *Daubert* motions, Class Counsel understands the strengths and weaknesses of their case, and the risks of proceeding through potential challenges to class certification, summary judgment motions, trial, and further appeals. They believe the settlement meets the standard of being fair, reasonable, and adequate. Not only does the settlement serve the interests of the Parties, but also the public interests embodied in California's consumer protection laws and the federal Food Drug & Cosmetic Act ("FDCA"). As the Ninth Circuit noted, in a published decision earlier this month in another nutrition-supplement label class action, "the FDCA [has a] stated purpose of promoting public policy by retaining parallel avenues

for private and public enforcement actions against false or misleading statements." *Kroessler v. CVS Health Corp.*, _ F.3d. _, 2020 U.S. App. LEXIS 32061, at *25-26 (9th Cir. Oct. 9, 2020). Here, the settlement ensures not just that Defendant complies with the FDCA, but encourages voluntary compliance with the FDCA by other members of the industry by providing an example of private enforcement.

For these reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the settlement and approve the Parties' plan for class notice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on August 14, 2013, bringing claims on behalf of a nationwide class. Dkt. 1. Plaintiff's central allegation in this case is that Cobra was falsely and unlawfully marketed as an aphrodisiac drug. He argued it violated both the general statute requiring approval of new drugs, as well as 21 C.F.R. § 310.528, a regulation dealing specifically with "herbal aphrodisiac" products. Because the FDCA does not provide private standing, Plaintiff brought his claims under the laws of California.

Plaintiff amended his Complaint on October 25, 2013. Dkt. 24. On November 8, 2013, Nutraceutical moved to dismiss Plaintiff's First Amended Complaint. Dkt. 35. Plaintiff opposed on November 18, Dkt. 42, and Nutraceutical submitted its reply brief on November 25. Dkt. 47. On December 16, the Court granted the motion in part, dismissing the claims "of class members who are not California residents." Dkt. 54 at 6. Plaintiff filed his Second Amended Complaint on December 23, 2013. Dkt. 56. Nutraceutical Answered the SAC on January 15, 2014. Dkt. 63.

On April 7, 2014, Plaintiff filed a motion for class certification. Dkt. 65. The Honorable Audrey B. Collins granted the motion on June 19, 2014. Dkt. 80. This action was transferred to the Honorable André Birotte, Jr. on August 12, 2014. Dkt. 86.

On November 24, 2014, the Parties both submitted summary judgment motions. Dkts. 125, 129. They submitted their opposition briefs on December 29, Dkts. 148-149. Nutraceutical submitted its reply brief on January 19, 2015. Dkt. 159. Plaintiff filed his reply brief on January 26. Dkt. 161. The Court continued the hearing on the dueling MSJs

on February 2, 2015. Dkt. 166.

Nutraceutical moved to decertify the class on November 17, 2014. Dkt. 111. Plaintiff opposed on December 1, 2014, Dkt. 141, and Nutraceutical submitted its reply brief on December 8, 2014. Dkt. 144. The Court granted the motion to decertify on February 20, 2015. Dkt. 175.

During a March 2, 2015 Status Conference, Plaintiff informed the Court of his intention to file a Motion for Reconsideration of the Decertification Order, and the Court set a briefing schedule for the motion. Dkt. 177. Plaintiff filed his Motion for Reconsideration on March 12, 2015. Dkt. 183. Nutraceutical opposed on March 30, Dkt. 189, and Plaintiff filed his reply brief on April 13. Dkt. 192. On June 24, the Court denied Plaintiff's Motion for Reconsideration. Dkt. 195. Plaintiff filed a petition for permission to appeal the order pursuant to Fed. R. Civ. P. 23(f), Dkt. 203, which was granted. Dkt. 209.

On September 15, 2017, the Ninth Circuit reversed the decertification order. *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1184 (9th Cir. 2017). Defendant filed a Petition for a Writ of Certiorari with the Supreme Court on February 1, 2018. On June 25, 2018, the Supreme Court granted Defendant's Petition. *Nutraceutical Corp. v. Lambert*, 138 S. Ct. 2675 (2018). The Supreme Court issued an opinion reversing the Ninth Circuit's order and remanding the action for further proceedings on February 26, 2019. *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710 (2019).

On April 9, 2019, upon remand from the Supreme Court to the Ninth Circuit, Lambert filed a Motion for Additional Briefing, which was granted on April 16, 2019. Plaintiff filed his supplemental brief on May 4, 2019, and Nutraceutical submitted its supplemental brief on June 13, 2019. The Ninth Circuit issued an order dismissing Lambert's appeal on August 27, 2019 and remanded the action for further proceedings. *Lambert v. Nutraceutical Corp.*, 783 F. App'x 720 (9th Cir. 2019).

On October 4, 2019, the Court held a status conference and set a schedule for supplemental briefs regarding class certification. Dkt. 253. The Parties submitted their

3

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

supplemental briefs, Dkts. 255, 259, 260, and on January 28, 2020, the Court entered an order rescinding it prior decertification order and reinstating class certification. *Lambert v. Nutraceutical Corp.*, 2020 U.S. Dist. LEXIS 6391, at *33 (C.D. Cal. Jan. 8, 2020).

Nutraceutical filed a Rule 23(f) Petition to appeal the Court's January 8 Order, and the Court entered an order staying the action during the pendency of the Petition on January 27, 2020. Dkt. 270. The Ninth Circuit denied the Petition on July 16, 2020 with Judge Christen dissenting from the denial. *Lambert v. Nutraceutical Corp.*, 2020 U.S. App. LEXIS 22230 (9th Cir. July 16, 2020). The Court lifted the stay in this action on July 20, 2020. Dkt. 274.

The Court held a Case Management Conference on August 28, 2020. During the conference, the Court suggested that the Parties attend mediation. Dkt. 284. On September 8, 2020, the Parties attended mediation before the Honorable Jay C. Gandhi, which resulted in a complete, signed term sheet for a class-wide settlement. Dkt. 285. The Parties then prepared a full agreement and notice plan.

## III. TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement Agreement, attached as **Exhibit 1** to the concurrently filed Declaration of Gregory S. Weston, are summarized below.

### A. The Settlement Class

The Settlement Class ("Class") is the same as the certified class, except that it ends on December 31, 2020.[1] Settlement Agreement § 11.

Excluded from the Class are (a) persons or entities who purchased Cobra for the purpose of resale or distribution; (b) persons who officers and directors of Defendant; (c) persons who timely and properly exclude themselves from the Class, as provided in the Settlement Agreement; and (d) any judicial officer hearing this Litigation. Settlement Agreement § 11.

---

[1] At the last CMC before the settlement was reached, Defendant noted that it believed the class needed to have an end date, and while the Parties disagreed on what the best end date would be, they did not disagree one would be required. The Court seemed to agree and set a schedule for Defendant to file an appropriate motion. Dkt. 284.

## B. Monetary Relief

As a result of the Settlement, Nutraceutical agrees to create a $100,000 cash settlement fund for the class. Class members will receive $10 for claims not documented by receipts, and up to $100 if documented by receipts. Notice and administrative expenses of $19,250 are to be paid out of this $100,000 settlement fund. Settlement Agreement § 6. The bulk of this will be for Facebook advertising and postage for settlement checks.

If valid claims exceed the total amount to be paid, the payments will be reduced on a pro rata basis. If valid claims are below the total amount of the fund, the payments will be increased pro-rata such that the fund is entirely exhausted. Settlement Agreement § 6.

Any funds remaining after the distribution, such as checks that are returned undeliverable, or that are not cashed within 90 days, shall be paid by the Class Action Administrator as a *cy pres* payment to the Legal Aid Foundation of Los Angeles. *See* Cal. Civ. Code § 384(b) (expressly approving "nonprofit organizations providing civil legal services to the indigent" as *cy pres* recipients in class actions.)

## C. Injunctive Relief

In addition to the monetary relief described above, the Settlement provides injunctive relief for the Class, as set forth below.

### 1. "Potency Wood" Provision

Nutraceutical will, within 180 days of the Effective Date, discontinue the use of the phrase "potency wood" on the packaging of Cobra. Settlement Agreement § 4.

### 2. "Virility" Provision

Nutraceutical will, within 180 days of the Effective Date, discontinue the use of the word "virility" on the packaging of Cobra. Settlement Agreement § 5.

## D. Class Notice

The Parties have retained settlement and notice expert Gajan Retnasaba of Classaura LLC to prepare a plan and disseminate settlement notice, as well as process and pay claims. *See* Settlement Agreement § 9 and Retnasaba Decl. ¶¶ 2-15; Weston Declaration Exs. 2-3 (Summary Class Notice and Long Form Class Notice). Should the Court grant preliminary

5

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

approval of the settlement, a settlement website will be created. The website will include both the summary and long-form versions of the notice, which will describe the describe the process for making claims, for objecting to the settlement, and for opting out of the settlement. It will also give notice that an attorney fee application will be made and describe how class members may obtain a copy of the fee application from the administrator or online, and how they may oppose the application. Retnasaba Decl. ¶ 6.  The website will also have an online claim form, making claims much easier than settlements requiring printing out documents and mailing them. The claim form will be secured using 128-bit encryption, which is the commercial standard. Claim data will be stored in a secure database. The website will also allow class members to download claim forms that can be printed and submitted by mail for class members who prefer this method. Retnasaba Decl. ¶ 7.

The website will provide email, phone, and postal contacts for class members to request further information, hard copies of claim forms or other documents, or help in the claim filing process. For class members who are unwilling or unable to use the website or make claims online, the Notice, in both its long and summary forms, and claim forms will be provided by mail if requested by a toll-free telephone number. Retnasaba Decl. ¶ 8.

The primary method of class notice will be via Facebook, which for several reasons, the Parties and Classaura believe meets Rule 23's standard of best method practicable. Retnasaba Decl. ¶¶ 10-12. First, Facebook is not only the most used website in the United States, but is also the most popular medium for advertising of any type. Second, Facebook allows for targeted advertising. Here, the notice will be targeted toward men over 40. Retnasaba Decl. ¶¶ 3-5, 10-12. Third, Facebook has a feature that allows advertisers to avoid "duplicate" impressions where the same individual is shown the same advertisement multiple times. *Id.* ¶ 12. This allows for the widest possible distribution of notice. Finally, Defendant has identified a small number of class members who purchased Cobra directly from the Cobra website. These individuals will all be notified by mail. *Id.* ¶ 9.

Further, Classaura will issue a national press release containing information about the settlement and the address for the dedicated settlement website via PR Newswire. Retnasaba Decl. ¶¶ 13-14. Press releases sent through PR Newswire often end up as articles in news media websites such as CNBC.com, MarketWatch.com, Reuters.com, Yahoo.com and local media affiliates of the major television networks ABC, NBC, and CBS. *Id.*

Finally, in compliance with Cal. Civ. Code § 1781, Classaura will arrange for publication of the summary notice in newspaper of general circulation in Los Angeles County, once a week for four consecutive weeks. Retnasaba Decl. ¶ 15.

Mr. Retnasaba has frequently prepared class notice plans in consumer class actions that have been approved by the federal District Courts of California. Retnasaba Decl. ¶ 1.

### E. Release

Upon entry of a final order approving the Settlement Agreement and the favorable resolution of any subsequent appeals, every Class Member who has not filed a Request for Exclusion from the Settlement Class will release all of their economic claims related to Cobra. Importantly, the release does not extend to any sort of personal injury claim resulting from either Cobra or its packaging. Settlement Agreement § 10.

### F. Claims Process

The Claims process here is intentionally straightforward, easy to understand, and designed so that Class members can make a claim to their portion of the settlement fund without complication. Class members will make a claim by submitting a valid and timely claim form to the Settlement Administrator. A copy of the Claim Form is attached to the concurrently filed Weston Declaration as Exhibit 4. Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website.

### G. Opportunity to Opt-Out and Object

The settlement provides Class Members who wish to pursue their own claims against Defendant, or are otherwise unhappy with its terms, with the opportunity to opt-out. Settlement Agreement § 12.3. As with the claim form, the opt-out form is simple and can be completed in less than a minute online.

7

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Class Members can also object to the settlement. The final approval motion and fee application the Parties propose be filed thirty-five days before the Fairness Hearing, while objections are due twenty-seven days before. This ensures that any objector has time to review these documents before submitting their objection. The procedure is further described in the Class Notice and Settlement Agreement § 12.

### H. Fees, Costs, and an Incentive Award

The Settlement Agreement permits Plaintiff to apply for an incentive award of $10,000 and for his counsel to seek up to $490,000 in fees and costs. Settlement Agreement § 13. Defendant agrees not to oppose such an application, provided that they do not exceed the agreed-upon amount. Settlement Agreement § 13.

## IV. LEGAL STANDARD FOR PRELIMINARY APPROVAL

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) The "2018 amendment to Rule 23(e) establishes core factors district courts must consider when evaluating a request to approve a proposed settlement." *Zamora Jordan v. Nationstar Mortg., LLC*, 2019 WL 1966112, at *2 (E.D. Wash. May 2, 2019). In evaluating the 23(e) factors, it "is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness" *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1009 (E.D. Cal. 2019) (citation omitted).

Factors that the Ninth Circuit considers include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998);[2] *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

---

[2] The Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This factor can only be evaluated at the final approval stage when the Court can review objections, opt-outs, and class member claims.

# V. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

## A. Plaintiff and Class Counsel Have Adequately Represented the Class.

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." 4 NEWBERG ON CLASS ACTIONS § 13:48 (5th ed.). A determination of adequacy of representation requires that "two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citing *Hanlon*, 150 F.3d at 1020); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018).

Troy Lambert, the class representative in this action, has no conflicts of interest with other class members and has prosecuted this action diligently on behalf of the Class. This has included sitting for a tough deposition, consulting with counsel on other discovery issues and submitting declarations, and staying up to date on the case over seven years.

Class Counsel have also vigorously represented the Class and have no conflicts of interest. The Settlement was negotiated by counsel experienced in consumer class action litigation. Through the discovery process, Class Counsel has obtained sufficient information and documents to evaluate the strengths and weaknesses of the case. *See* 4 NEWBERG ON CLASS ACTIONS § 13:49 (5th ed.) ("if extensive discovery has been done, a court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information."). Based on such discovery and their experience, Class Counsel believe that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of even more protracted litigation. Weston Decl.¶ 11. *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("The

9

recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

## B. The Settlement was Negotiated at Arm's Length.

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the settlement was negotiated at arm's length under the supervision of Judge Gandhi after hard-fought litigation and discovery. Further, the Parties did not settle until after they had briefed class certification and decertification, submitted summary judgment motions, engaged in a lengthy appeal process that included a trip to the Supreme Court, and exchanged mediation briefs. Weston Decl. ¶ 9. Settlement discussions also did not begin until after the Parties had exchanged written discovery and documents, which speaks to the fundamental fairness of the process. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

## C. The Relief Provided to the Class is Adequate

Rule 23(e)(2)(C) requires that the Court consider whether

> the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). "Before the Rule arrives at the articulation of sub-factors, its general directive asks whether the class's relief is adequate." 4 NEWBERG ON CLASS ACTIONS § 13:51 (5th ed.). "In evaluating the value of the class members' claims, the court need not decide the merits of the case nor substitute its judgment of what the case might be worth for that of class counsel; however, 'the court must at least satisfy itself that the class

settlement is within the 'ballpark' of reasonableness.'" *Id.* (citation omitted).

As a result of the Settlement, Nutraceutical will both revise the packaging of Cobra to remove the two label claims Plaintiff found most objectionable and misleading and establish a non-reversionary settlement fund of $100,000, which includes $19,250 in Notice and administrative expenses. Settlement Agreement §§ 3-7. Class members who submit receipts for their purchases may claim up to $100, and class members lacking receipts may still obtain $10. This compares favorably to the roughly $15 purchase price of Cobra. Settlement Agreement § 6. In lieu of taking this matter to trial with the possibility of obtaining no relief, this is an excellent result for the Class. The $100,000 monetary relief is over half of the total restitution Plaintiff sought for the Class at summary judgment based on his "full restitution" model. *See* Dkt. 129 at 24 (memo in support of Plaintiff's MSJ); Dkt 129-2 (Plaintiff's proposed order granting MSJ) ("The Class is awarded $176,999.28 in restitution")

The amount of recovery per claimant is also adequate, considering that Class Members can claim up to $100 in cash from the settlement fund for documented purchases, and Class Members who do not have receipts will still get an estimated $10 from the settlement fund. Settlement Agreement § 6.

Any funds remaining after the distribution, such as checks that are not cashed within 90 days, will be paid as a *cy pres* payment to the Legal Aid Foundation of Los Angeles. Settlement Agreement § 6.

This recovery is significant considering that Defendant sells a 30-count bottle of Cobra  for $15.39 on their website, and at times the price was lower.[3] Thus the monetary recovery represents a large fraction of total damages alleged by Plaintiff and that Plaintiff believed could be recoverable at trial, whether examined in aggregate or compared to each individual claim.

---

[3] *See* https://naturalbalance.com/catalogsearch/advanced/result/?name=cobra (last visited October 19, 2020).

Also strong is the injunctive relief provision. Again looking back to Plaintiff's MSJ, the proposed order asked the Court to order seven changes to the label. The settlement imposes two of those changes, the "potency wood" and "virility" claims. Settlement Agreement §§ 4-5. Of the remaining five changes Plaintiff sought in his MSJ, three were made after the case was filed,[4] and Defendant stipulates the case was a catalyst for the changes. *See* Dkt. 129 at 2; Dkt. 129-2; Settlement Agreement § 7. Thus, the injunctive relief was even more successful than the monetary relief, with Plaintiff securing five of the seven things he demanded in his summary judgment motion. Of the remaining two claims, one was a difficult challenge to the very name of the product, and the other remains, but was toned down, from "*intended* to provide … blood flow" to "*thought* to provide … blood flow."

### D. The Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval

The costs, risks, and delay of trial and appeal further support preliminary approval. Proceeding in this litigation in the absence of settlement poses various risks. The Settlement provides relief to the Class without the risks, costs, and delays inherent in continued litigation, all of which are important factors in considering the reasonableness of the Settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004); *see also Rodriguez v. Bumblebee Foods, LLC*, 2018 U.S. Dist. LEXIS 69028, at *8 (S.D. Cal. Apr. 24, 2018) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (internal quotation marks omitted); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (same).

The risks of proceeding in this litigation include, by way of example, jurisdictional challenges, statute of limitations challenges, potential difficulties arising from different product packaging over the course of the Class Period, and the fact that the Class Members did not pay a uniform price. Class Counsel is also mindful of the inherent problems of

---

[4] The "Powerful Men's Formula" "aphrodisiac plants" and "perform your best" language was removed.

proof related to the claims and defenses to the claims asserted in the Litigation.

Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). The Settlement eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

## E. The Proposed Method of Distributing Relief to the Class Is Effective

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). Here, the claims process is straightforward and allows Settlement Class members to make a claim by submitting a valid and timely Claim Form to the Settlement Administrator without complication. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10ML 02151 JVS, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous.").

Further, if valid claims are below the total amount of the fund, the payments will be increased pro-rata such that the fund is exhausted. Settlement Agreement § 6. Any funds remaining after the distribution, such as checks that are returned for incorrect addresses, or that are not cashed within 90 days, shall be paid by the Class Action Administrator as a *cy pres* payment to the Legal Aid Foundation of Los Angeles, 1550 W. 8th Street, Los Angeles, CA 90017. Settlement Agreement § 6. *See also McGrath v. Wyndham Resort Dev. Corp.*, 2018 WL 637858, at *6 (S.D. Cal. Jan. 30, 2018) (finding a non-reversionary

settlement fund to be "fair, reasonable, and adequate."). Accordingly, the Court should find the proposed method of distribution of class funds to be effective.

### F. The Proposed Attorneys' Fee Award is Fair and Reasonable

As discussed above, the Settlement Agreement provides that Class Counsel may request an award of attorneys' fees and out-of-pocket expenses of up to $490,000. Settlement Agreement § 13. Further, the Settlement is not contingent on an attorney fee award, and any such award will not be paid from the settlement fund. Settlement Agreement § 13.

As the Ninth Circuit and Supreme Court have noted, "the lodestar method yields a fee that is presumptively [reasonable]." *In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 571 (9th Cir. 2019) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Here, the fees requested by Class Counsel amount to approximately 26% of Class Counsel's lodestar to date, and Class Counsel will devote additional work to the action in obtaining final approval of the Settlement. Weston Decl. ¶ 10.

### G. No Side Agreements Were Made in Connection with the Proposed Settlement

Rule 23(e)(3) requires that the Parties "must file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3). No agreements were made in connection with the settlement aside from the Settlement Agreement itself. Weston Decl. ¶ 7.

### H. The Proposed Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." 4 NEWBERG ON CLASS ACTIONS § 13:56 (5th ed.). Here, the settlement treats each class member equally. As discussed above, each class member can

make a claim for $10 in cash from the settlement fund. Settlement Agreement § 6. Because each class member is treated equally, the Court should approve the settlement as fair, reasonable, and adequate.

## VI.    ADDITIONAL FACTORS SUPPORTING APPROVAL OF SETTLEMENT

In addition to the factors set forth in Rule 23(e), courts may consider additional factors in contemplating preliminary approval, such as the "strength of the plaintiff's case," "the complexity and likely duration of further litigation," "the extent of discovery completed and the stage of the proceedings," and "the experience and views of counsel" *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 967 (N.D. Cal. 2019). *See also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (same).

### A. The Strength of Plaintiff's Case

While Plaintiff maintains that his claims are valid and that he would prevail at trial, he acknowledges that he would face challenges to both to the Court's class certification order and to the merits of his claims. Plaintiff is mindful of the challenges he would face in maintaining class certification. These challenges include, by way of example,  potential jurisdictional and statute of limitations challenges, and that the Class Members did not pay a uniform price for Cobra.

Further, Plaintiff is mindful of the potential problems of proof bearing on the claims asserted in the Litigation, and that, like most class members, he did not retain proof of his purchases. These issues, in particular those arising from consumer class action damages models, have resulted in many consumer class actions being denied class certification.

Plaintiff believes that some aspects of his case are quite strong. Defendant, however, points out that some of challenged statements from Cobra's label may constitute non-actionable puffery. Further, Nutraceutical believes Plaintiff would have trouble demonstrating an injury sufficient to confer standing.

### B.    The Extent of Discovery Completed and the State of the Proceedings

Prior to the close of discovery, the Parties produced documents and information and

exchanged expert reports. Further, prior to engaging in serious settlement discussions, the Parties fully briefed summary judgment. Dkts. 125, 129, 148, 149, 159, 161. Thus, the Parties were well-informed in negotiating the Settlement.

Further, the Settlement comes after seven years of protracted litigation, including multiple appeals and a trip to the Supreme Court. Thus, the Parties negotiated the Settlement with an understanding of the strengths and weaknesses of the Class's claims.

### C.    The Complexity and Likely Duration of Further Litigation

With regard to the complexity of this action, in 2018 a Ninth Circuit panel criticized the FDA for the complexity of its labeling regulations in another class action brought by Plaintiff's counsel. Specifically, in *Hawkins v. Kroger Co.*, the Ninth Circuit used the phrases "somewhat confusingly," "inconsistent and incomprehensive," and "mind-bogglingly complex and confusing," and noting "the degree of difficulty in sorting out and tracking down the applicable regulations" and the resulting "large amount of judicial resources" needed to interpret the FDA regulations before it. 906 F.3d 763, 766 n.1 and 771-72 (9th Cir. 2018).

Further, the likely duration of further litigation weighs in favor of settlement approval. This action was filed on August 14, 2013—more than seven years ago—and was the work of substantial pre-filing investigation and a pre-filing demand letter. Dkt. 1. The action has been hard fought, including multiple appeals and a trip to the Supreme Court. Plaintiff is mindful proceeding with the action may result in further delay in an action which has already been pending for seven years.

### D.    The Experience and Views of Counsel

The Class is represented by Gregory Weston of The Weston Firm and Ronald A. Marron of the Law Office of Ronald A. Marron. They  are experienced in consumer fraud litigation involving food and drugs, including FDA regulated supplements. The Court previously found them to be adequate when it appointed them Class Counsel. In Class Counsel's view, the Settlement provides a substantial benefit to the Class. Weston Decl. ¶ 11.

# VII. THE PROPOSED FORM AND METHOD OF CLASS NOTICE IS ADEQUATE AND SATISFIES THE REQUIREMENTS OF RULE 23.

Class notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Caudle v. Sprint/United Mgmt. Co.*, 2019 U.S. Dist. LEXIS 216056, at *12 (N.D. Cal. Dec. 16, 2019) (quoting *Muliane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)); *see also* Fed. R. Civ. P. 23(e)(1). Class notice also must satisfy Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state the following in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed class notice, modeled on others that have been approved by California federal courts, does each of these. Here, because the product is sold at retail, a complete list of class members does not exist to notify directly by name. Settlement Agreement § 9. Therefore, the Parties agreed to and propose that it will be publicized through Facebook advertisements, targeted at the demographics most likely to purchase Cobra. Class Notice will also be published in a newspaper of general circulation over four consecutive weeks in Los Angeles County, where the Plaintiff resides, as required by Section 1781 of the Consumer Legal Remedies Act. Retnasaba Decl. ¶ 15.

The Proposed Notice Plan shall further include a class notice website, which will include (1) links to the Class Notice, (2) the Settlement Agreement, (3) this Motion for Preliminary Approval, (4) if and when issued, the Court's Order granting preliminary approval, (5) the fee motion, and (6) instructions on opting out and filing of objections. Retnasaba Decl. ¶¶ 6-8. The Class Notice is written in plain language and contain the information required by Rule 23(c)(2)(B), as well as a user-friendly "Frequently Asked

Questions" format. *See* Weston Decl. Ex. 3. Both Class Counsel and Classaura, LLC, an experienced class action settlement administrator, will be available to further explain the settlement to class members. Accordingly, the Notice and Notice Plan should, respectfully, be approved.

**VIII. PROPOSED SCHEDULE OF EVENTS**

In connection with preliminary approval of the Settlement Agreement, the Parties propose a schedule described in the table below based on the date the Court sets for the Fairness hearing. It order to comply with CAFA's rule that notice be sent to state attorneys general 90 days before the Fairness Hearing to allow them to comment on or object to the settlement, the Parties request the Court set the Fairness Hearing about 104 days after its preliminary approval order, allowing two weeks for such notice to be mailed and received.

| Event | Date |
|---|---|
| Motion for Final Approval | January 15, 2021 |
| Motion for Attorney Fees and Incentive Award | January 15, 2021 |
| Deadline for Opt-Outs or Objections | January 23, 2021 |
| Deadline for notice of intent to appear at the Fairness Hearing | January 23, 2021 |
| Parties' Response to Objections | February 12, 2021 |
| Filing a List of Timely Requests for Exclusion | February 12, 2021 |
| Certification of Service of CAFA Notice to Attorneys General | February 18, 2021 |

**IX.  CONCLUSION**

The proposed Settlement is fair, reasonable, and adequate, and falls well within the range for possible final approval. For these reasons the Court should, respectfully, grant preliminary approval.

| | |
|---|---|
| Dated: October 23, 2020 | Respectfully submitted, |

/s/ Gregory S. Weston
**THE WESTON FIRM**
GREGORY S. WESTON
1405 Morena Blvd., Suite 201
San Diego, CA 92110

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
MICHAEL T. HOUCHIN
651 Arroyo Drive
San Diego, CA 92103

**<u>Class Counsel</u>**