# JS-6

1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

8

## CENTRAL DISTRICT OF CALIFORNIA

9
10
11

IN RE COBRA SEXUAL ENERGY
SALES PRACTICES LITIGATION

Case No. 2:13-cv-05942-AB-Ex

**FINAL ORDER AND JUDGMENT
(1) GRANTING FINAL APPROVAL OF CLASS
ACTION SETTLEMENT;
(2) AWARDING CLASS COUNSEL FEES AND
EXPENSES;
(3) AWARDING CLASS REPRESENTATIVE
INCENTIVE AWARD; AND
(4) DISMISSING ACTION WITH PREJUDICE**

Judge: The Honorable André Birotte, Jr.
Date: April 2, 2021
Time: 10:00 a.m.
Location: Courtroom 7B

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Troy Lambert, individually and on behalf of the Class defined below, moves for final approval of the class action settlement negotiated with the defendant in this action. Now, having considered the record and the requirements of law, the motion is **G**RANTED as set forth below. The settlement is **F**INALLY **A**PPROVED.

The Court further finds and orders as follows:

## I.   Procedural History

### A.   The Allegations in the Complaint

Plaintiff filed his Complaint on August 14, 2013. Dkt. 1. Plaintiff's central allegation in this case is that Cobra was falsely and unlawfully marketed as an aphrodisiac drug. He argued it violated both the general statute requiring approval of new drugs, as well as 21 C.F.R. § 310.528, a regulation dealing specifically with "herbal aphrodisiac" products. Because the FDCA does not provide private plaintiffs standing to enforce drug laws, Plaintiff brought his claims under the laws of California.

Plaintiff amended his Complaint on October 25, 2013. Dkt. 24. On November 8, 2013, Nutraceutical moved to dismiss the First Amended Complaint. Dkt. 35. Plaintiff opposed on November 18, Dkt. 42, and Nutraceutical submitted its reply brief on November 25. Dkt. 47. On December 16, the Court granted the motion in part, dismissing the claims "of class members who are not California residents." Dkt. 54 at 6. Plaintiff filed his Second Amended Complaint on December 23, 2013. Dkt. 56. Nutraceutical Answered the SAC on January 15, 2014. Dkt. 63.

### B.   Discovery

The Parties completed substantial discovery prior to negotiating the Settlement. On November 25, 2013 Plaintiff served his First Sets of Requests for Production, Interrogatories, and Requests for Admission on Nutraceutical. Nutraceutical served responses to these requests on December 30, 2013 and supplemented its Interrogatory Responses on January 14, 2014. Weston Decl. ¶ 2-3.

Plaintiff served his Second Sets of Requests for Production and Interrogatories on Nutraceutical on February 25, 2014. Defendant responded to the requests on April 3, 2014

1

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1 | and supplemented its RFP responses on May 23, 2014. Weston Decl. ¶ 5.

2 |     On June 4, 2014, Plaintiff served his Third Set of Requests for Production, to which

3 | Nutraceutical responded on July 7, 2014. Plaintiff served a Fourth Set of Requests for

4 | Production and a Second Set of Interrogatories on July 23, 2020. Weston Decl. ¶¶ 6-7.

5 |     Additionally, on April 10 and 11, 2014, Plaintiff took the depositions of Jeffrey

6 | Hinrichs, Nutraceutical's Chief Operating Officer and Executive Vice President, and

7 | Christopher Neuburger, Nutraceutical's VP of Marking and Sales. Weston Decl. ¶ 8.

8 |     Nutraceutical also took substantial discovery prior to negotiating the Settlement. On

9 | December 20, 2013, Nutraceutical served its First Sets of Interrogatories and Requests for

10 | Production on Lambert. Weston Decl. ¶ 9. Nutraceutical served a Second Set of

11 | Interrogatories on Lambert on January 15, 2014. Weston Decl. ¶ 10. On July 9, 2014,

12 | Nutraceutical served its First Set of Requests for Admission, as well as its Second Set of

13 | Requests for Production and Third Set of Interrogatories. Lambert responded to all of this

14 | discovery, and Nutraceutical took Lambert's deposition on April 4, 2014. Weston Decl. ¶¶

15 | 10-12. Thus, the Parties, having taken substantial discovery, were well-informed in

16 | negotiating the Settlement.

17 |     **C.**    **Motion Practice Before This Court and On Appeal.**

18 |     Prior to negotiating the Settlement, the Parties also engaged in extensive motion

19 | practice relating to both class certification and the merits. Further, the Parties briefed

20 | certification issues before both the Ninth Circuit and Supreme Court.

21 |     Following the motion to dismiss briefing and orders described *supra*, on April 7,

22 | 2014, Plaintiff moved for class certification, which was granted on June 19, 2014. Dkts.

23 | 65, 80.

24 |     On November 24, 2014, the Parties both submitted summary judgment motions.

25 | Dkts. 125, 129. They submitted their opposition briefs on December 29, Dkts. 148-149.

26 | Nutraceutical submitted its reply brief on January 19, 2015. Dkt. 159. Plaintiff filed his

27 | reply brief on January 26. Dkt. 161. The Court continued the hearing on the dueling MSJs

28 | on February 2, 2015. Dkt. 166.

Nutraceutical moved to decertify the class on November 17, 2014. Dkt. 111. Plaintiff opposed on December 1, 2014, Dkt. 141, and Nutraceutical submitted its reply brief on December 8, 2014. Dkt. 144.  The Court granted the motion to decertify on February 20, 2015. Dkt. 175.

During a March 2, 2015 Status Conference, Plaintiff informed the Court of his intention to file a Motion for Reconsideration of the Decertification Order, and the Court set a briefing schedule for the motion. Dkt. 177. Plaintiff filed his Motion for Reconsideration on March 12, 2015. Dkt. 183. Nutraceutical opposed on March 30, Dkt. 189, and Plaintiff filed his reply brief on April 13. Dkt. 192. On June 24, the Court denied Plaintiff's Motion for Reconsideration. Dkt. 195. Plaintiff filed a petition for permission to appeal the order pursuant to Fed. R. Civ. P. 23(f), Dkt. 203, which was granted. Dkt. 209. The Motions Panel's order accepting the petition was without prejudice to reargument of Defendant's position that the petition was untimely a second time before the Merits Panel.

On September 15, 2017, the Ninth Circuit reversed the decertification order. *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1184 (9th Cir. 2017). Nutraceutical filed a petition for a writ of certiorari with the Supreme Court on February 1, 2018. On June 25, 2018, the Supreme Court granted the petition. *Nutraceutical Corp. v. Lambert*, 138 S. Ct. 2675 (2018). The Supreme Court issued an opinion reversing the Ninth Circuit's order because the initial petition was untimely, and remanding the action for further proceedings on February 26, 2019. *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710 (2019).

On April 9, 2019, on remand from the Supreme Court to the Ninth Circuit, Lambert filed a Motion for Additional Briefing, which was granted on April 16, 2019. Lambert filed his supplemental brief on May 4, 2019, and Nutraceutical submitted its supplemental brief on June 13, 2019. The Ninth Circuit issued an order dismissing Lambert's appeal on August 27, 2019 and remanded the action for further proceedings. *Lambert v. Nutraceutical Corp.*, 783 F. App'x 720 (9th Cir. 2019).

On October 4, 2019, the Court held a status conference and set a schedule for supplemental briefs regarding class certification. Dkt. 253. The Parties submitted their

1  supplemental briefs, Dkts. 255, 259, 260, and on January 28, 2020, the Court entered an
2  order rescinding it prior decertification order and reinstating class certification. *Lambert v.*
3  *Nutraceutical Corp.*, 2020 U.S. Dist. LEXIS 6391, at *33 (C.D. Cal. Jan. 8, 2020).

4      Nutraceutical filed a Rule 23(f) Petition to appeal the Court's January 8, 2020 Order,
5  and the Court entered an order staying the action during the pendency of the Petition on
6  January 27, 2020. Dkt. 270. The Ninth Circuit denied the Petition on July 16, 2020 with
7  Judge Christen dissenting from the denial. *Lambert v. Nutraceutical Corp.*, 2020 U.S. App.
8  LEXIS 22230 (9th Cir. July 16, 2020). The Court lifted the stay in this action on July 20,
9  2020. Dkt. 274. The Court ordered the Parties to confer and resubmit their summary
10  judgment motions to avoid duplication of issues. Shortly thereafter, the Parties began
11  seriously discussing settlement.

12      **D.   Settlement Negotiations and Preliminary Approval.**

13      During an August 28, 2020 Case Management Conference following the denial of
14  Nutraceutical's Rule 23(f) Petition, the Court suggested that the Parties attend mediation.
15  Dkt. 284. On September 8, 2020, the Parties attended mediation before the Honorable Jay
16  C. Gandhi (Ret.), which resulted in a complete, signed term sheet for a class-wide
17  settlement. Weston Decl. ¶ 13; Dkt. 285.

18      On September 14, 2020, the Parties filed a Notice of Class Action Settlement and
19  Proposed Scheduling Order. The Court set a briefing schedule for the Parties' Motion for
20  Preliminary Approval on September 18. Dkt. 286.

21      The Parties filed their Motion for Preliminary Approval of Settlement on October
22  23, 2020. Dkt. 287. On November 9, the Court granted the Motion and issued a schedule
23  for the Parties' Motion for Final Approval, Plaintiff's Fee Application, and the submission
24  of claims, opt-outs, and objections. Dkt. 290.

25  **II.   Summary of the Settlement**

26      Lambert now moves the Court for Final Approval of a class-wide Settlement
27  Agreement. The Class consists of:

28      All individuals who purchased Cobra Sexual Energy for personal or household

4

use and not for resale or distribution from August 14, 2009 to December 31, 2020. Excluded from the class are officers and directors of Nutraceutical and any judicial officer hearing the case.

Dkt. 287-1, Settlement Agreement § 11.

A total of 10,401 valid claims were made from the claim fund of $100,000, resulting in a distribution of $9.61 per class member. Funds remaining from returned or uncashed checks will be paid to the Legal Aid Foundation of Los Angeles. *See* Cal. Civ. Code § 384(b) (approving "nonprofit organizations providing civil legal services to the indigent" as *cy pres* recipients in class actions).

Nutraceutical will, within 180 days of the Effective Date, discontinue the use of the phrase "potency wood" and the word "virility" on the packaging of Cobra. Settlement Agreement § 4-5.

In its Proposed Order Granting Motion for Summary Judgment and Permanent Injunction, the Class asked the Court to order seven changes to the label. The settlement imposes two of those changes, the "potency wood" and "virility" claims. Settlement Agreement §§ 4-5. Of the remaining five changes Plaintiff sought in his MSJ, three were made after the case was filed. Specifically, the "Powerful Men's Formula" "aphrodisiac plants" and "perform your best" language were removed. Defendant stipulates the case was a catalyst for the changes. *See* Dkt. 129 at 2; Dkt. 129-2; Settlement Agreement § 7. Thus, the settlement secured five of the seven things Plaintiff sought in his summary judgment motion. Of the remaining two claims, one was a difficult challenge to the very name of the product, and the other remains, but was toned down, from "*intended* to provide … blood flow" to "*thought* to provide … blood flow."

## III.   Notice and Claims Process

The Court finds that the Class has received the best notice practicable and that the notice complies with due process requirements. The Parties' selection and retention of Classaura LLC as the Notice Administrator was reasonable and appropriate. Based on the Declaration of Gajan Retnasaba, the Court hereby finds that the Settlement Notices were

5

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  published to the Class Members substantially in the form and manner approved by the

2  Court in its Preliminary Approval Order.

3      The Settlement Notices provided the best practicable notice to the Class of the

4  Settlement, fee motion, and right to object, opt-out, and file a claim. The Settlement

5  Notices fully satisfied all notice requirements under the law, including the Federal Rules

6  of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code

7  § 1781, and all due process rights under the U.S. Constitution and California Constitution.

8  The Court also finds that Defendant has satisfied all attorney general notice requirements

9  of the Class Action Fairness Act, as attested to by the Retnasaba Declaration. The Court

10 has received no objection or response to the Settlement agreement by any federal or state

11 official, including any recipient of the foregoing notices.

12 **IV.    Following Notice, the Class Has Reacted Favorably to the Settlement.**

13     "'[T]he absence of a large number of objections to a proposed class action settlement

14 raises a strong presumption that the terms of a proposed class settlement action are

15 favorable to the class members.'" *In re Wells Fargo & Co. S'holder Derivative Litig*., 445

16 F. Supp. 3d 508, 518 (N.D. Cal. 2020) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp.

17 2d 1036, 1043 (N.D. Cal. 2008)). Here, the reaction of the Class has been positive.

18     No class member objected to the settlement, and only one individual filed a request

19 for exclusion. This positive reaction to the Settlement indicates the Court should grant final

20 approval, as the Court "may appropriately infer that a class settlement is fair, adequate, and

21 reasonable when few class members object to it." *Philips v. Munchery Inc*., 2021 U.S. Dist.

22 LEXIS 18711, at *18 (N.D. Cal. Feb. 1, 2021) (quotation omitted). "'It is established that

23 the absence of a large number of objections to a proposed class action settlement raises a

24 strong presumption that the terms of a proposed class settlement action are favorable to the

25 class members.'" *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal.

26 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29

27 (C.D. Cal. 2004)); *see also Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239

28 (E.D.N.Y. 2010) ("[A] small number of class members seeking exclusion or objecting

6

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

indicates an overwhelming positive reaction of the class.").

## IV. Legal Standards for Final Approval

"[T]here is a strong judicial policy that favors settlements, particularly where class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[V]oluntary conciliation and settlement are the preferred means of dispute resolution," *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and this "overriding public interest in settling and quieting litigation" is especially pronounced in class actions, "which frequently present serious problems of management and expense." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Under Rule 23(e)(2), a district court approves a class settlement if the settlement is "fair, reasonable, and adequate." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This is necessarily a "tailored" inquiry:

> The court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the Settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625; *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (same).

Significantly, a proposed settlement "is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Instead, a settlement is fair when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation (Fourth)* § 21.6, at 309; *see also*, *e.g.*, *Officers for Justice*, 688 F.2d at 625 ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). In addition, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d 1011 at 1026.

The Ninth Circuit has identified a list of non-exclusive factors that a district court

7

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

should consider in deciding whether to grant final approval, which may include some or all of the following:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2008).

In addition to considering these so-called "*Churchill* factors," the district court must also satisfy itself that "the settlement is 'no[t] the product of collusion among the negotiating parties.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). This presumption is warranted here.

## V.   The Settlement Is Fair, Reasonable, and Adequate.

Each of the factors identified by the Ninth Circuit as bearing on the fairness, reasonableness, and adequacy of a proposed settlement agreement strongly supports approval of the agreement at issue here.

### A.   The Parties Understood the Strengths and Weaknesses of their Positions When They Negotiated the Settlement.

When litigation has proceeded to the point where the parties have a "'clear view of the strengths and weaknesses of their cases,'" this factor supports approval of a settlement. *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 833 (N.D. Cal. 2017); *Corona v. Remington Lodging & Hosp., LLC*, 2019 U.S. Dist. LEXIS 68116, at *24 (C.D. Cal. Apr. 22, 2019) (same). Here, the parties were "well-positioned" at the time of their negotiations to "to evaluate the strengths and weaknesses of" of their cases such that they made a "fully informed decision" to settle the action. *De La Torre v. CashCall, Inc.*, 2017 U.S. Dist.

8

LEXIS 190740, at *26 (N.D. Cal. Nov. 17, 2017).

Although Plaintiff and Class Counsel maintain that their claims are valid and assert that they would prevail at trial, they acknowledge the significant challenges that they would face on the merits. This action was filed over seven years ago. The Parties took extensive discovery prior to negotiating the Settlement. Moreover, the legal and factual positions in the case have been extensively briefed in the Parties' submissions in connection with Nutraceutical's motion to dismiss (Dkt. 35) and the Parties' cross-motions for summary judgment. Dkts. 125, 129, 148-49, 159, and 161.  Further, the basic facts of the case—that Defendant made certain claims on Cobra's packaging that Plaintiff alleges were misleading—were never in dispute. Thus, the action reached a stage where the Parties negotiated with a "clear view of the strengths and weaknesses of their case." *Knapp*, 283 F. Supp. 3d at 833.

## B.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation Support the Settlement.

In order to determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *Acosta v. Patenaude & Felix*, 2020 U.S. Dist. LEXIS 165852, at *9 (S.D. Cal. Sep. 10, 2020) (following *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). In other words,

> "The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Acosta*, 2020 U.S. Dist. LEXIS 165852, at *10 (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

The risks of proceeding in this litigation include jurisdiction challenges, statute of limitations challenges, potential difficulties arising from different product packaging over

9

the course of the Class Period, and the fact that the Class Members did not pay a uniform price. Class Counsel is also mindful of the inherent problems of proof related to the claims and defenses to the claims asserted in the action. Moreover, this action has already been pending for more than seven years, and Nutraceutical would likely appeal any outcome in the Class's favor. Even in the best case, therefore, it could take three or more years for Class Members to get any relief absent the Settlement. There is a significant advantage of receiving a tangible benefit now as opposed to a speculative potential benefit later. *See Officers for Justice*, 688 F.2d at 625. Such risks and delays "weigh[] in favor of final approval." *Fitzhenry-Russell v. Keurig Dr Pepper Inc.*, 2019 U.S. Dist. LEXIS 232301, at *12 (N.D. Cal. Apr. 10, 2019).

In *Fitzhenry-Russell*, even though "the Settlement was reached on the eve of trial, trial was anticipated to last over a week," and the "parties would likely have incurred significant costs to try the case before a jury." *Id.* The court further noted that even "after trial, there was a strong possibility of expensive and time-consuming post-trial motion practice or appeals given the vigorous litigation history of this case." *Id.* These factors "weigh[ed] in favor of final approval." *Fitzhenry-Russell*, 2019 U.S. Dist. LEXIS 232301, at *12. Thus, even when plaintiffs "are confident of the strength of their case, it is imprudent to presume ultimate success at trial and thereafter." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *25 (C.D. Cal. June 10, 2005).

Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966. "Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class." *Moreno v. Beacon Roofing Supply, Inc.*, 2020 U.S. Dist. LEXIS 122642, at *14 (S.D. Cal. July 13, 2020). Here, the Settlement eliminates these risks by ensuring the Class a recovery that is "'certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all.'" *Graves v. United Indus. Corp.*, , 2020 U.S. Dist. LEXIS 33781, at *21-22 (C.D. Cal. Feb. 24, 2020) (quoting *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010)). Thus, the

1  Court concludes that the costs, risks, and delay of trial and appeal further support final

2  approval

3       **C.    Plaintiff Is Entitled to Attorney Fees.**

4       "'An award of attorneys' fees incurred in a suit based on state substantive law is

5  generally governed by state law.'" *Brook v. McCormley*, 2021 U.S. App. LEXIS 72, at *2

6  (9th Cir. Jan. 4, 2021) (quoting *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d

7  1016, 1024 (9th Cir. 2003)). "'The task of a federal court in a diversity action is to

8  approximate state law [regarding fee awards] as closely as possible in order to make sure

9  that the vindication of the state right is without discrimination because of the federal

10 forum.'" *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (quotation

11 omitted). Thus, "California substantive law determines the availability and amount of

12 attorney's fees in this diversity case." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d

13 815, 829 (9th Cir. 2009) (citation omitted).

14      Here, all claims are under California law. Plaintiff invokes the fee-shifting

15 provisions of the CLRA and Private Attorney General Statute, which "are designed to

16 incentivize counsel to pursue consumer interests through publicly beneficial litigation."

17 *Milano v. Interstate Battery Sys. of Am., Inc.*, 2012 U.S. Dist. LEXIS 93192, at *2 (N.D.

18 Cal. July 5, 2012). *See also Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1171

19 (C.D. Cal. 2010) ("California's fee-shifting and private attorney general statutes

20 incentivize counsel to take cases on behalf of plaintiffs who could not otherwise afford to

21 vindicate their rights through litigation.").

22      The CLRA provides the "court shall award court costs and attorney's fees to a

23 prevailing plaintiff in litigation filed pursuant to this section." Cal. Civil Code § 1780(e).

24      The legislative policy to allow prevailing plaintiffs reasonable attorneys' fees is

25 clear. Section 1780 provides remedies for consumers who have been victims of

26 unfair or deceptive business practices. The provision for recovery of attorney's fees

27 allows consumers to pursue remedies in cases . . . where the compensatory

   damages are relatively modest.

28 *Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003).

11

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Likewise, Cal. Civ. Code § 1021.5 authorizes an "award of attorney fees to a 'private attorney general,' that is, a party who secures a significant benefit for many people by enforcing an important right affecting the public interest." *Serrano v. Stefan Merli Plastering Co., Inc.*, 52 Cal. 4th 1018, 1020 (2011). Consistent with the policies underlying the statute, the entitlement belongs to both the litigant and her counsel. *Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th 1499, 1509 (2006); *see also Serrano v. Priest*, 20 Cal. 3d 25, 44 (1977) (purpose of fee-shifting is to award "substantial attorney fees to those public-interest litigants and their attorneys" and thereby incentivize "representation of interests of similar character in future litigation"); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

Courts treat the terms "prevailing plaintiff" in the CLRA, and "successful party" in section 1021.5, synonymously, because the "language in the two provisions is not materially different." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001). Here, the Court concludes Lambert is a "prevailing plaintiff" and "successful party" entitled to attorney fees.

Additionally, the Settlement Agreement provides a contractual basis for fees. "A request for attorney's fees should not result in a second major litigation. Ideally . . . litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). That is what the parties have done in the Settlement Agreement. Defendant agreed to pay up to $490,000 in costs and fees to Class Counsel and an $10,000 incentive award to the settlement class representative. Settlement Agreement § 13.

Here, Plaintiff is a prevailing and successful party because the lawsuit has achieved multiple litigation objections. This includes five of the seven label changes Plaintiff sought. Injunctive relief, such as this, that is "'socially beneficial' . . . justif[ies] a fee award under" the CLRA. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011). Further, Lambert and the Class is also a "prevailing party" because they obtained a "net monetary recovery." *Parkinson*, 796 F. Supp. 2d at 1169.

**D.    The Requested Fee, Cost, and Incentive Awards Are Reasonable.**

Class Counsel proved the reasonableness of their fee request in their motion filed on February 26, 2021.  Class Counsel applies $490,000 in attorney fees and $47,373.15 in costs. Class Counsel's requested billing rates are as follows:

| Attorney | Position and Graduation Year | Hourly Rate |
|---|---|---|
| Ronald A. Marron | Partner '95 | $815 |
| Gregory S. Weston | Partner '04 | $650 |
| David Elliot | Partner '02 | $525 |
| Alexis Wood | Senior Associate '09 | $600 |
| Kas Gallucci | Senior Associate '12 | $575 |
| Michael Houchin | Associate '15 | $550 |
| Skye Resendes | Associate '11 | $550 |
| Jonathan Herstoff | Senior Associate | $449.50 |
| Laura Fanelli | Senior Associate | $449.50 |
| Beth Goodman | Associate '14 | $440 |
| Erin Minelli | Associate '10 | $440 |
| Marshall Lurtz | Associate '14 | $440 |
| Melanie Persinger | Associate '10 | $340 |
| Allison Norris | Associate '06 | $340 |
| Conor Trombetta | Associate '18 | $305 |
| Paul K. Joseph | Associate '12 | $305 |
| Weston Firm Senior Paralegals | | $235 |
| Marron Firm Paralegals and Legal Assistants | | $215 |
| Weston Firm Law Clerk | | $215 |
| Haug Partners' Senior Paralegals | | $230 |
| Haug Partners' Summer Associate | | $200 |

Based on the rates other courts have awarded, the Declarations of Gregory S. Weston

13

1    and Ronald A. Marron, and the Court's knowledge of prevailing rates in the Los Angeles
2    legal market, the Court finds "that the requested rates are in line with those prevailing in
3    the community for similar services by lawyers of reasonable comparable skill, experience
4    and reputation." *Blum v. Stevenson*, 465 U.S.886, 896 n.11 (1984).

5          Fee awards in class actions encourage and support compliance with federal and state
6    law. "The guiding principles in determining awards of attorneys' fees should be to provide
7    compensation sufficient to stimulate the motive for representation of classes . . . " *In re
8    Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1325 (C.D. Cal. 1977). When
9    determining a reasonable fee in a class action, the lodestar figure is "presumptively
10   reasonable[.]" *In re Bluetooth*, 654 F.3d at 941 (quoting *Cunningham v. County of Los
11   Angeles*, 879 F. 2d 481, 488 (9th Cir. 1988)); *see also Harris v. Marhoefer*, 24 F.3d 16, 18
12   (9th Cir. 1994) (the lodestar "presumptively provides an accurate measure of reasonable
13   fees").

14         Plaintiff is "prevailing party" under both the CLRA and Cal. Civ. Code § 1021.5.
15   The Court does not engage in an "*ex post facto* determination of whether attorney hours
16   were necessary to the relief obtained." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).
17   The issue "is not whether hindsight vindicates an attorney's time expenditures, but whether
18   at the time the work was performed, a reasonable attorney would have engaged in similar
19   time expenditures." *Id.*

20         This case was filed in August of 2013 and only settled after more than seven years
21   of hard-fought litigation, including multiple appeals. Counsel should be compensated for
22   all hours claimed, which are documented and based on contemporaneous time records. *See*
23   Fee Motion, Appendix 1; *Hensley*, 461 U.S. at 435 (Prevailing plaintiff's counsel "should
24   recover a fully compensatory fee. Normally this will encompass all hours reasonably
25   expended on the litigation" and "should not be reduced simply because the plaintiff failed
26   to prevail on every contention raised in the lawsuit."); *Ketchum*, 24 Cal. 4th at 1133 (fees
27   "should be fully compensatory" and, absent "circumstances rendering the award unjust, . .
28   . include compensation for all the hours reasonably spent").

1    Here, Class Counsel seeks $490,000 in fees and costs based on 2,635.4 hours of
2    attorney work and 1,811.2 hours of paralegal, summer associate, law clerk, and legal
3    assistant work. Class Counsel's lodestar, which is "presumptively reasonable," totals
4    $1,853,120.55. Thus, Class Counsel seek an amount approximately 75% less than their
5    lodestar. The Court finds this amount reasonable.

6    Class Counsel seek a total of $47,373.15 in costs. *See* Fee Motion Appendix 2;
7    Weston Decl. in support of Fee Motion ¶ 13, Table 3; Marron Decl. ¶ 8, Table 2. The Court
8    has reviewed Class Counsel's claimed costs. The largest expenses include initial class
9    notice, expert witness fees, court reporters and deposition transcripts, and printing costs
10   related to the appeal of class certification. The Courts finds the claimed costs were
11   "'reasonably necessary to the conduct of the litigation, rather than merely convenient or
12   beneficial to its preparation.'" *Parkinson*, 796 F. Supp. 2d at 1176 (quoting *Sci. App. Int'l*
13   *Corp. v. Super. Ct.*, 39 Cal. App. 4th 1095, 1103 (1995)).

14   Class Representative Lambert also seeks an incentive award in the amount of $10,000.
15   Incentive awards "are fairly typical in class action cases," *Rodriguez v. West Publ'g Corp.*,
16   563 F.3d 948, 958 (9th Cir. 2009), and "serve an important function in promoting class
17   action settlements." *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 U.S. Dist. LEXIS
18   16314, at *16 (E.D.N.Y. Aug. 1, 2002).  The Ninth Circuit has explained that incentive
19   awards "are intended to compensate class representatives for work done on behalf of the
20   class, to make up for financial or reputational risk undertaken in bringing the action, and,
21   sometimes, to recognize their willingness to act as a private attorney general." *McLeod v.*
22   *Bank of Am., N.A.*, 2019 U.S. Dist. LEXIS 40869, at *22-23 (N.D. Cal. Mar. 13, 2019)
23   (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). "When
24   litigation has been protracted, an incentive award is especially appropriate*." In re Nucoa*
25   *Real Margarine Litig.*, 2012 U.S. Dist. LEXIS 189901, at *116-17 (C.D. Cal. June 12,
26   2012).

27   The Court finds the requested incentive award is appropriate, given the sensitive
28   issues at play and highly personal discovery and deposition topics. Further, Plaintiff

15

1  persevered through multiple appeals and has kept himself up to date on the status of the
2  case since its inception in 2013.

3       California district courts have found comparable incentive awards appropriate, even
4  in cases which did not involve sensitive personal issues and lengthy delays. *See In re*
5  *Ferrero Litig.*, 2012 U.S. Dist. LEXIS 94900, at *11 (S.D. Cal. July 9, 2012) ("The Court
6  concludes Plaintiff Athena Hohenberg is entitled to receive an incentive award of $10,000,
7  and Plaintiff Laura Rude-Barbato is entitled to receive an incentive award of $7,500."); *In*
8  *re Nucoa Real Margarine Litig.*, 2012 U.S. Dist. LEXIS 189901, at *114-118 (C.D. Cal.
9  June 12, 2012) (finding "requested $8,000 incentive award is appropriate" because
10 "disclosure of personal health information, which might be embarrassing, weighs in favor
11 of an incentive award"); *Black v. T-Mobile USA, Inc.*, 2019 U.S. Dist. LEXIS 123676, at
12 *21-22 (N.D. Cal. July 24, 2019) (granting "request for an incentive award in the amount
13 of $10,000.").

14     **E.     The Potential Difficulty of Maintaining Class Action Status Throughout**
15             **the Litigation Favors The Settlement.**

16     The Settlement provides Class Members with significant benefits without the risk
17 and delay of continued litigation, trial, and appeal. In negotiating the Settlement, Plaintiff
18 and his counsel took into account the uncertainty of litigation and believe that, in light of
19 the risks, the Settlement is fair, reasonable, and adequate. For example, while Plaintiff and
20 his counsel believe class certification was proper, "'there is no guarantee the certification
21 would survive through trial, as Defendants might have sought decertification or
22 modification of the class.'" *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 U.S. Dist.
23 LEXIS 188824, at *56 (C.D. Cal. May 29, 2015) (quoting *In re Omnivision Techs.*, 559 F.
24 Supp. 2d 1036, 1041-42 (N.D. Cal. 2007)).

25     **F.     The Experience and Views of Counsel Favor Approval.**

26     The Class is represented by Gregory Weston of The Weston Firm and Ronald A.
27 Marron of the Law Office of Ronald A. Marron. They are experienced in consumer fraud
28 litigation involving food and drugs, including FDA regulated supplements. The Court

16

previously found them to be adequate when it appointed them Class Counsel. In Class Counsel's view, the Settlement provides a substantial benefit to the Class. Weston Decl. ¶ 17. This, too, weighs in favor of approval.

### G. The Absence of Governmental Participation Supports Approval.

CAFA presumes that—once put on notice—state or federal officials will "raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 49477, at *37 (N.D. Cal. Apr. 22, 2010); *see also Lagarde v. Support.com, Inc.*, 2013 U.S. Dist. LEXIS 42725, at *20 (N.D. Cal. Mar. 26, 2013) (same); *In re Netflix Privacy Litig.*, 2013 U.S. Dist. LEXIS 37286, at *24 (N.D. Cal. Mar. 18, 2013) (same).

On November 15, 2020, the Classaura, LLC, the class action administrator in this action, provided notice of the settlement to state and federal officials. Retnasba Decl. ¶ 12. The 90-day period for federal or state government objections has elapsed, and no state or federal official has raised an objection to the settlement. Retnasba Decl. ¶ 12. This factor also weighs in favor of settlement approval.

## VI. There Was No Collusion or Conflict of Interest.

When a settlement is reached before the class is certified, the settlement agreement must be scrutinized for signs of "collusion or other conflicts of interest." *Bluetooth*, 654 F.3d at 946; *see also Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Here, however, no such scrutiny is required. "Because the parties negotiated the Settlement after class certification, the Court does not" need to "consider whether the Settlement is the product of collusion." *De La Torre v. CashCall, Inc.*, 2017 U.S. Dist. LEXIS 190740, at *28 n.7 (N.D. Cal. Nov. 17, 2017) (citing *Bluetooth*, 654 F.3d at 946). "*Bluetooth* . . . concerned a settlement negotiated prior to class certification" while in this case, by contrast, settlement was reached after class certification, through settlement conferences with judicial officers, and produced both monetary and injunctive relief for the class. These differences ameliorate the concerns regarding collusion expressed by the *Bluetooth* court. *In re Ferrero*, 583 F. App'x at 668 (affirming final approval of settlement by same

17

1  Marron/Weston team over objector's appeal).

2  **VII.    The Balanced Factors Weigh in Favor of Final Approval of the Settlement.**

3       "Ultimately, the district court's determination [regarding the fairness and adequacy

4  of a proposed settlement] is nothing more than an amalgam of delicate balancing, gross

5  approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation omitted).

6  "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred

7  means of dispute resolution. This is especially true in complex class action litigation." *Id.*

8  Here, all relevant factors weigh in favor of final approval of the Settlement. Approval of

9  the proposed Settlement is especially appropriate in complex class actions such as this one

10 where the parties have reached a voluntary conciliation through prolonged, non-collusive,

11 arms-length negotiations after extensive briefing of the issues and at the close of

12 considerable discovery. Accordingly, the Court **GRANTS** final approval of the Settlement.

13 **VIII. Other Matters**

14      **Implementation of Settlement**. The Parties are hereby directed to implement the

15 Settlement according to its terms and conditions.

16      **Enforcement of Settlement**. Nothing in this Final Approval Order shall preclude

17 any action to enforce or interpret the terms of the Settlement. Any action to enforce or

18 interpret the terms of the Settlement shall be brought solely in this Court.

19      **Retention of Jurisdiction**. The Court expressly retains continuing jurisdiction as to

20 all matters relating to the Settlement, and this Final Order, and for any other necessary and

21 appropriate purpose. Without limiting the foregoing, the Court retains continuing

22 jurisdiction over all aspects of this case including but not limited to any modification,

23 interpretation, administration, implementation, effectuation, and enforcement of the

24 Settlement, the administration of the Settlement and Settlement relief, including notices,

25 payments, and benefits thereunder, the Settlement Notice and sufficiency thereof, any

26 objection to the Settlement, any request for exclusion from the certified Class, the adequacy

27 of representation by Class Counsel and/or the Class Representative, the amount of

28 attorneys' fees and litigation expenses to be awarded Class Counsel, the amount of any

18

incentive awards to be paid to the Class Representatives, any claim by any person or entity relating to the representation of the Class by Class Counsel, to enforce the release and injunction provisions of the Settlement and of this Order, any remand after appeal or denial of any appellate challenge, any collateral challenge made regarding any matter related to this litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this Settlement, and all other issues related to this action and Settlement. Further, the Court retains continuing jurisdiction to enter any other necessary or appropriate orders to protect and effectuate the Court's retention of continuing jurisdiction provided that nothing in this paragraph is intended to restrict the ability of the Parties to exercise their rights under the Settlement Agreement.

**Valid Request for Exclusion.** The following individual filed a timely request for exclusion, and is not bound by the Settlement nor eligible to make a claim.

Marla Micks
15630 Frances Lane,
Orland Park, IL 60462

**Dismissal of Action With Prejudice**. The claims against Defendant Nutraceutical Corp. in this action, including all individual and Class claims resolved by the Settlement Agreement, **are hereby dismissed with prejudice**.

**IT IS SO ORDERED.**

Dated:  April 07, 2021

_____
The Honorable André Birotte Jr.
United States District Court Judge

*In re Cobra Sexual Energy Sales Practices Litig.*, Case No. 2:13-cv-13-05942-AB-Ex
ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT